# Exhibit E

# Exhibit E-1

Filed: 12/11/2024 10:24 AM
David R Lloyd, District Clerk
Johnson County, Texas
By: Amaris Montemayor, Deputy

IN THE DISTRICT COURT OF
JOHNSON COUNTY, TEXAS

| | | |
|---|---|---|
| STATE OF TEXAS, | § | DISTRICT COURT |
| | § | JUDICIAL DISTRICT |
| *Plaintiff,* | § | |
| | § | CAUSE NO. |
| v. | § | DC-C202400996 |
| | § | |
| 3M COMPANY; CORTEVA, INC., DUPONT | § | |
| DE NEMOURS, INC., and EIDP, INC. F/K/A | § | |
| E. I. DU PONT DE NEMOURS AND | § | |
| COMPANY, | § | |
| | § | |
| *Defendants.* | § | |

Johnson County - 18th Distric

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE DISTRICT JUDGE:

Plaintiff, STATE OF TEXAS, acting by and through the Attorney General of Texas, KEN PAXTON (the "State"), complains of Defendants 3M COMPANY ("3M"); CORTEVA, INC. ("Corteva"); DUPONT DE NEMOURS AND CO., INC. ("New DuPont"); and EIDP, INC. F/K/A E. I. DU PONT DE NEMOURS AND COMPANY ("Old DuPont") (collectively, "Defendants") and would respectfully show Defendants have engaged in deceptive trade practices by failing to disclose health risks and environmental harms associated with their products, and representing and/or implying their products were "safe" in a false, deceptive, or misleading manner, in violation of the Texas Deceptive Trade Practices–Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41–17.63 ("DTPA").

## INTRODUCTION

1. For decades, Defendants manufactured, marketed, and sold a wide array of consumer products containing per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctane sulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA"). Defendants

marketed these products in Texas and elsewhere to consumers as having remarkable benefits such as resistance to heat, oil, stains, grease, and water. Defendants' PFAS-containing materials included products used in or on food packaging, carpeting, cookware, upholstery, cosmetics, and many other consumer products, which Defendants sold to Texas consumers under well-known brand names including Teflon® and Scotchgard®.

2.      But Defendants knew for much of this time, during which they profited immensely from the sale of their products, that PFAS pose risks to people's health and impact the environment. For example, PFAS are "persistent, bioaccumulative and toxic" ("PBT"), and exposure in humans may be associated with diseases such as cancer and decreased vaccine response. Further, PFAS, once introduced into the environment, accumulate in fish, game, and other animal and plant life, contaminate drinking water and other natural resources, and accumulate in the blood of humans. Defendants knew of these risks, knew they could not contain PFAS in their consumer products, and – as early as the 1970s – knew that their PFAS chemistry was already building-up in the blood of most Americans.  Nonetheless, Defendants concealed these substantial risks from consumers and the State, and for decades, they even affirmatively claimed their products were "safe."

## I.      DISCOVERY

3.      The discovery in this case should be conducted under Level 3 pursuant to Texas Rule of Civil Procedure 190.4.

4.      This case is not subject to the restrictions of expedited discovery under Texas Rule of Civil Procedure 169 because the State's claims include non-monetary injunctive relief.

5.      In addition to the claims for non-monetary injunctive relief, the State seeks monetary relief of $1,000,000 or more, including civil penalties, attorneys' fees, and costs.

## II.    JURISDICTION

6.      This action is brought by the Attorney General, Ken Paxton, in the name of the State of Texas, through his Consumer Protection Division and in the public interest under the authority granted by § 17.47 of the DTPA upon the grounds that Defendants have engaged in false, deceptive, and misleading acts and practices in the course of trade and commerce as defined in, and declared unlawful by, §§ 17.46(a) and (b) of the DTPA. In enforcement suits filed pursuant to § 17.47 of the DTPA, the Attorney General is further authorized to seek civil penalties, redress for consumers, and injunctive relief. The Attorney General may also seek reasonable attorneys' fees and court costs for prosecuting this action, as authorized by Texas Government Code § 402.006(c).

## III.    SCOPE OF THIS ACTION

7.      Through this action, the State is not seeking any relief with respect to the manufacture, marketing, or sale of Aqueous Film-Forming Foam—a specific category of products that contain PFAS—as that is the subject of a separate action.

## IV.    DEFENDANTS

8.      Defendant 3M Company is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144-1000. 3M is registered to do business in Texas and may be served through Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136, or wherever it may be found.

9.      Defendant EIDP, Inc. (*i.e.*, Old DuPont), f/k/a E. I. du Pont de Nemours and Company, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805 and

9330 Zionsville Road, Indianapolis, Indiana. In 2015, facing billions of dollars in liabilities arising from its use of PFAS, Defendant Old DuPont began engaging in a series of transactions meant to distance its valuable assets from the liability created by its actions in unleashing and marketing these products to the public, ultimately resulting in the creation of New DuPont and Corteva. Old DuPont may be served through the Texas Secretary of State, P.O. Box 12079, Austin, Texas 78711.

10.     Defendant DuPont de Nemours, Inc., d/b/a DuPont (*i.e.*, New DuPont), is a Delaware corporation with its principal place of business located at 974 Centre Road Building 730, Wilmington, Delaware 19805. In 2015, Old DuPont created New DuPont to facilitate a merger with third party The Dow Chemical Company ("Old Dow") and serve as a holding company for the combined assets of the two companies. In connection with a series of subsequent transactions in 2019, New DuPont assumed certain Old DuPont liabilities—including those relating to PFAS. New DuPont does business throughout the United States, including in the State of Texas. New DuPont may be served through the Texas Secretary of State, P.O. Box 12079, Austin, Texas 78711.

11.     Defendant Corteva, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal places of business located at 974 Centre Road, Wilmington, Delaware 19805 and 9330 Zionsville Road, Indianapolis, Indiana 46268. In 2019, New DuPont spun off a new, publicly traded company, Corteva, which currently holds Old DuPont as a subsidiary. In connection with this transfer, Corteva assumed certain of Old DuPont's liabilities—including those relating to PFAS. Corteva is registered to do business in Texas and may be served through CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136, or wherever it may be found.

## V.     VENUE

12.     Venue of this suit lies in Johnson County, Texas, pursuant to DTPA § 17.47(b), because transactions forming the basis of this suit occurred in Johnson County, Texas, and Defendants have done business in Johnson County, Texas.

## VI.     PUBLIC INTEREST

13.     Plaintiff has reason to believe that Defendants are engaging in, have engaged in, or are about to engage in, the unlawful acts or practices set forth below. Plaintiff has further reason to believe Defendants have caused injury, loss, and damage to the State of Texas, and have caused adverse effects to the lawful conduct of trade and commerce, thereby directly or indirectly affecting the people of this State. The allegations herein focus on two specific types of PBT PFAS–PFOS and PFOA.

14.     PFOS exposure is associated with numerous adverse health effects in humans, including increases in serum lipids (*i.e.*, high cholesterol); decreases in antibody response to vaccines; increases in risk of childhood infections; adverse reproductive and developmental effects; and pregnancy-induced hypertension and preeclampsia. PFOA exposure is associated with, among other things, decreased birthweight, testicular and kidney cancers, ulcerative colitis, medically diagnosed high cholesterol, and thyroid disease.

15.     Therefore, the Consumer Protection Division of the Office of the Attorney General of the State of Texas is of the opinion that these proceedings are in the public interest.

## VII.     TRADE AND COMMERCE

16.     Defendants have, at all times described below, engaged in trade and commerce as defined by § 17.45(6) of the DTPA.

## VIII.   ACTS OF AGENTS

17.    Whenever in this Petition it is alleged that Defendants did any act, it is meant that Defendants performed or participated in the act or Defendants' officers, agents, or employees performed or participated in the act on behalf of and under the authority of Defendants.

## IX.    APPLICABLE LAW

18.    The DTPA prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce. " DTPA § 17.46(a).

19.    Section 17.47 of the DTPA authorizes the Consumer Protection Division to bring an action for temporary and permanent injunction whenever it has reason to believe that any person is engaged in, has engaged in, or is about to engage in any act or practice declared unlawful by the DTPA.

## X.    FACTUAL ALLEGATIONS

### PFOS and PFOA

20.    PFAS are a family of human-made chemical compounds containing a carbon chain on which all hydrogen atoms are replaced by fluorine atoms. The carbon-fluorine bond is the strongest bonds in organic chemistry and the many carbon-fluorine bonds in PFAS impart their unique chemical properties.  Figure 1 below shows the chemical structures of PFOS and PFOA.

Perfluorooctane Sulfonic Acid ("PFOS")            Perfluorooctanoic Acid ("PFOA")

Figure 1

21.    3M developed PFOS and PFOA in the 1940s. Old DuPont, in 1951, began manufacturing products containing PFOA. Old DuPont purchased PFOA from 3M.

22.    Defendants marketed products containing harmful PFAS chemicals for over 70 years and were aware of the harmful effects of PFAS chemicals for over 50 years. Despite this knowledge, Defendants continued to market PFAS products and chemicals in Texas and elsewhere as safe for consumer use, misrepresent their environmental and biological risks, and conceal risks of harm from the public.

23.    For decades, advertisements included images of family home life in and around these products, were marketed to women cooking for their families, and specifically promoted the value of the products for households with children and pets. These advertisements did not disclose material information regarding the harms of the chemicals, and through the context and claims of the advertisements, misrepresented their safety for household and family use.

## Defendants' Manufacture, Marketing, and Sale of PFAS-Containing Products

### Old DuPont's Deception Relating to PFAS Products

24.    Old DuPont began using PFOA and other PFAS in its specialty chemical production applications, including household applications and products, like Teflon® and Stainmaster®. Old DuPont advertised Teflon® as a protective non-stick coating for cookware and Stainmaster® as a soil and stain repellant for fabrics and textile products.  For instance, Old DuPont released Stainmaster® Carpet in 1986. Old DuPont advertised this product as being helpful for families with children and pets, which is particularly concerning due to the additional exposure for children, who spend more time on or near the floor.

25.    Old DuPont also manufactured and advertised Zonyl® as a cheaper and less labor-intensive alternative to wax-paper food packaging beginning in the 1960s. On information and

belief, this material has been used for fast food packaging and microwave popcorn bags, among other consumer uses.

26.    On information and belief, the Teflon® PTFE chemical has been used in a wide variety of cosmetics, to make them long-lasting and easier to apply.

27.    As early as the 1960s, Old DuPont was aware that PFOA is toxic to animals and humans and that it bioaccumulates and persists in the environment. Old DuPont also knew that Teflon®, and associated industrial facilities, emitted and discharged large quantities of PFOA and other PFAS into the environment and that many people had been exposed to its PFAS, including via public and private drinking water supplies. Yet, it continued to develop and market products for consumers as safe and without revealing this knowledge that would have been material information to consumers' purchasing decisions.

28.    Old DuPont's scientists issued internal warnings about PFOA toxicity as early as 1961, including warnings that PFOA caused adverse liver reactions in rats and dogs. Old DuPont's Toxicology Section Chief opined that such products should be "handled with extreme care" and that contact with the skin should be "strictly avoided." However, advertisements from the 1970s promoted family and household use of Teflon® pans through "women [who] test[ed] pans like these in their own homes"—touting the "preference" of Teflon® by these women and the implied safety for family and household use while failing to disclose the already known dangers associated with PFAS.

29.    In 1978, based on information it received from 3M about elevated and persistent organic fluorine levels in workers exposed to PFOA, Old DuPont initiated a plan to review and monitor the health conditions of potentially exposed workers to assess whether any negative

health effects were attributable to PFOA exposure. This monitoring plan involved obtaining and analyzing the blood samples from its workers for the presence of fluorine.

30.    By 1979, Old DuPont had data indicating that, not only was organic fluorine/PFOA building up in the blood of its exposed workers (and was, thus, "biopersistent"), but those workers exposed to PFOA had a significantly higher incidence of health issues than did unexposed workers. Old DuPont did not share this data or the results of its worker health analysis with the general public or government entities, including the State of Texas, at that time.

31.    The following year, Old DuPont internally confirmed, but did not make public, that PFOA "is toxic," that humans accumulate PFOA in their tissues, and that "continued exposure is not tolerable."

32.    At around this same time, Old DuPont, on information and belief, was releasing advertisements encouraging families not to worry, because they had Teflon® carpet protector.



33.    Not only did Old DuPont know that PFOA accumulated in humans, it was also aware that PFOA could cross the placenta from an exposed mother to her gestational child. In 1981, Old DuPont conducted a blood sampling study of pregnant or recently pregnant employees. Of the eight women in the study who worked with Teflon®, two—or 25%—had children with

birth defects in their eyes or face, and at least one had PFOA in the umbilical cord. Instead of addressing this concern, in the same year Old DuPont communicated to its employees that "there is no known evidence that our employees have been exposed to C8 levels that pose adverse health effects." C8 refers to PFAS like PFOA and PFOS with an eight-carbon chain structure.  It also quietly moved female employees away from areas where PFAS may have been present.

34.    Old DuPont selectively reported to the United States Environmental Protection Agency ("EPA") in March of 1982 that results from a *rat* study showed PFOA crossing the placenta if present in maternal blood, but Old DuPont concealed the results of its own study of its *human* workers.

35.    Not only did Old DuPont know about PFOA's toxicity danger as early as the 1960s, but it was also aware that PFAS were capable of contaminating the surrounding environment, leading to human exposure. For example, no later than 1984, Old DuPont was aware that PFOA released from its manufacturing operations was contaminating local drinking water supplies, but said nothing to regulators or the impacted communities.

36.    Old DuPont was long aware that the PFAS it was releasing from its facilities could leach into groundwater used for public drinking water—a fact that could both impact its corporate image, as discussed below, and materially impact consumers' purchasing decisions. Old DuPont held a meeting at its corporate headquarters in Wilmington, Delaware in 1984 to discuss health and environmental issues related to PFOA, and employees spoke of the PFOA issue as "one of corporate image, and corporate liability." They were resigned to Old DuPont's "incremental liability from this point on if we do nothing" because Old DuPont was "already liable for the past 32 years of operation." They also stated that the "legal and medical [departments within Old DuPont] will likely take the position of total elimination" of PFOA use

in Old DuPont's business and that these departments had "no incentive to take any other position." Nevertheless, Old DuPont not only decided to keep using and releasing PFOA, marketing brands containing PFOA, but affirmatively misrepresented to regulators, the scientific community, and the public that its PFOA releases presented no risks to human health or the environment.

```
PERSONAL & CONFIDENTIAL
-----------------------


   TO: T. M. KEMP
       T. L. SCHRENK

 FROM: J. A. SCHMID


                   C-8 MEETING SUMMARY
                   5/22/84 - WILMINGTON

                   --------------------

        THE REVIEW WAS HELD WITH BESPERKA, BENNETT, RIDDICK,
   GLEASON, HEGENBARTH, SERENBETZ, RAINES, KENNEDY, VON SCHRILTZ, AND
   INGALLS IN ATTENDENCE. COPIES OF THE CHARTS USED ARE ATTACHED.

        THERE WAS A CONSENSUS THAT C-8, BASED ON ALL THE
   INFORMATION AVAILABLE FROM WITHIN THE COMPANY AND FROM 3M, DOES
   NOT POSE A HEALTH HAZARD AT LOW LEVEL CHRONIC EXPOSURE.

        THERE WAS AGREEMENT THAT A DEPARTMENTAL POSITION NEEDED
   TO BE DEVELOPED CONCERNING THE CONTINUATION OF WORK DIRECTED AT
   ELIMINATION OF C-8 EXPOSURES OFF PLANT AS WELL AS TO OUR CUSTOMERS
   AND THE COMMUNITIES IN WHICH THEY OPERATE.

        THERE WAS CONSENSUS REACHED THAT THE ISSUE WHICH WILL
   DECIDE FUTURE ACTION IS ONE OF CORPORATE IMAGE, AND CORPORATE
   LIABILITY. LIABILITY WAS FURTHER DEFINED AS THE INCREMENTAL
   LIABILITY FROM THIS POINT ON IF WE DO NOTHING AS WE ARE ALREADY
   LIABLE FOR THE PAST 32 YEARS OF OPERATION. CORPORATE IMAGE
   DISCUSSION CENTERED AROUND THE PERCEIVED DILIGENCE VERSUS OUR
   POLICIES IF WE ELECTED TO STOP WORK.

        CURRENTLY, NONE OF THE OPTIONS DEVELOPED ARE, FROM A
   FINE POWDER BUSSINESS STANDPOINT, ECONOMICALLY ATTRACTIVE AND WOULD
   ESSENTIALLY PUT THE LONG TERM VIABILITY OF THIS BUSSINESS SEGMENT
   ON THE LINE. FROM A BROADER CORPORATE VIEWPOINT THE COSTS ARE
   SMALL.

        THE BASIS FOR A DECISION AT THIS POINT IS SUBJECTIVE AND
   IS MADE MORE DIFFICULT BY OUR CURRENT UNDERSTANDING OF TECHNOLOGY
   AND COST, AND THE IMPACT ON THE FINE POWDER BUSSINESS. IT'S NOT AN
   EASY AND OBVIOUS DICISION AS FOR EXAMPLE TBSA WAS.
```

RJZ069986

37.     Despite knowledge of potential health hazards and contamination, Old DuPont introduced Stainmaster® carpet to the public in 1986, spending $10 million on the first campaign of national advertisements. Old DuPont marketed Stainmaster® carpet as safe for families and targeted families with babies in particular, through advertisements such as those below, whose misleading messages DuPont aimed to get into every American household.







State of Texas v. 3M Company, et al.
Plaintiff's Original Petition

Page 14 of 45



38.    However, infants and toddlers in homes with Stainmaster® carpets are consistently exposed to PFAS. According to the Centers for Disease Control and Prevention, infants and toddlers are at increased risk of ingesting these chemicals through hand to mouth transfer of PFAS from carpets. Similarly, the EPA reported that children are particularly susceptible to inhaling PFAS in carpets, with inhalation levels reaching 32,500 pg/cm$^3$.

39.    Old DuPont also continued to advertise its Teflon® brand for household use, touting nonstick benefits but failing to disclose to consumers the serious adverse effects of PFAS. On information and belief, the advertisements below are from the 1990s.





40.    In 2000, the email below from Old DuPont employees demonstrated that the company was aware that biopersistence is an important consumer issue due to "an overwhelming public attitude that anything biopersistent is harmful," yet they continued to conceal the biopersistence of PFAS in chemical products such as Teflon®.



John R Bowman
11/09/2000 05:04 PM

To:      Thomas L Sager/AE/DuPont@DuPont, Martha L Rees/AE/DuPont@DuPont
cc:      Bernard J Reilly/AE/DuPont@DuPont
Subject: Lubeck-Dawn Jackson note

In view of the interest the letter is getting I think we need to make more of an effort to get the business to look into what we can do to get the Lubeck community a clean source of water or filter the C-8 out of the water. I spent a good bit of time over the past two days talking to an in house lawyer from Exxon and Chris Gibson from Archer and Greiner about their experience in defending MTBE water contamination suits. They both told me that experience has told them it is less expensive and better to remdiate or find clean drinking water for the plaintiffs than fight these suits. I think we are more vulnerable than the MTBE defendants because many states have adopted a drinking water guideline for MTBE and it is not biopersistent. My gut tells me the biopersistence issue will kill us because of an overwhelming public attitude that anything biopersistent is harmful.

We are going to spend millions to defend these lawsuits and have the additional threat of punitive damages hanging over our head. Getting out in front and acting responsibly can undercut and reduce the potential for punitives. Bernie and I have been unsuccessful in even engaging the clients in any meaningful discussion of the subject. Our story is not a good one, we continued to increase our emissions into the river in spite of internal commitments to reduce or eliminate the release of this chemical into the community and the environment because of our concern about the biopersistence of this chemical.

41.     Old DuPont also began to assemble a litigation defense team, which included hiring an outside consulting company called the Weinberg Group. In a 2003 letter to Old DuPont, the Weinberg Group recommended that Old DuPont "implement a strategy at the outset which discourages government agencies, the plaintiff's bar, and misguided environmental groups from pursuing this matter any further . . . ." The strategy would include "facilitating the publication of papers and articles dispelling the alleged nexus between PFOA and teratogenicity as well as other claimed harm" and "establish[ing] not only that PFOA is safe over a range of serum concentration levels, but that it offers real health benefits . . . ."

42.     In 2004, EPA filed an administrative enforcement action against Old DuPont based on its failure to disclose toxicity and exposure information for PFOA in violation of the federal Toxic Substances Control Act ("TSCA") and Resource Conservation and Recovery Act ("RCRA"). Old DuPont eventually settled the lawsuit by agreeing to pay over $16 million in civil

administrative penalties and conduct supplemental environmental projects. EPA called the settlement the "largest civil administrative penalty EPA has ever obtained under any federal environmental statute."

43.     Old DuPont's own Epidemiology Review Board ("ERB") repeatedly raised concerns about Old DuPont's statements to the public that there were no adverse health effects associated with human exposure to PFOA. For example, in February 2006, the ERB "strongly advise[d] against any public statements asserting that PFOA does not pose any risk to health" and questioned "the evidential basis of [Old DuPont's] public expression asserting, with what appears to be great confidence, that PFOA does not pose a risk to health."

44.     In February 2006, the New York Times noted that DuPont ran full page advertisements in its newspaper and other newspapers continuing to state that Teflon® is safe. Below is the advertisement, which claims that Teflon® has been "safely used for 40 years" and continues to omit that PFOA exposure was known to Old DuPont to cause harm to humans.



State of Texas v. 3M Company, et al.
Plaintiff's Original Petition

Page 20 of 45

45.     Despite its knowledge regarding PFOA's toxicity, Old DuPont continued to claim that PFOA posed no health risks. On information and belief, Old DuPont continued to market and sell Teflon® containing PFOA until 2007. Old DuPont knew these statements were not true but did not correct them.

46.     Old DuPont advertised consumer brands using PFAS chemicals as safe for home use in a variety of contexts. On information and belief, all of the advertisements throughout this section promoted products containing PFAS chemicals. The advertisements, which include television advertisements, range in time from the 1960s to the early 2000s.

3M's Deception Related to PFAS Products

47.     3M has known for decades that the PFAS contained in its products, such as PFOS, are toxic and adversely affect the environment and human health. Despite this knowledge, 3M has advertised brands, such as Scotchgard, as consumer-friendly and safe for families.

48.     3M advertised Scotchgard Protector in the mid-1950s as a coating that could be used to protect fabrics from water and other fluids. From 1970 to 2002, paper and carpet treatments were the most common use of PFOS substances.

49.     On information and belief, 3M's Scotchban paper protector was used for non-food packaging as early as the 1950s, and was later used in food paper packaging around 1970. Paper mills would apply Scotchban solution to make paper cups, cake mixes, pet food, and more as the grease and water resistant chemicals would not impact the appearance or other properties of the paper.

50.     By 1956, 3M's PFAS were found to bind to proteins in human blood, resulting in bioaccumulation of those compounds in the human body. 3M knew as early as 1960 that its PFAS waste could leach into groundwater and otherwise enter the environment. An internal 3M

memorandum from 1960 described 3M's understanding that such wastes "[would] eventually reach the water table and pollute domestic wells." As early as 1963, 3M knew that its PFAS were highly stable in the environment and did not degrade after disposal. Despite this knowledge, 3M continued to market its products to customers, misrepresented them as safe for household and family use, and failed to disclose information regarding potential health and environmental issues to consumers to make educated purchasing decisions.

51.     For instance, this advertisement from 1961 promotes the benefits of Scotchgard products to families and children in the household without disclosing the known pollutant effects.



52.    The advertisement below, on information and belief from 1965, advertises the

benefits of Scotchgard on a furniture company's products – especially when it comes to young

children. Ironically, the advertisement states "live dangerously," but it implies that your furniture

will be safer with Scotchgard and that your children may safely use it. 3M's logo and Scotchgard

trademark are both present in this ad.



53.    This advertisement, on information and belief from 1967, shows a large family

and friends with children and babies, and says the mother sprays "everything she wants to

protect" with Scotchgard. This clearly conveys the product is safe for family and household use.



54.    By the 1970s, 3M had become concerned about the risks posed to the general population by exposure to 3M's fluorochemicals. In fact, around this time, 3M abandoned a study of its fluorochemicals after the company's release of said chemicals during the study caused

severe pollution of nearby surface waters. In 1975, 3M found there was a "universal presence" of PFAS (PFOA and PFOS) in blood serum samples taken from individuals across the United States. Since PFAS are not naturally occurring, this finding reasonably alerted 3M to the high likelihood that its products were a source of this PFAS—a scenario 3M discussed internally, but did not share outside the company. This finding also alerted 3M to the likelihood that PFAS are mobile, persistent and bioaccumulative because these characteristics would explain the presence of PFAS in human blood. Yet, 3M continued to conceal these facts from the public who could have used this information to make educated purchasing decisions.

55.    As early as 1976, 3M began monitoring the blood of its employees for PFAS because the company was concerned about their effect on human health. In 1978, 3M conducted PFOS and PFOA studies in monkeys and rats. All monkeys died within the first few days or weeks after being given food contaminated with PFOS. The studies also showed that PFOS and PFOA affected the liver and gastrointestinal tract of the species tested. In the late 1970s, 3M studied the fate and transport characteristics of PFOS in the environment, including in surface water and biota. A 1979 report drew a direct line between effluent from 3M's Decatur, Alabama plant and fluorochemicals bioaccumulating in fish tissue taken from the Tennessee River adjacent to the 3M plant. 3M did not reveal the harms to these animals to consumers, facts which could have impacted their purchasing decision, and instead continued to assure consumers that the products were safe.

56.    In 1981, on information and belief, this advertisement from 3M shows a mother and child from the 1960s and the 1980s, and says that Scotchgard "makes living a little easier." In actuality, 3M already had studied its employees' blood and performed other studies due to concerns regarding health effects.



57.    In 1983, 3M's scientists opined that concerns about PFAS "give rise to legitimate questions about the persistence, accumulation potential, and ecotoxicity of fluorochemicals in the environment." In 1984, 3M's internal analyses proved that fluorochemicals were likely bioaccumulating in 3M's employees.

58.    In the 1980s, despite concerns regarding PFAS's negative impact on animal health, on information and belief, 3M continued to advertise Scotchgard on television without disclosing serious potential health risks, and instead touted benefits to the household. On information and belief, advertisements such as the one below showed common household stains

and how Scotchgard can protect a household, saying it "keeps ordinary spills from becoming extraordinary stains."





59.    According to a 3M environmental specialist, Rich Purdy, who resigned from his position due to the company's inaction over PFOS's environmental impacts, PFOS is "the most insidious pollutant since PCB" because it is "does not degrade," and is "more toxic." The specialist claimed that 3M omitted "the most significant information" from its report to the EPA and continues to sell PFOS despite knowledge that PFOS is "biomagnifying in the food chain and harming sea mammals." Purdy further discussed concerns that 3M had asked scientists not to put their thoughts in writing due to the "legal discovery process." Ultimately, he concluded "it is unethical to be concerned with markets, legal defensibility, and image over environmental safety." 3M had resisted calls from its own ecotoxicologists going back to 1979 to perform an

ecological risk assessment on PFOS and similar chemicals. At the time of the specialist's resignation in 1999, 3M continued its resistance.

60.    Despite its understanding of the hazards associated with the PFAS in its products, 3M suppressed scientific research on the hazards associated with them and mounted a campaign to control the scientific dialogue on the fate, exposure, analytics, effects to human health, and ecological risks of PFAS. At least one scientist funded by 3M saw his goal as "keep[ing] 'bad' papers [regarding PFAS] out of the literature" because "in litigation situations," those articles "can be a large obstacle to refute." Thus, 3M deceived others and hid the negative effects of PFAS. For example, Dr. Rich Purdy wrote a letter detailing, without limitation: (1) 3M's tactics to prevent research into the adverse effects of its PFOS, (2) 3M's submission of misinformation about its PFOS to the EPA, (3) 3M's failure to disclose substantial risks associated with its PFOS to the EPA, (4) 3M's failure to inform the public of the widespread dispersal of its PFOS in the environment and population, (5) 3M's production of chemicals it knew posed an ecological risk and a danger to the food chain, and (6) 3M's attempts to keep its workers from discussing the problems with the company's fluorochemical projects to prevent their discussions from being used in the legal process.

61.    By the late 1990s, 3M's own toxicologist had calculated a "safe" level for PFOS in human blood to be 1.05 parts per billion at a time when 3M was well aware that the average level of PFOS being found in the blood of the general population of the United States was approximately 30 times higher than this "safe" blood level. Yet, 3M did not disclose that information to regulatory authorities or the public to make consumer purchasing decisions relating to 3M's PFAS products.

62.     Despite its knowledge of the risks associated with exposures to its PFAS products, when 3M announced that it would phase out its PFOS, PFOA, and related products in 2000, it falsely asserted "our products are safe," instead of disclosing what it knew about the substantial threat posed by PFOS and PFOA. 3M also claimed to the press that it "was a complete surprise that [PFOS] was in the blood bank supplies" when they had been on notice of this issue for years.

TOP OF THE NEWS

# EPA says it pressured 3M over Scotchgard chemical

DAVID BARBOZA NEW YORK TIMES

CHICAGO

The Environmental Protection Agency said Thursday that it had pressed 3M Co. to come up with a solution after the company's own tests had shown that a chemical compound used in Scotchgard products could pose a risk to human health and the environment.

The EPA account differs from that of 3M, which said earlier this week that it had decided to stop making the chemical used in Scotchgard and many other products by the end of the year because the tests showed that the chemical compounds failed to decompose in the environment.

Officials of 3M say they have no evidence that the chemicals pose a long-term threat to human health.

The company said it negotiated with the EPA but its decision was voluntary and there was never a discussion of a recall of the products.

On Tuesday, Charles Reich, 3M's executive vice president for specialty material markets, said, "Our decision to phase out production is based on our principles of responsible environmental management."

The EPA confirmed that the agency had not issued an ultimatum to 3M.

While the EPA said it did not see an immediate safety risk for consumers using products now on the market, agency officials said they grew concerned about potential long-term health risks to humans after a 3M study showed that the chemical, perfluorooctanyl sulfonate, lingered for years in human blood and animal tissue and that high doses were known to kill laboratory rats.

"The results raised a number of concerns," said Stephen Johnson, who works in the office of prevention, pesticides and toxic substances at the EPA.

"What it suggests to us is that there are potentially long-term consequences. But we don't have evidence it is unsafe now."

Officials of 3M, however, say they are absolutely confident that their products are safe, and that there are no long-term con-

sequences to human health.

"This isn't a health issue now, and it won't be a health issue," said Larry Zobel, the medical director at 3M, which is based in Maplewood, Minn.

"To the question of whether this builds up in humans, it would have to be a long time, like hundreds of thousands of years to be a threat," he said.

The EPA said its decision to press 3M rested on four concerns: the compound is persistent in the environment; it appears in wildlife and human tissue around the world; it appears in human blood samples taken from around the world; and, based on the study of laboratory rats, it has the potential to harm humans.

The EPA said it was first alerted to the study of laboratory rats shortly after it was conducted in 1998.

In that study, male and female rats were given doses of the chemical and then mated. When a pregnant rat continued to get regular doses of about 3.2 milligrams per kilogram of body weight, most of the offspring died within four days.

"With all that information, we finally talked to 3M and said that raises a number of concerns. What are you going to do?" said Johnson at the EPA.

There is still a difference of interpretation, however.

Officials of 3M said the doses given to the rats were extremely high, but EPA officials said that few other chemicals would have as severe an effect.

"This is fairly toxic stuff in rats," one EPA official said.

"There's clear evidence it presents a problem in rats."

But 3M said it had not yet determined the cause of death in the rats nor how humans or animals ingested the chemicals so that it appeared in tissue or blood samples.

"That's a very interesting question," Zobel said. "We can't say how it gets into anybody's blood."

As a result of that uncertainty, and the persistence of the compound in the environment, 3M said it would do away with the chemistry by the end of the year.

3M Co. said Tuesday that it would pull some Scotchgard products off the market because of concerns over a key ingredient. EPA officials said they grew concerned about potential long-term health risks to humans after a 3M study showed that the chemical, perfluorooctanyl sulfonate, lingered for years in human blood and animal tissue.

63.    3M continued to mislead the public and stated that its decision was simply made to "reallocat[e] resources," and still marketed its products as safe for consumer and family use.

64.    Aftermarket consumer use to treat home items for stain and water resistance is especially concerning because chemicals are even more likely to transfer from the products

during application or use to indoor air and dust. Even treated fabrics, like a carpet or upholstered chair coated with Scotchgard, could create exposure.  Advertisements demonstrate that 3M's marketing did not disclose the harms of its products, and in fact misrepresented them as safe for use by families. Advertisements show families gathered together using Scotchgard products, or common household uses of the products, making claims such as "You can relax." On information and belief, similar advertisements continued throughout the lifespan of the Scotchgard PFOS product.

65.    On September 10, 2019, 3M's Senior Vice President for Corporate Affairs, Denise Rutherford, testified in a Congressional Hearing before the Committee on Oversight and Reform of the United States House of Representatives Subcommittee on the Environment. Rutherford stated that "[m]any of [3M's] products are essential to making people's lives better." More troublingly, Rutherford falsely asserted that "the weight of scientific evidence has not established that PFOS, PFOA, or other PFAS cause adverse human health effects. Public health agencies and independent science review panels, while acknowledging certain possible associations, agree with that basic fact."

66.    3M continued engaging in deceptive practices in 2022, coinciding with its announcement that it would phase out all of its PFAS products by 2025. 3M represented that "PFAS can be safely made and used," and that its "products are safe for their intended uses." Not only did 3M make statements it knew to be false, but it omitted material information relating to the health hazards of their products.

67.    As of the filing of this Complaint, 3M has not stopped its deceptive advertisements, and continues promoting that its "products, including those containing PFAS, are safe and effective for their intended uses in everyday life."

Old DuPont's Multi-Step, Years-Long Scheme Resulting in New Companies Assuming PFAS
Liabilities

68.     In or about 2013, Old DuPont began planning a series of corporate restructurings designed to separate its valuable assets from its billions of dollars of legacy liabilities—especially those arising from its historical use of PFOA and other PFAS.

69.     For more than five decades, Old DuPont manufactured, produced, or utilized PFOA and other PFAS at plants in New Jersey, West Virginia, and North Carolina, among others. By 2013, Old DuPont knew it was facing an avalanche of claims related to its PFAS business.

70.     For example, a 2012 study—funded by Old DuPont pursuant to a 2005 class action settlement—confirmed "probable links" between PFOA exposure and several serious human diseases: medically diagnosed high cholesterol, ulcerative colitis, pregnancy induced hypertension, thyroid disease, testicular cancer, and kidney cancer. As a result, more than 3,500 class members with one or more of those linked diseases filed personal injury claims against Old DuPont. Under the terms of the 2005 class settlement, Old DuPont had agreed not to contest the fact that the class members' exposure to PFOA could have caused each of the linked diseases, significantly limiting Old DuPont's available defenses to liability.

71.     Anticipating significant liability exposure, Old DuPont convened an internal initiative known as "Project Beta" in or about 2013 for Old DuPont's management to consider restructuring the company in order to, among other things, avoid responsibility for the widespread harm that Old DuPont's PFAS had caused, and shield billions of dollars in assets from these substantial liabilities.

72. At the same time, Old DuPont and Old Dow were discussing a possible "merger of equals." But no rational merger partner, including Old Dow, would agree to a transaction that would expose it to the substantial PFAS and environmental liabilities that Old DuPont faced.

73. Accordingly, Old DuPont's management decided to pursue a multi-year corporate restructuring specifically orchestrated to isolate Old DuPont's massive legacy liabilities from its valuable tangible assets in an attempt to entice Old Dow to pursue the proposed merger.

74. Old DuPont engaged in a coordinated three-part restructuring plan that consisted of (i) Old DuPont's attempt to cast off its massive performance chemicals liabilities onto Chemours, its then newly-formed wholly owned subsidiary, and spinning off Chemours as a separate publicly traded company; (ii) the creation of New DuPont to facilitate a purported merger with Old Dow; and (iii) a series of internal restructurings and divestitures that resulted in the spinoff of Old DuPont to its newly formed parent, Corteva. In the end, New DuPont and Corteva assumed Old DuPont's liabilities related to, among other things, its use and manufacture of PFAS chemicals, and are directly liable for Old DuPont's conduct at issue in this case.

75. In greater detail, the restructuring scheme was implemented as follows.

i.    **Step 1: The Chemours Spinoff**

76. The first step in Old DuPont's scheme was to create Chemours as a wholly owned subsidiary and transfer its performance chemicals business, which included Teflon® and other products associated with Old DuPont's historic use of PFOA ("Performance Chemicals Business") to Chemours. Then, on July 1, 2015, Old DuPont spun off Chemours as a separate public entity and saddled Chemours with Old DuPont's massive legacy liabilities (the "Chemours Spinoff").

77.     To effectuate the Chemours Spinoff, Old DuPont and Chemours entered into a June 26, 2015 Separation Agreement (the "Chemours Separation Agreement").

78.     Pursuant to the Chemours Separation Agreement, Old DuPont agreed to transfer to Chemours all businesses and assets related to the Performance Chemicals Business, including 37 active chemical plants.

79.     Chemours, in turn, broadly assumed Old DuPont's massive liabilities relating to Old DuPont's Performance Chemicals Business and other unrelated business lines, set forth in detail in the nonpublic schedules and exhibits to the Chemours Separation Agreement.

80.     Specifically, the Chemours Separation Agreement requires Chemours to indemnify Old DuPont against, and assume for itself, all "Chemours Liabilities," which are defined broadly to include, among other things, "any and all Liabilities relating . . . primarily to, arising primarily out of or resulting primarily from, the operation or conduct of the Chemours Business, as conducted at any time prior to, at or after the Effective Date," which includes Old DuPont's historic liabilities relating to and arising from its marketing and operation of the Performance Chemicals Business, such as its liabilities arising from PFAS.

81.     In addition to requiring Chemours to assume billions of dollars of Old DuPont's PFAS liabilities, the Chemours Separation Agreement includes an indemnification of Old DuPont in connection with those liabilities, which is uncapped and does not have a survival period.

82.     Notwithstanding the billions of dollars in PFAS liabilities that Chemours would face, on July 1, 2015, Old DuPont caused Chemours to transfer to Old DuPont approximately $3.4 billion as a cash dividend, along with a "distribution in kind" of promissory notes with an aggregate principal amount of $507 million. In total, Old DuPont extracted approximately $3.9 billion from Chemours.

83.    Old DuPont required Chemours to fund these distributions through financing transactions, including senior secured term loans and senior unsecured notes totaling approximately $3.995 billion, on May 12, 2015.

84.    Old DuPont, however, transferred only $4.1 billion in net assets to Chemours. At the end of 2015, Chemours reported a total net worth of just $130 million. But Chemours's estimated liabilities—which at the time totaled $6.168 billion—vastly underestimated the true value of its liabilities, including the PFAS liabilities it had assumed from Old DuPont, which Chemours knew or should have known would cost it billions of dollars.

85.    In fact, Old DuPont spun off Chemours into a state of insolvency. Indeed, Old DuPont left Chemours so undercapitalized that in May 2019, Chemours sued Old DuPont, New DuPont, and Corteva in Delaware Chancery Court. *See The Chemours Company v. DowDuPont, et al.*, C.A. No. 2019-0351 (Del. Ch. Ct., filed May 13, 2019). Chemours alleged, among other things, that if (i) the full value of Old DuPont's potential PFAS liabilities was properly estimated and (ii) Chemours were required to satisfy all the potential liabilities DuPont transferred to it, then Chemours would have been insolvent at the time it was spun off from Old DuPont.

### ii.    Step 2: The Old Dow/Old DuPont "Merger"

86.    After the Chemours Spinoff, Old DuPont took the untenable position that it was somehow no longer responsible for the widespread PFAS liabilities that it had accrued over several decades. Of course, Old DuPont could not contractually discharge all of its historical liabilities through the Chemours Spinoff, and Old DuPont remained liable for the liabilities it had caused and Chemours had assumed.

87.    Old DuPont knew that it could not escape liability and would still face exposure for PFAS liabilities, including for potentially massive penalties and punitive damages. So Old DuPont moved to the next phase of its restructuring scheme.

88.    On December 11, 2015, less than six months after the Chemours Spinoff, Old DuPont and Old Dow announced that their respective boards had approved an agreement "under which the companies [would] combine in an all-stock merger of equals" and that the combined company would be named DowDuPont, Inc. (the "DowDuPont Merger"). The companies disclosed that they intended to subsequently separate the combined companies' businesses into three publicly traded companies through further spinoffs, each of which would occur 18 to 24 months following the closing of the merger.

89.    To effectuate the transaction, Old DuPont and Old Dow entered into an Agreement and Plan of Merger (the "DowDuPont Merger Agreement") that provided for the formation of a new holding company renamed first as DowDuPont and then renamed again as DuPont de Nemours, Inc. (*i.e.*, New DuPont), of which Old DuPont and Old Dow became wholly owned subsidiaries.

90.    Although Old DuPont and Old Dow referred to the transaction as a "merger of equals," the two companies did not actually merge at all, likely because doing so would have infected Old Dow with all of Old DuPont's historical PFAS liabilities. Rather, Old DuPont and Old Dow became affiliated sister companies that were each owned by the newly formed DowDuPont. DowDuPont was aware of Old DuPont's historical PFAS liabilities.

### iii.    Step 3: The Shuffling, Reorganization, and Transfer of Valuable Assets Away from Old DuPont and Separation of Corteva and New Dow

91.    Following the DowDuPont Merger, DowDuPont underwent a significant internal reorganization and engaged in numerous business segment and product line "realignments" and "divestitures." The net effect of these transactions has been the transfer, either directly or indirectly, of a substantial portion of Old DuPont's assets out of the company, frustrating Old DuPont's creditors, including with respect to its substantial PFAS liabilities.

92.    Old DuPont's assets were transferred either directly or indirectly to DowDuPont, which reshuffled the assets and combined them with the assets of Old Dow, and then reorganized the combined assets into three distinct divisions: (i) the "Agriculture Business," (ii) the "Specialty Products Business," and (iii) the "Materials Science Business."

93.    DowDuPont then incorporated two companies (i) Corteva and (ii) New Dow. In accordance with the merger plan, each of these three companies received one of the three business divisions associated with Old DuPont's and Old Dow's historic assets, and was subsequently separated as an independent, publicly traded company.

94.    The mechanics of the separations are governed by the April 1, 2019 Separation and Distribution Agreement among Corteva, New Dow, and DowDuPont (the "DowDuPont Separation Agreement") and a subsequent June 1, 2019 Letter Agreement between Corteva and DowDuPont (the "Letter Agreement").

95.    The DowDuPont Separation Agreement allocated the assets and liabilities primarily related to the respective business divisions between the three companies: DowDuPont retained the assets and liabilities associated with the Specialty Products Business and several "non-core" business segments and product lines that once belonged to Old DuPont; Corteva

received the assets and liabilities associated with the Agriculture Business; and New Dow received the assets and liabilities associated with the Materials Science Business.

96.     DowDuPont also "contributed" Old DuPont to Corteva, and Old DuPont remains a wholly-owned subsidiary of Corteva to this day.

97.     Pursuant to the DowDuPont Separation Agreement and Letter Agreement, Corteva and New DuPont also assumed direct financial liability for legacy liabilities arising from Old DuPont's historic use of PFOA and other PFAS and its former Performance Chemicals Business, *i.e.*, the same liabilities that DuPont had caused Chemours to assume in 2015. While New DuPont and Corteva initially tried to bury the details in nonpublic schedules, New DuPont and Corteva's express assumption of Old DuPont's historic liabilities has been revealed through other litigation, and includes all liability associated with PFAS. The State of Texas can therefore bring claims against New DuPont and Corteva directly for Old DuPont's deceptive marketing of consumer PFAS-containing brands.

98.     The separation of New Dow was completed on or about April 1, 2019, when DowDuPont distributed all of New Dow's common stock to DowDuPont stockholders as a pro rata dividend.

99.     On June 1, 2019, DowDuPont spun off Corteva as an independent public company, when DowDuPont distributed all of Corteva's common stock to DowDuPont stockholders as a pro rata dividend.

100.     Also, on or about June 1, 2019, DowDuPont changed its registered name to DuPont de Nemours, Inc. (i.e., New DuPont).

101.     On or about January 1, 2023, Old DuPont changed its registered name to EIDP, Inc.

102.    The net result of these transactions was to strip away valuable tangible assets from Old DuPont—once available to satisfy successful claims brought by potential plaintiffs such as the State of Texas—and transfer those assets to New DuPont and Corteva for far less than the assets are worth.

103.    Many details about these transactions were hidden from the public in confidential schedules and exhibits to the DowDuPont Separation Agreement and the Letter Agreement. Old DuPont, New DuPont, and Corteva buried these details in an apparent attempt to hide from creditors, like the State of Texas, where Old DuPont's valuable assets went and the inadequate consideration that Old DuPont received in return. Moreover, neither New DuPont nor Corteva has publicly conceded that they assumed Old DuPont's liabilities arising from its historic use of PFOA and other PFAS. However, certain courts have required New DuPont and Corteva to disclose the nonpublic portions of the restructuring agreements—including the DowDuPont Separation Agreement and Letter Agreement. Under the plain language of those agreements, New DuPont and Corteva contractually assumed Old DuPont's liabilities arising from its historic use of PFOA and other PFAS, and are therefore directly liable for Texas's claims against Old DuPont in this case.

104.    Indeed, several courts have held that New DuPont and Corteva contractually assumed Old DuPont's PFAS liabilities. The North Carolina Supreme Court, for example, held that New DuPont and Corteva expressly assumed Old DuPont's PFAS liabilities pursuant to the DowDuPont Separation Agreement and Letter Agreement. *See State ex rel. Stein v. E. I. Du Pont De Nemours & Co.*, 382 N.C. 549, 563 (N.C. 2022) ("Corteva and New DuPont expressly assumed Old DuPont's PFAS liabilities, including those liabilities arising in North Carolina"). The trial court subsequently entered summary judgment against New DuPont and Corteva on the

issue of their contractual assumption of the PFAS liabilities of Old DuPont. *See State ex rel. Stein v. E.I. du Pont de Nemours & Co.*, No. 20 CVS 5612, 2024 WL 472553, at *6 (N.C. Super. Feb. 7, 2024).

## XI.     COUNT I: VIOLATIONS OF THE DTPA

105.    The State of Texas incorporates Paragraphs 1 through 104, as is fully set forth herein.

106.    Defendants have engaged in false, misleading, or deceptive acts or practices in the conduct of trade or commerce, in violation of DTPA § 17.46(a).

107.    Defendants represented that their goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have, in violation of DTPA § 17.46(b)(5).

108.    Defendants represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, when they were another, in violation of DTPA § 17.46(b)(7).

109.    Defendants failed to disclose information concerning goods or services which was known at the time of the transaction, and such failure to disclose this information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed, in violation of DTPA § 17.46(b)(24).

110.    New DuPont and Corteva agreed to assume Old DuPont's liabilities described above.[1]

---

[1] Note that this transaction is being challenged as a fraudulent transfer in numerous actions across the country, for example in *The State of Texas v. 3M Company, et al.*, Case No. 2:23-cv-04294.

## XII.    PRAYER

111.    WHEREFORE, PREMISES CONSIDERED, the State of Texas prays that Defendants be cited according to the law to appear and answer herein; that after due notice and hearing, a TEMPORARY INJUNCTION be issued; and that after due notice and trial, a PERMANENT INJUNCTION be issued. The State of Texas prays that the Court will issue an ORDER enjoining Defendants, their officers, agents, servants, employees, and any other persons in active concert or participation with Defendants from the following:

    A.    Misrepresenting the safety or human health risks of chemicals sold by you;

    B.    Failing to clearly and conspicuously disclose human health risks with products sold by you;

    C.    Selling or offering for sale any goods which contain PFAS chemicals known by you to create health and safety concerns to users of those goods;

    D.    Causing goods in the stream of commerce to include any PFAS chemicals which are known by you to create health and safety concerns to the users of those goods; and

    E.    Advertising or marketing any goods using the direct or implied representation that goods are safe for household or consumer use, if such goods are known by you to include chemicals that create health risks to the users of those goods.

112.    Plaintiff further requests that this Court award money damages.

113.    Plaintiff further requests that Defendants be ordered to pay to the State of Texas:

    A.    Civil penalties of up to $10,000.00 per violation of the DTPA;

    B.    Pre-judgment and post-judgment interest on all awards of restitution, damages, or civil penalties, as provided by law;

    C.    All costs of Court, costs of investigation, and reasonable attorney's fees pursuant to Texas Government Code § 402.006(c); and

    D.    Decree that all of Defendants' fines, penalties or forfeitures are not dischargeable in bankruptcy. *See* 11 U.S.C. § 523(a)(7).

114.    Plaintiff prays for all further relief, at law or inequity, to which it is justly entitled.

Dated:  December 11, 2024

Respectfully Submitted,


**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

**BRENT WEBSTER**
FIRST ASSISTANT ATTORNEY GENERAL

**RALPH MOLINA**
DEPUTY FIRST ASSISTANT ATTORNEY
GENERAL

**JAMES LLOYD**
DEPUTY ATTORNEY GENERAL FOR CIVIL
LITIGATION


*/s/ Jennifer Roscetti*

**JONATHAN STONE**
CHIEF, CONSUMER PROTECTION DIVISION

**Jennifer Roscetti**
State Bar No. 24066685
**Kelley Owens**
State Bar No. 24118105
Assistant Attorneys General
Jennifer.roscetti@oag.texas.gov
Kelley.owens@oag.texas.gov

OFFICE OF THE TEXAS ATTORNEY GENERAL
Consumer Protection Division
P.O. Box 12548, MC-010
Austin, Texas 78711-2548
Tel: (512) 463-2185
Fax: (512) 473-8301

*/s/ Katie B. Hobson*

**KELLIE E. BILLINGS-RAY**
CHIEF, ENVIRONMENTAL PROTECTION DIVISION

**Katie B. Hobson**
State Bar No. 24082680
**Brittany E. Wright**
State Bar No. 24130011
**Jake Marx**
State Bar No. 24087989
Assistant Attorneys General
Katie.hobson@oag.texas.gov
Brittany.wright@oag.texas.gov
Jake.marx@oag.texas.gov

OFFICE OF THE TEXAS ATTORNEY GENERAL
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

*/s/ Bill Jackson*

**WILLIAM J. JACKSON**
**JENNIFER C. BARKS**
**LAUREN H. SHAH**
**MARIA F. PIMIENTA**
**KELLEY DRYE & WARREN LLP**
515 Post Oak Blvd., Suite 900
Houston, Texas 77027
Tel: (713) 355-5000
Fax: (713) 355-5001
bjackson@kelleydrye.com
jbarks@kelleydrye.com
lshah@kelleydrye.com
mpimienta@kelleydrye.com

**DAVID I. ZALMAN\***
**GLENN T. GRAHAM\***
**ELIZABETH N. KRASNOW\***
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
dzalman@kelleydrye.com
ggraham@kelleydrye.com
ekrasnow@kelleydrye.com

**\****Pro Hac Vice forthcoming*

Mark Lanier
Alex Brown
**THE LANIER  LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N., Suite 100
Houston, Texas 77054
Tel: (713) 659-5200
Fax: (713) 659-2204
mark.lanier@lanierlawfirm.com
alex.brown@lanierlawfirm.com

**ATTORNEYS FOR THE STATE OF TEXAS**

# Exhibit E-2

Filed: 12/12/2024 1:24 PM
David R. Lloyd, District Clerk
Johnson County, Texas
By: Shanda Lovell, Deputy



**William J. Jackson**

Kelley Drye & Warren LLP
515 Post Oak Boulevard
Suite 900
Houston, TX 77027

Tel: (713) 355-5050
Fax: (713) 355-5001
bjackson@kelleydrye.com

December 12, 2024

**By eFile**

Johnson County District Clerk
Guinn Justice Center
204 South Buffalo Avenue
Cleburne, Texas 76033

      Re:    Request to Issue Citation in Cause No. DC-C-2024-00996; *State of Texas v. 3M Company, et al.*; In the 18th Judicial District Court of Johnson County, Texas

Dear District Clerk:

      Please issue citations for service of Plaintiff's Original Petition, filed December 11, 2024, in connection with the above-referenced matter, on the following parties:

1) 3M Company
c/o Registered Agent
Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company
211 E. 7th Street, Suite 620
Austin, Texas 78701-3136
*Or wherever it may be found*

2) EIDP, Inc. f/k/a E. I. du Pont de Nemours and Company
974 Centre Road
Wilmington, Delaware 19805
c/o Texas Secretary of State
P.O. Box 12079
Austin, Texas 78711
*Or wherever it may be found*

**NEW YORK    WASHINGTON, DC    CHICAGO    HOUSTON    LOS ANGELES    SAN DIEGO    PARSIPPANY    STAMFORD**    Affiliate Office: **MUMBAI**

Copy from re:SearchTX

Johnson County District Clerk
December 12, 2024

   3)  DuPont de Nemours, Inc., d/b/a DuPont
       974 Centre Road, Building 730
       Wilmington, Delaware 19805
       c/o Texas Secretary of State
       P.O. Box 12079
       Austin, Texas 78711
       *Or wherever it may be found*

   4)  Corteva, Inc.
       c/o Registered Agent
       CT Corporation System
       1999 Bryan Street, Suite 900
       Dallas, Texas 75201-3136
       *Or wherever it may be found*

Please return the issued citations to me via e-mail at ManagingAttorney@kelleydrye.com so that we can provide to a private process server, who will attempt to serve the parties.

If you have any questions, please contact Lauren Shah at (713) 355-5002.

Best regards,

William J. Jackson
Attorney for Plaintiff, The State of Texas

WJJ:ta

Copy from re:SearchTX

# Exhibit E-3

Filed: 12/12/2024 12:21 PM
David B. Lloyd, District Clerk
Johnson County, Texas
By: Shanda Lovell, Deputy



**William J. Jackson**

Kelley Drye & Warren LLP
515 Post Oak Boulevard
Suite 900
Houston, TX 77027

Tel:  (713) 355-5050
Fax: (713) 355-5001
bjackson@kelleydrye.com

December 12, 2024

**By eFile**

Johnson County District Clerk
Guinn Justice Center
204 South Buffalo Avenue
Cleburne, Texas 76033

> Re:     Request to Issue Citation in Cause No. DC-C-2024-00996; *State of Texas v. 3M Company, et al.*; In the 18th Judicial District Court of Johnson County, Texas

Dear District Clerk:

Please issue citations for service of Plaintiff's Original Petition, filed December 11, 2024, in connection with the above-referenced matter, on the following parties:

1)  3M Company
    c/o Registered Agent
    Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company
    211 E. 7th Street, Suite 620
    Austin, Texas 78701-3136
    *Or wherever it may be found*

2)  EIDP, Inc. f/k/a E. I. du Pont de Nemours and Company
    974 Centre Road
    Wilmington, Delaware 19805
    c/o Texas Secretary of State
    P.O. Box 12079
    Austin, Texas 78711
    *Or wherever it may be found*

**NEW YORK     WASHINGTON, DC     CHICAGO     HOUSTON     LOS ANGELES     SAN DIEGO     PARSIPPANY     STAMFORD**     Affiliate Office: **MUMBAI**

Copy from re:SearchTX

Johnson County District Clerk
December 12, 2024

   3)  DuPont de Nemours, Inc., d/b/a DuPont
       974 Centre Road, Building 730
       Wilmington, Delaware 19805
       c/o Texas Secretary of State
       P.O. Box 12079
       Austin, Texas 78711
       *Or wherever it may be found*

   4)  Corteva, Inc.
       c/o Registered Agent
       CT Corporation System
       1999 Bryan Street, Suite 900
       Dallas, Texas 75201-3136
       *Or wherever it may be found*

Please return the issued citations to me via e-mail at ManagingAttorney@kelleydrye.com so that we can provide to a private process server, who will attempt to serve the parties.

If you have any questions, please contact Lauren Shah at (713) 355-5002.

Best regards,

William J. Jackson
Attorney for Plaintiff, The State of Texas

WJJ:ta

Copy from re:SearchTX

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rhonda Waldrip on behalf of William Jackson
Bar No. 784325
rwaldrip@kelleydrye.com
Envelope ID: 95246570
Filing Code Description: Request
Filing Description: Request to Issue Citations
Status as of 12/12/2024 12:28 PM CST

Associated Case Party: STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William J.Jackson | | BJackson@KelleyDrye.com | 12/12/2024 12:21:53 PM | SENT |
| Jennifer C.Barks | | JBarks@KelleyDrye.com | 12/12/2024 12:21:53 PM | SENT |
| Lauren H.Shah | | LShah@KelleyDrye.com | 12/12/2024 12:21:53 PM | SENT |
| Maria F.Pimienta | | MPimienta@KelleyDrye.com | 12/12/2024 12:21:53 PM | SENT |
| David I.Zalman | | DZalman@KelleyDrye.com | 12/12/2024 12:21:53 PM | SENT |
| Glenn T.Graham | | GGraham@KelleyDrye.com | 12/12/2024 12:21:53 PM | SENT |
| Elizabeth N.Krasnow | | EKrasnow@KelleyDrye.com | 12/12/2024 12:21:53 PM | SENT |
| Jennifer Roscetti | | Jennifer.Roscetti@oag.texas.gov | 12/12/2024 12:21:53 PM | SENT |
| Kelley Owens | | Kelley.Owens@oag.texas.gov | 12/12/2024 12:21:53 PM | SENT |
| Katie B.Hobson | | Katie.hobson@oag.texas.gov | 12/12/2024 12:21:53 PM | SENT |
| Brittany Wright | | Brittany.wright@oag.texas.gov | 12/12/2024 12:21:53 PM | SENT |
| Jake Marx | | Jake.Marx@oag.texas.gov | 12/12/2024 12:21:53 PM | SENT |
| Mark Lanier | | Mark.Lanier@lanierlawfirm.com | 12/12/2024 12:21:53 PM | SENT |
| Alex Brown | | Alex.Brown@Lanierlawfirm.com | 12/12/2024 12:21:53 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| KDW Service Email | | Docketing@KelleyDrye.com | 12/12/2024 12:21:53 PM | SENT |

Copy from re:SearchTX

# Exhibit E-4

Filed: 12/13/2024 3:33 PM
David B. Hayd, District Clerk
Johnson County, Texas
By: Amaris Montemayor, Deputy

## CAUSE NO. DC-C202400996

| | | |
|---|---|---|
| STATE OF TEXAS<br>**PLAINTIFF** | §<br>§<br>§ | |
| VS. | §<br>§ | In the 18th District Court |
| 3M COMPANY., ET AL<br>**DEFENDANT** | §<br>§<br>§<br>§<br>§<br>§<br>§ | Johnson County, Texas |

### RETURN OF SERVICE

**On Friday, December 13, 2024 AT 10:28 AM**, CITATION, PLAINTIFF'S ORIGINAL PETITION for service on CORTEVA, INC. c/o Registered Agent CT CORPORATION SYSTEM came to hand.

**On Friday, December 13, 2024 AT 2:46 PM, I, Tracy Dewayne Edwards, PERSONALLY DELIVERED THE ABOVE-NAMED DOCUMENTS TO:** CORTEVA, INC. c/o Registered Agent CT CORPORATION SYSTEM, by delivering to Intake Specialist: George Martinez, 1999 BRYAN STREET STE. 900, DALLAS, DALLAS COUNTY, TX 75201.

My name is Tracy Dewayne Edwards. My e-mail address is info@easy-serve.com. My date of birth is September 15, 1963. I am in all ways competent to make this statement, and this statement is based on personal knowledge. I am not a party to this case and have no interest in its outcome. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, Texas on Friday, December 13, 2024.

*Tracy Dewayne Edwards*

Tracy Dewayne Edwards
1201 Louisiana St Ste 370
Houston, TX 77002

JBCC Registration# PSC-1872 expires March 31, 2026

029783-0003

Doc ID: 330014_1

Copy from re:SearchTX

# S t a t e   o f   T e x a s

18TH DISTRICT COURT                                          JOHNSON COUNTY, TEXAS

DISTRICT CLERK                                               ATTORNEY FOR PLAINTIFF(S)

DAVID R. LLOYD                                              **WILLIAM J JACKSON**
GUINN JUSTICE CENTER                                       **515 POST OAK BLVD SUITE 900**
P.O. BOX 495                                               **HOUSTON TX 77027**
CLEBURNE, TEXAS 76033

================================================================================
### C I T A T I O N   —   C I V I L
================================================================================
### (PLAINTIFF'S ORIGINAL PETITION)
CAUSE NO. <u>DC-C202400996</u>

NOTICE TO DEFENDANT:

YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR ATTORNEY DO NOT FILE A
WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE MONDAY NEXT
FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU WERE SERVED THIS CITATION AND PETITION,
A DEFAULT JUDGMENT MAY BE TAKEN AGAINST YOU. IN ADDITION TO FILING A WRITTEN ANSWER WITH
THE CLERK, YOU MAY BE REQUIRED TO MAKE INITIAL DISCLOSURES TO THE OTHER PARTIES OF THIS
SUIT. THESE DISCLOSURES GENERALLY MUST BE MADE NO LATER THAN 30 DAYS AFTER YOU FILE YOUR
ANSWER WITH THE CLERK. FIND OUT MORE AT TEXASLAWHELP.ORG.

TO:  **CORTEVA, INC.**
     **C/O REGISTERED AGENT**
     **CT CORPORATION SYSTEM**
     **1999 BRYAN STREET SUITE 900**
     **DALLAS TX  75201-3136**

DEFENDANT - GREETINGS:

You are hereby commanded to appear by filing a written answer to the plaintiff's
                    **O R I G I N A L**
petition by 10:00 a.m. of the Monday next following the expiration of twenty (20) days
after the service date of this citation and petition before the Honorable <u>**18TH DISTRICT**</u>
<u>**COURT**</u> of Johnson County, Cleburne, Texas.

Said                    **O R I G I N A L**                    petition
was filed in said court on the <u>**11TH DAY OF DECEMBER, 2024**</u>, in this cause numbered <u>**DC-**</u>
<u>**C202400996**</u>, on the docket of said court, and styled:

<u>**STATE OF TEXAS VS. 3M COMPANY, CORTEVA, INC., DUPONT DE NEMOURS, INC, D/B/A DUPONT.,EIDP,**</u>
<u>**INC. F/K/A E. I. DU PONT DE NEMOURS AND COMPANY**</u>

The nature of this demand is fully shown by a true and correct copy of the petition
accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to the
requirements of law, and mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at office in Cleburne, Texas this
<u>**12TH DAY OF DECEMBER, 2024**</u>.

                          DAVID R. LLOYD - DISTRICT CLERK
                          18TH DISTRICT COURT
                          JOHNSON COUNTY, TEXAS

                          BY _____ DEPUTY

# Exhibit E-5

Filed: 12/18/2024 10:05 AM
David R. Lloyd, District Clerk
Johnson County, Texas
By: Amaris Montemayor, Deputy

## CAUSE NO. DC-C202400996

| | | |
|---|---|---|
| STATE OF TEXAS<br>**PLAINTIFF** | § § § | |
| VS. | § § | In the 18th District Court |
| 3M COMPANY., ET AL<br>**DEFENDANT** | § § § § § § | Johnson County, Texas |

### RETURN OF SERVICE

**On Friday, December 13, 2024 AT 10:28 AM**, CITATION, PLAINTIFF'S ORIGINAL PETITION for service on 3M COMPANY c/o Registered Agent CORPORATION SERVICE COMPANY D/B/A CSC LAWYERS INC SERVICE COMPANY came to hand.

**On Tuesday, December 17, 2024 AT 11:45 AM, I, VELMA R.  FLYNN, PERSONALLY DELIVERED THE ABOVE-NAMED DOCUMENTS TO:** 3M COMPANY c/o Registered Agent CORPORATION SERVICE COMPANY D/B/A CSC LAWYERS INC SERVICE COMPANY, by delivering to Neisha Gross, intake specialist, 211 EAST 7TH STREET STE. 620, AUSTIN, TRAVIS COUNTY, TX 78701.

My name is VELMA R.  FLYNN. My e-mail address is info@easy-serve.com. My date of birth is December 02, 1941. I am in all ways competent to make this statement, and this statement is based on personal knowledge. I am not a party to this case and have no interest in its outcome. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, Texas on Wednesday, December 18, 2024.

*VELMA R.  FLYNN*

VELMA R.  FLYNN
1201 Louisiana St Ste 370
Houston, TX 77002

JBCC Registration# PSC 07275 expires August 31, 2025

029783-0003

Doc ID: 330014_2

Copy from re:SearchTX

# S t a t e   o f   T e x a s

18TH DISTRICT COURT                                           JOHNSON COUNTY, TEXAS

DISTRICT CLERK                                               ATTORNEY FOR PLAINTIFF(S)

DAVID R. LLOYD                                              **WILLIAM J JACKSON**
GUINN JUSTICE CENTER                                        **515 POST OAK BLVD SUITE 900**
P.O. BOX 495                                                **HOUSTON TX 77027**
CLEBURNE, TEXAS 76033

=====================================================================================
### C I T A T I O N   –   C I V I L
=====================================================================================
### (PLAINTIFF'S ORIGINAL PETITION)
CAUSE NO. <u>**DC-C202400996**</u>

NOTICE TO DEFENDANT:

YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR ATTORNEY DO NOT FILE A
WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE MONDAY NEXT
FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU WERE SERVED THIS CITATION AND PETITION,
A DEFAULT JUDGMENT MAY BE TAKEN AGAINST YOU. IN ADDITION TO FILING A WRITTEN ANSWER WITH
THE CLERK, YOU MAY BE REQUIRED TO MAKE INITIAL DISCLOSURES TO THE OTHER PARTIES OF THIS
SUIT. THESE DISCLOSURES GENERALLY MUST BE MADE NO LATER THAN 30 DAYS AFTER YOU FILE YOUR
ANSWER WITH THE CLERK. FIND OUT MORE AT TEXASLAWHELP.ORG.

TO:  **3M COMPANY**
     **3M COMPANY C/O REGISTERED AGENT**
     **CORPORATION SERVICE COMPANY D/B/A CSC-**
     **LAWYERS INC SERVICE COMPAN**
     **211 E 7TH STREET SUITE 620**
     **AUSTIN TX 78701-3136**

DEFENDANT - GREETINGS:

You are hereby commanded to appear by filing a written answer to the plaintiff's
                                    **O R I G I N A L**
petition by 10:00 a.m. of the Monday next following the expiration of twenty (20) days
after the service date of this citation and petition before the Honorable **18TH DISTRICT**
**COURT** of Johnson County, Cleburne, Texas.

Said                       **O R I G I N A L**                                petition
was filed in said court on the **11TH DAY OF DECEMBER, 2024**, in this cause numbered **DC-**
**C202400996**, on the docket of said court, and styled:

**STATE OF TEXAS VS. 3M COMPANY,CORTEVA, INC.,DUPONT DE NEMOURS, INC, D/B/A DUPONT.,EIDP,**
**INC. F/K/A E. I. DU PONT DE NEMOURS AND COMPANY**

The nature of this demand is fully shown by a true and correct copy of the petition
accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to the
requirements of law, and mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at office in Cleburne, Texas, on
**13TH DAY OF DECEMBER, 2024**.

                              DAVID R. LLOYD - DISTRICT CLERK
                              18TH DISTRICT COURT
                              JOHNSON COUNTY, TEXAS


                              BY _Shandee Loven_                      DEPUTY

# Exhibit E-6

Filed: 1/13/2025 9:59 AM
David R. Lloyd, District Clerk
Johnson County, Texas
By: Amaris Montemayor, Deputy

## CAUSE NO. DC-C202400996

| | | |
|---|---|---|
| STATE OF TEXAS, | § | |
| | § | |
| Plaintiff, | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | |
| | § | 18TH JUDICIAL DISTRICT |
| 3M COMPANY; CORTEVA, INC., | § | |
| DUPONT DEMOURS, INC., AND | § | |
| EIDP, INC. F/K/A E. I. DU PONT DE | § | JOHNSON COUNTY, TEXAS |
| NEMOURS AND COMPANY, | § | |
| | § | |
| Defendants. | § | |

### DEFENDANT 3M COMPANY INC.'S SPECIAL APPEARANCE TO CONTEST PERSONAL JURISDICTION AND—SUBJECT TO SPECIAL APPEARANCE— ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S ORIGINAL PETITION

Defendant 3M Company ("3M") hereby specially appears for the limited purpose of objecting to this Court's jurisdiction over 3M. Subject to and without waiving its special appearance, 3M generally answers and raises affirmative defenses to the allegations in plaintiff State of Texas's Original Petition filed on December 11, 2024.

### I.     3M'S SPECIAL APPEARANCE TO CONTEST PERSONAL JURISDICTION

Under Texas Rule of Civil Procedure 120a, 3M—a Delaware corporation headquartered in Minnesota—makes this special appearance to this entire proceeding for the limited purpose of objecting to the jurisdiction of the Court. 3M files this special appearance before any other plea, pleading, or motion.

The State alleges that 3M engaged in deceptive trade practices by failing to disclose alleged health risks and environmental harms associated with its products. While 3M believes the State's claim is meritless, it specially appears now only to challenge the propriety of this forum to adjudicate this dispute.

A Texas court may not exercise personal jurisdiction over a nonresident defendant like 3M unless "(1) the defendant has established minimum contacts with [Texas], and (2) the exercise of jurisdiction comports with the traditional notions of fair play and substantial justice." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007). As the plaintiff, the State bears the burden to plead "sufficient allegations" for this Court to exercise personal jurisdiction over 3M. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). But the sparse allegations in the State's petition fail to carry that burden either for general or specific jurisdiction—and, as a result, 3M's special appearance should be sustained.

*First*, 3M is not subject to general jurisdiction because it is not "at home" in the state of Texas. General jurisdiction exists only where a defendant's "affiliations with the State are so continuous and systematic as to render [it] *essentially at home* in the forum State." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 565 (Tex. 2018) (emphasis added) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). This is such a high bar that the Texas Supreme Court has stated categorically that "[c]ourts do not have general jurisdiction over corporate defendants that are neither incorporated in the forum state nor have their principal place of business there, absent some relatively substantial contacts with the forum state." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016). As the State's petition recognizes, 3M is incorporated in Delaware and has its principal place of business in Minnesota. Pet. ¶ 8. The State alleges no facts and makes no argument even suggesting that this is an "exceptional" case nevertheless warranting general jurisdiction. *Daimler*, 571 U.S. at 128–131 & 139 n.19. 3M is not at home in Texas, and general jurisdiction is therefore lacking.

*Second*, 3M is not subject to specific jurisdiction in Texas because this action does not arise from 3M's purported contacts with Texas. "For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant's contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts." *Am. Type*

*Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). A cause of action arises from or relates to the defendant's contacts with the forum only when there is "a 'substantial connection' between those activities and the operative facts of the litigation." *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 890 (Tex. 2017). The State has not made this showing.

In the entire 114-paragraph petition, the State gestures in only a handful of ways that even loosely connect 3M to Texas, alleging that venue is appropriate in Johnson County because "Defendants" have "done business in Johnson County." Pet. ¶ 12. The State does not even bother to allege that 3M specifically has done business in Johnson County—instead vaguely grouping all four defendants together. In contrast to its allegations with respect to defendant New DuPont, the State does *not* allege that 3M "does business throughout the United States, including in the State of Texas." *Compare* Pet. ¶ 10 *with* Pet. ¶ 8.

The State's assertions that defendants have "done business" in Johnson County, "sold to Texas consumers," and "marketed these products in Texas," Pet. ¶¶ 1, 12, simply parrots statutory language; they are not jurisdictional facts. The State does not offer any substantive support for its conclusory assertions. But "conclusory statements" cannot support specific jurisdiction. *Predator Downhole Inc. v. Flotek Indus., Inc.*, 504 S.W.3d 394, 408–09 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (no specific jurisdiction where the alleged contacts with Texas were "only implied or stated in a conclusory manner"); *see also Urban v. Barker*, No. 14-06-00387-CV, 2007 WL 665118, at *5 (Tex. App.—Houston [14th Dist.] Mar. 6, 2007, no pet.) (same where the petition "contains conclusory statements alleging misrepresentations and fraudulent conduct"); *Haferkamp v. Grunstein*, No. 11-10-00194-CV, 2012 WL 1632009, at *6 (Tex. App.—Eastland May 10, 2012, pet. denied) ("[Plaintiff] did not meet her initial burden of pleading sufficient allegations to bring appellees within the provisions of the Texas long-arm statute . . . . [T]he petition was vague and conclusory regarding jurisdiction.").

While the State contends that 3M misrepresented the safety of its products or omitted information, Pet. ¶¶ 47–67, it does not allege that 3M—which is located in Minnesota—made any "purposeful" alleged misrepresentations or omissions directed to Texas consumers. *Am. Type Culture Collection, Inc.*, 83 S.W.3d at 806. Indeed, in the petition's twenty paragraphs devoted to 3M, Pet. ¶¶ 47–67, there is not a single mention of Texas. Even if the alleged deceptive trade practices were received in Texas, it is settled law that a defendant is not subject to specific jurisdiction simply because its out-of-state representations happened to be *received* in Texas. "[E]ven if a tort was committed and even if [defendant] knew her actions would cause an injury in Texas, her contacts do not rise to the level of purposeful availment simply because the alleged harm occurred in Texas." *Old Republic*, 549 S.W.3d at 565; *see also Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791–92 (Tex. 2005) (no specific jurisdiction even where alleged misrepresentations were received by a Texas resident in Texas).

The State has wholly failed to plead "sufficient allegations" establishing any basis to exercise personal jurisdiction over 3M in this case. *Moki Mac*, 221 S.W.3d at 574. Accordingly, the Court should sustain 3M's special appearance and enter a final judgment dismissing the State's claims against 3M for want of jurisdiction.

## II.    SUBJECT TO 3M'S SPECIAL APPEARANCE, 3M'S GENERAL DENIAL

Subject to 3M's special appearance to contest personal jurisdiction and without waiving any other defenses, and pursuant to Texas Rule of Civil Procedure 92, 3M generally denies all allegations, demands, causes of action, and claims for relief set forth in the petition, and demands proof thereof as required by law.

## III.    SUBJECT TO 3M'S SPECIAL APPEARANCE, 3M'S AFFIRMATIVE DEFENSES

Subject to 3M's special appearance to contest personal jurisdiction and without waiving any other defenses, and along with its general denial, 3M states as follows and sets forth affirmatively

matters constituting an avoidance or an affirmative defense under Texas Rule of Civil Procedure 94. 3M reserves the right to assert such other and further matters constituting an avoidance or an affirmative defense as may be revealed in further discovery and/or investigation in this action.

1.    The State failed to provide 3M with proper notice before bringing suit. *See* Tex. Bus. & Com. Code Ann. § 17.505(a) ("As a prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant."); *see also* Tex. Bus. & Com. Code § 17.47 ("the consumer protection division shall, at least seven days prior to instituting such court action, contact such person to inform him in general of the alleged unlawful conduct").

2.    The State's claim is barred, in whole or in part, by intervening acts or omissions.

3.    The State's claim is barred by waiver because the State unreasonably delayed in bringing its claim despite knowing of 3M's alleged conduct and its rights under the DTPA.

4.    The State's claim is barred by laches because the State unreasonably delayed in bringing its claim, to 3M's detriment, despite knowing of its rights under the DTPA and 3M's conduct.

5.    The State's claim is barred because it has improperly split its claim for PFAS contamination into two cases:  this lawsuit seeking recovery for non-aqueous film-forming foam sources and another lawsuit seeking recovery for aqueous film-forming foam sources.

6.    The State's claim for civil penalties and injunctive relief is barred or limited by the due-process clause of the Fifth and Fourteenth Amendments of the United States Constitution and the prohibition against excessive fines in the Eighth Amendment of the United States Constitution and Article 1, Section 13 of the Texas Constitution.

7.      To the extent that 3M stopped selling any relevant PFAS or PFAS-containing products before the suit was filed, it has cured any alleged violation of the DTPA.  *See Ramsey v. Gen. Motors Corp.*, 685 S.W.2d 15, 16 (Tex. 1985) (Under the DTPA, the "defense of 'cure' is an affirmative defense which the defendant must plead and prove.").

8.      As mere puffery, 3M's claims about its products do not fall within the scope of the DTPA.  *See RRTM Rest. Corp. v. Keeping*, 766 S.W.2d 804, 807 (Tex. App. 1988) ("mere 'puffing'" does not violate the DTPA), *writ denied* (Sept. 6, 1989).

9.      The State failed to mitigate its damages.  *See Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 858 (Tex. 1999) ("The 'duty to mitigate' . . . applies to the DTPA.").

10.      The State has already sought recovery from 3M under some other provision of law, precluding recovery under the DTPA.  *See* Tex. Bus. & Com. Code Ann. § 17.43 ("no recovery shall be permitted under both [the DTPA] and another law of both damages and penalties for the same act or practice").

11.      3M is not liable for any alleged violation because the fault lies with other manufacturers and sellers of PFAS products.  *See* Tex. Bus. & Com. Code Ann. § 17.555 ("A person against whom an action has been brought under [the DTPA] may seek contribution or indemnity from one who, under the statute law or at common law, may have liability for the damaging event of which the consumer complains.").

12.      3M's alleged misconduct constituted protected speech under the First Amendment. 3M's speech was not misleading, and the State's attempts to punish 3M for its speech are not sufficiently tailored to a substantial interest.  *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980) ("If the communication is neither misleading nor related to unlawful activity, the government's power is more circumscribed.  The State must assert a substantial interest to be achieved by restrictions on commercial speech.  Moreover, the regulatory technique

must be in proportion to that interest.  The limitation on expression must be designed carefully to achieve the State's goal.").

13.     The State has not met any of the required elements for a preliminary injunction.  *See Parks v. U.S. Home Corp.*, 652 S.W.2d 479, 485 (Tex. App. 1983) ("In order to obtain injunctive relief, the applicant must show a substantial likelihood of success on the merits, a substantial threat of irreparable injury, that the threatened injury to the applicant outweighs the threatened harm the injunction may cause to the defendants, and that the granting of the injunction will serve the public interest. . . .  These factors must also be established in order to obtain injunctive relief under [the DTPA]."), *writ dismissed*.

## IV.    <u>PRAYER</u>

For all of the above reasons, 3M asks the Court to set a hearing for 3M's special appearance to contest personal jurisdiction and, after the hearing, to sustain 3M's special appearance and enter a final judgment dismissing the State's claims against 3M for want of jurisdiction.

Subject to and without waiver of its special appearance to contest personal jurisdiction, 3M prays for entry of judgment against the State and in favor of Defendant as follows:

1.      That Defendant is not liable under any of the Petition's claims, the State sustained no damages, and the State takes nothing;

2.      That State is not entitled to damages, interest, attorneys' fees, or costs;

3.      That Defendant be awarded judgment in its favor against the State;

4.      That Defendant be awarded its attorney's fees and costs; and

5.      For such other and further relief as the Court deems just and proper.

Dated:  January 13, 2025

Respectfully submitted,

*/s/ Gregg J. Costa*
Gregg J. Costa
  State Bar No. 24028160
GIBSON, DUNN & CRUTCHER LLP
811 Main St., Suite 3000
Houston, TX 77002
Telephone: (346) 718-6600
Facsimile: (346) 718-6620
GCosta@gibsondunn.com


Ashley E. Johnson
  State Bar No. 24067689
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Ave., Suite 2100
Dallas, TX 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2936
AJohnson@gibsondunn.com

*Attorneys for Defendant 3M Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2025, the foregoing document was served on all counsel of record by electronic mail in accordance with the Texas Rules of Civil Procedure.

*/s/ Gregg J. Costa*
Gregg J. Costa

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Wendy Cassidy on behalf of John Cox
Bar No. 24003722
WCassidy@gibsondunn.com
Envelope ID: 96124493
Filing Code Description: Answer/Response
Filing Description: Special Appearance to contest Personal Jurisdiction and Answer Affirmative Defenses to Original Petition
Status as of 1/13/2025 10:18 AM CST

Associated Case Party: STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William J.Jackson | | BJackson@KelleyDrye.com | 1/13/2025 9:59:24 AM | SENT |
| Jennifer C.Barks | | JBarks@KelleyDrye.com | 1/13/2025 9:59:24 AM | SENT |
| Lauren H.Shah | | LShah@KelleyDrye.com | 1/13/2025 9:59:24 AM | SENT |
| Maria F.Pimienta | | MPimienta@KelleyDrye.com | 1/13/2025 9:59:24 AM | SENT |
| David I.Zalman | | DZalman@KelleyDrye.com | 1/13/2025 9:59:24 AM | SENT |
| Glenn T.Graham | | GGraham@KelleyDrye.com | 1/13/2025 9:59:24 AM | SENT |
| Elizabeth N.Krasnow | | EKrasnow@KelleyDrye.com | 1/13/2025 9:59:24 AM | SENT |
| Jennifer Roscetti | | Jennifer.Roscetti@oag.texas.gov | 1/13/2025 9:59:24 AM | SENT |
| Kelley Owens | | Kelley.Owens@oag.texas.gov | 1/13/2025 9:59:24 AM | SENT |
| Katie B.Hobson | | Katie.hobson@oag.texas.gov | 1/13/2025 9:59:24 AM | SENT |
| Brittany Wright | | Brittany.wright@oag.texas.gov | 1/13/2025 9:59:24 AM | SENT |
| Jake Marx | | Jake.Marx@oag.texas.gov | 1/13/2025 9:59:24 AM | SENT |
| Mark Lanier | | Mark.Lanier@lanierlawfirm.com | 1/13/2025 9:59:24 AM | SENT |
| Alex Brown | | Alex.Brown@Lanierlawfirm.com | 1/13/2025 9:59:24 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| KDW Service Email | | Docketing@KelleyDrye.com | 1/13/2025 9:59:24 AM | SENT |

Associated Case Party: 3M COMPANY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Wendy Cassidy on behalf of John Cox
Bar No. 24003722
WCassidy@gibsondunn.com
Envelope ID: 96124493
Filing Code Description: Answer/Response
Filing Description: Special Appearance to contest Personal Jurisdiction
and Answer Affirmative Defenses to Original Petition
Status as of 1/13/2025 10:18 AM CST

Associated Case Party: 3M COMPANY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Wendy Cassidy | | WCassidy@gibsondunn.com | 1/13/2025 9:59:24 AM | SENT |
| Rachel Robertson | | rrobertson@gibsondunn.com | 1/13/2025 9:59:24 AM | SENT |
| Prerak Shah | | pshah@gibsondunn.com | 1/13/2025 9:59:24 AM | SENT |
| Savannah Silver | | ssilver@gibsondunn.com | 1/13/2025 9:59:24 AM | SENT |
| Ashley E.Johnson | | ajohnson@gibsondunn.com | 1/13/2025 9:59:24 AM | SENT |
| John T.Cox | | TCox@gibsondunn.com | 1/13/2025 9:59:24 AM | SENT |
| Gregg Costa | | GCosta@gibsondunn.com | 1/13/2025 9:59:24 AM | SENT |
| Alexa Acquista | | AAcquista@gibsondunn.com | 1/13/2025 9:59:24 AM | SENT |

# Exhibit E-7

Filed: 1/13/2025 9:30 AM
David R. Lloyd, District Clerk
Johnson County, Texas
By: Amaris Montemayor, Deputy

DC-C202400996

| | | |
|---|---|---|
| **STATE OF TEXAS,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **JOHNSON COUNTY, TEXAS** |
| **3M COMPANY; CORTEVA, INC.,** | § | |
| **DUPONT DE NEMOURS, INC., and** | § | |
| **EIDP, INC. F/K/A E. I. DU PONT DE** | § | |
| **NEMOURS AND COMPANY,** | § | |
| | § | |
| *Defendants.* | § | **18TH JUDICIAL DISTRICT** |
| | § | |

## NOTICE OF APPEARANCE OF GREGG J. COSTA
## AS COUNSEL FOR DEFENDANT 3M COMPANY

PLEASE TAKE NOTICE that Defendant 3M Company ("3M") hereby provides notice that attorney Gregg J. Costa is appearing as its counsel of record in this case. 3M respectfully requests that copies of all pleadings, orders, notices, and other papers filed in this action be provided to Mr. Costa as follows:

> Gregg J. Costa
> GIBSON, DUNN & CRUTCHER LLP
> 811 Main St., Suite 3000
> Houston, Texas 77002
> Telephone: (346) 718-6649
> Facsimile: (346) 718-6979
> GCosta@gibsondunn.com

DATED:  January 13, 2025                  Respectfully submitted,


                                          */s/ Gregg J. Costa*
                                          Gregg J. Costa
                                          Texas Bar No. 24028160
                                          **GIBSON DUNN & CRUTCHER LLP**
                                          811 Main St., Suite 3000
                                          Houston, Texas 77002
                                          Telephone: (346) 718-6649
                                          Facsimile: (346) 718-6979
                                          GCosta@gibsondunn.com

                                          ***ATTORNEY FOR DEFENDANT 3M COMPANY***




## CERTIFICATE OF SERVICE

        I certify that on January 13, 2025, a true and correct copy of this document was served on

all counsel of record in accordance with Texas Rule of Civil Procedure 21a.



                                          */s/ Gregg J. Costa*
                                          Gregg J. Costa

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Wendy Cassidy on behalf of John Cox
Bar No. 24003722
WCassidy@gibsondunn.com
Envelope ID: 96123693
Filing Code Description: Notice
Filing Description: Notice of Appearance of Gregg J. Costa as Counsel for Defendant 3M Company
Status as of 1/13/2025 10:16 AM CST

Associated Case Party: STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| William J.Jackson | | BJackson@KelleyDrye.com | 1/13/2025 9:30:59 AM | SENT |
| Jennifer C.Barks | | JBarks@KelleyDrye.com | 1/13/2025 9:30:59 AM | SENT |
| Lauren H.Shah | | LShah@KelleyDrye.com | 1/13/2025 9:30:59 AM | SENT |
| Maria F.Pimienta | | MPimienta@KelleyDrye.com | 1/13/2025 9:30:59 AM | SENT |
| David I.Zalman | | DZalman@KelleyDrye.com | 1/13/2025 9:30:59 AM | SENT |
| Glenn T.Graham | | GGraham@KelleyDrye.com | 1/13/2025 9:30:59 AM | SENT |
| Elizabeth N.Krasnow | | EKrasnow@KelleyDrye.com | 1/13/2025 9:30:59 AM | SENT |
| Jennifer Roscetti | | Jennifer.Roscetti@oag.texas.gov | 1/13/2025 9:30:59 AM | SENT |
| Kelley Owens | | Kelley.Owens@oag.texas.gov | 1/13/2025 9:30:59 AM | SENT |
| Katie B.Hobson | | Katie.hobson@oag.texas.gov | 1/13/2025 9:30:59 AM | SENT |
| Brittany Wright | | Brittany.wright@oag.texas.gov | 1/13/2025 9:30:59 AM | SENT |
| Jake Marx | | Jake.Marx@oag.texas.gov | 1/13/2025 9:30:59 AM | SENT |
| Mark Lanier | | Mark.Lanier@lanierlawfirm.com | 1/13/2025 9:30:59 AM | SENT |
| Alex Brown | | Alex.Brown@Lanierlawfirm.com | 1/13/2025 9:30:59 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| KDW Service Email | | Docketing@KelleyDrye.com | 1/13/2025 9:30:59 AM | SENT |

Associated Case Party: 3M COMPANY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Wendy Cassidy on behalf of John Cox
Bar No. 24003722
WCassidy@gibsondunn.com
Envelope ID: 96123693
Filing Code Description: Notice
Filing Description: Notice of Appearance of Gregg J. Costa as Counsel for
Defendant 3M Company
Status as of 1/13/2025 10:16 AM CST

Associated Case Party: 3M COMPANY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Wendy Cassidy | | WCassidy@gibsondunn.com | 1/13/2025 9:30:59 AM | SENT |
| Rachel Robertson | | rrobertson@gibsondunn.com | 1/13/2025 9:30:59 AM | SENT |
| Prerak Shah | | pshah@gibsondunn.com | 1/13/2025 9:30:59 AM | SENT |
| Savannah Silver | | ssilver@gibsondunn.com | 1/13/2025 9:30:59 AM | SENT |
| Ashley E.Johnson | | ajohnson@gibsondunn.com | 1/13/2025 9:30:59 AM | SENT |
| John T.Cox | | TCox@gibsondunn.com | 1/13/2025 9:30:59 AM | SENT |
| Gregg Costa | | GCosta@gibsondunn.com | 1/13/2025 9:30:59 AM | SENT |
| Alexa Acquista | | AAcquista@gibsondunn.com | 1/13/2025 9:30:59 AM | SENT |

# Exhibit E-8

Filed: 1/13/2025 9:32 AM
David R. Lloyd, District Clerk
Johnson County, Texas
By: Amaris Montemayor, Deputy

DC-C202400996

| | | |
|---|---|---|
| **STATE OF TEXAS,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **JOHNSON COUNTY, TEXAS** |
| **3M COMPANY; CORTEVA, INC.,** | § | |
| **DUPONT DE NEMOURS, INC., and** | § | |
| **EIDP, INC. F/K/A E. I. DU PONT DE** | § | |
| **NEMOURS AND COMPANY,** | § | |
| | § | |
| *Defendants.* | § | **18TH JUDICIAL DISTRICT** |
| | § | |

---

## NOTICE OF APPEARANCE OF ASHLEY E. JOHNSON
## AS COUNSEL FOR DEFENDANT 3M COMPANY

---

PLEASE TAKE NOTICE that Defendant 3M Company ("3M") hereby provides notice that attorney Ashley E. Johnson is appearing as its counsel of record in this case. 3M respectfully requests that copies of all pleadings, orders, notices, and other papers filed in this action be provided to Ms. Johnson as follows:

> Ashley E. Johnson
> GIBSON, DUNN & CRUTCHER LLP
> 2001 Ross Avenue, Suite 2100
> Dallas, Texas 75201-2911
> Telephone: (214) 698-3111
> Facsimile: (214) 571-2949
> AJohnson@gibsondunn.com

---

**NOTICE OF APPEARANCE OF ASHLEY E. JOHNSON**
**AS COUNSEL FOR DEFENDANT 3M COMPANY**                    **PAGE 1**

DATED:  January 13, 2025                        Respectfully submitted,


                                                */s/ Ashley E. Johnson*
                                                Ashley E. Johnson
                                                Texas Bar No. 24067689
                                                **GIBSON DUNN & CRUTCHER LLP**
                                                2001 Ross Avenue, Suite 2100
                                                Dallas, Texas 75201
                                                Telephone: (214) 698-3111
                                                Facsimile: (214) 571-2949
                                                AJohnson@gibsondunn.com

                                                ***ATTORNEY FOR DEFENDANT 3M COMPANY***




                              **CERTIFICATE OF SERVICE**

        I certify that on January 13, 2025, a true and correct copy of this document was served on

all counsel of record in accordance with Texas Rule of Civil Procedure 21a.



                                                */s/ Ashley E. Johnson*
                                                Ashley E. Johnson

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Wendy Cassidy on behalf of John Cox
Bar No. 24003722
WCassidy@gibsondunn.com
Envelope ID: 96123988
Filing Code Description: Notice
Filing Description: Notice of Appearance of Ashley E. Johnson as Counsel for Defendant 3M Company
Status as of 1/13/2025 10:17 AM CST

Associated Case Party: STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William J.Jackson | | BJackson@KelleyDrye.com | 1/13/2025 9:32:42 AM | SENT |
| Jennifer C.Barks | | JBarks@KelleyDrye.com | 1/13/2025 9:32:42 AM | SENT |
| Lauren H.Shah | | LShah@KelleyDrye.com | 1/13/2025 9:32:42 AM | SENT |
| Maria F.Pimienta | | MPimienta@KelleyDrye.com | 1/13/2025 9:32:42 AM | SENT |
| David I.Zalman | | DZalman@KelleyDrye.com | 1/13/2025 9:32:42 AM | SENT |
| Glenn T.Graham | | GGraham@KelleyDrye.com | 1/13/2025 9:32:42 AM | SENT |
| Elizabeth N.Krasnow | | EKrasnow@KelleyDrye.com | 1/13/2025 9:32:42 AM | SENT |
| Jennifer Roscetti | | Jennifer.Roscetti@oag.texas.gov | 1/13/2025 9:32:42 AM | SENT |
| Kelley Owens | | Kelley.Owens@oag.texas.gov | 1/13/2025 9:32:42 AM | SENT |
| Katie B.Hobson | | Katie.hobson@oag.texas.gov | 1/13/2025 9:32:42 AM | SENT |
| Brittany Wright | | Brittany.wright@oag.texas.gov | 1/13/2025 9:32:42 AM | SENT |
| Jake Marx | | Jake.Marx@oag.texas.gov | 1/13/2025 9:32:42 AM | SENT |
| Mark Lanier | | Mark.Lanier@lanierlawfirm.com | 1/13/2025 9:32:42 AM | SENT |
| Alex Brown | | Alex.Brown@Lanierlawfirm.com | 1/13/2025 9:32:42 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| KDW Service Email | | Docketing@KelleyDrye.com | 1/13/2025 9:32:42 AM | SENT |

Associated Case Party: 3M COMPANY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Wendy Cassidy on behalf of John Cox
Bar No. 24003722
WCassidy@gibsondunn.com
Envelope ID: 96123988
Filing Code Description: Notice
Filing Description: Notice of Appearance of Ashley E. Johnson as Counsel for Defendant 3M Company
Status as of 1/13/2025 10:17 AM CST

Associated Case Party: 3M COMPANY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Wendy Cassidy | | WCassidy@gibsondunn.com | 1/13/2025 9:32:42 AM | SENT |
| Rachel Robertson | | rrobertson@gibsondunn.com | 1/13/2025 9:32:42 AM | SENT |
| Prerak Shah | | pshah@gibsondunn.com | 1/13/2025 9:32:42 AM | SENT |
| Savannah Silver | | ssilver@gibsondunn.com | 1/13/2025 9:32:42 AM | SENT |
| Ashley E.Johnson | | ajohnson@gibsondunn.com | 1/13/2025 9:32:42 AM | SENT |
| John T.Cox | | TCox@gibsondunn.com | 1/13/2025 9:32:42 AM | SENT |
| Gregg Costa | | GCosta@gibsondunn.com | 1/13/2025 9:32:42 AM | SENT |
| Alexa Acquista | | AAcquista@gibsondunn.com | 1/13/2025 9:32:42 AM | SENT |

# Exhibit E-9

Filed: 1/15/2025 3:52 PM
David R. Lloyd, District Clerk
Johnson County, Texas
By: Amaris Montemayor, Deputy

CAUSE NO. DC-C202400996

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | JOHNSON COUNTY, TEXAS |
| | § | |
| 3M COMPANY; CORTEVA, INC.; | § | |
| DUPONT DE NEMOURS, INC.; and | § | |
| EIDP, INC. F/K/A E.I. DU PONT DE | § | |
| NEMOURS AND COMPANY, | § | |
| | | |
| **Defendants.** | | 18TH JUDICIAL DISTRICT |

## UNOPPOSED MOTION FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT

Defendants Corteva, Inc., DuPont de Nemours, Inc., and EIDP, Inc. file this unopposed motion pursuant to Texas Rule of Civil Procedure 500.5(c) seeking an extension of time to answer or otherwise respond to Plaintiff's Complaint in this action.

Under the Texas Rules of Civil Procedure, Defendant Corteva Inc.'s deadline to file their responsive pleading was January 13, 2025. Defendants DuPont de Nemours, Inc. and EIDP, Inc. have not yet been served; therefore, there is currently no deadline for their responsive pleading. In order for Defendants to have sufficient time to evaluate the allegations in the Complaint, the above-listed Defendants move to extend their deadline to answer or otherwise respond to the Complaint until January 27, 2025. The requested extension is not sought for delay and does not change the date for any hearing.

Counsel for Defendants Corteva, Inc., DuPont de Nemours, Inc., and EIDP, Inc. conferred with counsel for Plaintiff and confirmed that Plaintiff agrees with the relief sought. In conjunction with this Unopposed Motion, counsel for Defendants DuPont de Nemours, Inc. and EIDP, Inc. have agreed to accept service on behalf of those clients.

1

Defendants Corteva, Inc., DuPont de Nemours, Inc., and EIDP, Inc. therefore respectfully ask this Court to extend until January 27, 2025 the time within which they may answer or otherwise respond to Plaintiff's Complaint.  This is Defendants' first request for an extension of this deadline.

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

*/s/ Britta N. Todd*
Britta N. Todd
State Bar No.: 24128066
E-Mail: btodd@shb.com
600 Travis Street, Suite 3400
Houston, Texas 77002-2926
Telephone:  713.227.8008
Facsimile:  713.227.9508

**ATTORNEY FOR DEFENDANTS**

## **CERTIFICATE OF CONFERENCE**

I, the undersigned attorney, hereby certify that counsel for Defendants Corteva, Inc., DuPont de Nemours, Inc. and EIDP, Inc. conferred with counsel for Plaintiff regarding Defendants' response date. Counsel for Plaintiff does not oppose this Motion.

/s/ *Britta N. Todd*
Britta N. Todd

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned attorney, hereby certify that I served a copy of the foregoing document to the attorneys/parties listed below this 15th day of January 2025, via the Court's electronic filing system.

Jennifer Roscetti
Kelley Owens
Office of the Attorney General of Texas
Consumer Protection Division
P.O. Box 12548, MC-010
Austin, Texas 78701
Jennifer.roscetti@oag.texas.gov
Kelley.owens@oag.texas.gov

Katie B. Hobson
Brittany E. Wright
Jake Marx
Office of the Attorney General of Texas
Environmental Protection Division
P.O. Box 12548, MC-010
Austin, Texas 78701
katie.hobson@oag.texas.gov
brittany.wright@oag.texas.gov
jake.marx@oag.texas.gov

Mark Lanier
Alex Brown
The Lanier Law Firm, P.C.
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, Texas 77054
Mark.lanier@lanierlawfirm.com
Alex.brown@lanierlawfirm.com

*Attorneys for Plaintiff*

William J. Jackson
Jennifer C. Barks
Lauren H. Shah
Maria F. Pimienta
Kelley Drye & Warren LLP
515 Post Oak Blvd.
Suite 900
Houston, Texas 77027
bjackson@kelleydrye.com
jbarks@kelleydrye.com
lshah@kelleydrye.com
mpimienta@kelleydrye.com

David I. Zalman
Glenn T. Graham
Elizabeth N. Krasnow
Kelley Drye & Warren LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Dzalman@kelleydrye.com
ggraham@kelleydrye.com
ekrasnow@kelleydrye.com

/s/ *Britta N. Todd*
Britta N. Todd

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Tiffany Cuevas on behalf of Britta Todd
Bar No. 24128066
trodriguez@shb.com
Envelope ID: 96268920
Filing Code Description: Motion (No Fee)
Filing Description: Unopposed Motion for Extension of Time to Answer or
Otherwise Respond to Plaintiffs' Complaint
Status as of 1/15/2025 3:59 PM CST

Associated Case Party: STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| irene tong | | irene.tong@oag.texas.gov | 1/15/2025 3:52:56 PM | SENT |
| Laura Courtney | | laura.courtney@oag.texas.gov | 1/15/2025 3:52:56 PM | SENT |
| William J.Jackson | | BJackson@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |
| Jennifer C.Barks | | JBarks@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |
| Lauren H.Shah | | LShah@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |
| Maria F.Pimienta | | MPimienta@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |
| David I.Zalman | | DZalman@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |
| Glenn T.Graham | | GGraham@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |
| Elizabeth N.Krasnow | | EKrasnow@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |
| Jennifer Roscetti | | Jennifer.Roscetti@oag.texas.gov | 1/15/2025 3:52:56 PM | SENT |
| Kelley Owens | | Kelley.Owens@oag.texas.gov | 1/15/2025 3:52:56 PM | SENT |
| Katie B.Hobson | | Katie.hobson@oag.texas.gov | 1/15/2025 3:52:56 PM | SENT |
| Brittany Wright | | Brittany.wright@oag.texas.gov | 1/15/2025 3:52:56 PM | SENT |
| Jake Marx | | Jake.Marx@oag.texas.gov | 1/15/2025 3:52:56 PM | SENT |
| Mark Lanier | | Mark.Lanier@lanierlawfirm.com | 1/15/2025 3:52:56 PM | SENT |
| Alex Brown | | Alex.Brown@Lanierlawfirm.com | 1/15/2025 3:52:56 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| KDW Service Email | | Docketing@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |

Associated Case Party: 3M COMPANY

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tiffany Cuevas on behalf of Britta Todd
Bar No. 24128066
trodriguez@shb.com
Envelope ID: 96268920
Filing Code Description: Motion (No Fee)
Filing Description: Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Plaintiffs' Complaint
Status as of 1/15/2025 3:59 PM CST

Associated Case Party: 3M COMPANY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Wendy Cassidy | | WCassidy@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |
| Rachel Robertson | | rrobertson@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |
| Prerak Shah | | pshah@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |
| Savannah Silver | | ssilver@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |
| Ashley E.Johnson | | ajohnson@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |
| John T.Cox | | TCox@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |
| Gregg Costa | | GCosta@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |
| Alexa Acquista | | AAcquista@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |

Associated Case Party: CORTEVA, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Britta N.Todd | | btodd@shb.com | 1/15/2025 3:52:56 PM | SENT |
| Retisha Swearington | | rswearington@shb.com | 1/15/2025 3:52:56 PM | SENT |

Associated Case Party: DUPONT DE NEMOURS, INC, d/b/a Dupont.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Britta N.Todd | | btodd@shb.com | 1/15/2025 3:52:56 PM | SENT |
| Retisha Swearington | | rswearington@shb.com | 1/15/2025 3:52:56 PM | SENT |

Associated Case Party: EIDP, INC. f/k/a E. I. DU PONT DE NEMOURS AND COMPANY

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Tiffany Cuevas on behalf of Britta Todd
Bar No. 24128066
trodriguez@shb.com
Envelope ID: 96268920
Filing Code Description: Motion (No Fee)
Filing Description: Unopposed Motion for Extension of Time to Answer or
Otherwise Respond to Plaintiffs' Complaint
Status as of 1/15/2025 3:59 PM CST

Associated Case Party: EIDP, INC. f/k/a E. I. DU PONT DE NEMOURS AND
COMPANY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Britta N.Todd | | btodd@shb.com | 1/15/2025 3:52:56 PM | SENT |
| Retisha Swearington | | rswearington@shb.com | 1/15/2025 3:52:56 PM | SENT |

# Exhibit E-10

**CAUSE NO. DC-C202400996**

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | JOHNSON COUNTY, TEXAS |
| | § | |
| 3M COMPANY; CORTEVA, INC.; | § | |
| DUPONT DE NEMOURS, INC.; and | § | |
| EIDP, INC. F/K/A E.I. DU PONT DE | § | |
| NEMOURS AND COMPANY, | § | |
| | | |
| **Defendants.** | | 18TH JUDICIAL DISTRICT |

**[PROPOSED] ORDER GRANTING UNOPPOSED MOTION FOR
EXTENSION OF TIME**

This matter, having come before the Court on Defendant Corteva, Inc., DuPont de Nemours, Inc. and EIDP, Inc.'s Unopposed Motion for Extension of Time to Answer or Otherwise Respond to the Amended Complaint, being duly advised, hereby GRANTS said Motion.

IT IS THEREFORE ORDERED that Defendants Corteva, Inc., DuPont de Nemours, Inc. and EIDP, Inc. shall have up to and including January 27, 2025 in which to answer or otherwise respond to the Amended Complaint.

**SO ORDERED**.

_____
Date

_____
The Honorable Sydney B. Hewlett
United States District Judge

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tiffany Cuevas on behalf of Britta Todd
Bar No. 24128066
trodriguez@shb.com
Envelope ID: 96268920
Filing Code Description: Motion (No Fee)
Filing Description: Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Plaintiffs' Complaint
Status as of 1/15/2025 3:59 PM CST

Associated Case Party: STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Laura Courtney | | laura.courtney@oag.texas.gov | 1/15/2025 3:52:56 PM | SENT |
| William J.Jackson | | BJackson@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |
| Jennifer C.Barks | | JBarks@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |
| Lauren H.Shah | | LShah@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |
| Maria F.Pimienta | | MPimienta@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |
| David I.Zalman | | DZalman@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |
| Glenn T.Graham | | GGraham@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |
| Elizabeth N.Krasnow | | EKrasnow@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |
| Jennifer Roscetti | | Jennifer.Roscetti@oag.texas.gov | 1/15/2025 3:52:56 PM | SENT |
| Kelley Owens | | Kelley.Owens@oag.texas.gov | 1/15/2025 3:52:56 PM | SENT |
| Katie B.Hobson | | Katie.hobson@oag.texas.gov | 1/15/2025 3:52:56 PM | SENT |
| Brittany Wright | | Brittany.wright@oag.texas.gov | 1/15/2025 3:52:56 PM | SENT |
| Jake Marx | | Jake.Marx@oag.texas.gov | 1/15/2025 3:52:56 PM | SENT |
| Mark Lanier | | Mark.Lanier@lanierlawfirm.com | 1/15/2025 3:52:56 PM | SENT |
| Alex Brown | | Alex.Brown@Lanierlawfirm.com | 1/15/2025 3:52:56 PM | SENT |
| irene tong | | irene.tong@oag.texas.gov | 1/15/2025 3:52:56 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| KDW Service Email | | Docketing@KelleyDrye.com | 1/15/2025 3:52:56 PM | SENT |

Associated Case Party: 3M COMPANY

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tiffany Cuevas on behalf of Britta Todd
Bar No. 24128066
trodriguez@shb.com
Envelope ID: 96268920
Filing Code Description: Motion (No Fee)
Filing Description: Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Plaintiffs' Complaint
Status as of 1/15/2025 3:59 PM CST

Associated Case Party: 3M COMPANY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Wendy Cassidy | | WCassidy@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |
| Ashley E.Johnson | | ajohnson@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |
| John T.Cox | | TCox@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |
| Gregg Costa | | GCosta@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |
| Alexa Acquista | | AAcquista@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |
| Rachel Robertson | | rrobertson@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |
| Prerak Shah | | pshah@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |
| Savannah Silver | | ssilver@gibsondunn.com | 1/15/2025 3:52:56 PM | SENT |

Associated Case Party: CORTEVA, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Retisha Swearington | | rswearington@shb.com | 1/15/2025 3:52:56 PM | SENT |
| Britta N.Todd | | btodd@shb.com | 1/15/2025 3:52:56 PM | SENT |

Associated Case Party: DUPONT DE NEMOURS, INC, d/b/a Dupont.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Retisha Swearington | | rswearington@shb.com | 1/15/2025 3:52:56 PM | SENT |
| Britta N.Todd | | btodd@shb.com | 1/15/2025 3:52:56 PM | SENT |

Associated Case Party: EIDP, INC. f/k/a E. I. DU PONT DE NEMOURS AND COMPANY

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Tiffany Cuevas on behalf of Britta Todd
Bar No. 24128066
trodriguez@shb.com
Envelope ID: 96268920
Filing Code Description: Motion (No Fee)
Filing Description: Unopposed Motion for Extension of Time to Answer or
Otherwise Respond to Plaintiffs' Complaint
Status as of 1/15/2025 3:59 PM CST

Associated Case Party: EIDP, INC. f/k/a E. I. DU PONT DE NEMOURS AND
COMPANY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Retisha Swearington | | rswearington@shb.com | 1/15/2025 3:52:56 PM | SENT |
| Britta N.Todd | | btodd@shb.com | 1/15/2025 3:52:56 PM | SENT |