# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| STATE OF TEXAS,<br><br>    Plaintiff,<br><br> v.<br><br>3M COMPANY; CORTEVA, INC., DUPONT<br>DE NEMOURS, INC., and EIDP, INC. f/k/a<br>E. I. DU PONT DE NEMOURS AND<br>COMPANY,<br><br>    Defendants. | CIVIL ACTION NO. 3:25-cv-00122-L |

## 3M COMPANY'S RESPONSE AND BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ...................................................................................................................... 4

I.     The Court Has Diversity Jurisdiction Under 28 U.S.C. § 1332(a). ..................... 4

    A.     Texas Consumers Are The Real Parties In Interest. ................................. 5

    B.     Texas Has No Legitimate Quasi-Sovereign Interest In This Litigation. .............. 15

II.    The Court Has Jurisdiction Because This Suit Is A CAFA Class Action. ....................... 17

III.   Fees Should Be Denied As 3M's Bases For Removal Are Objectively Reasonable ........ 24

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adams v. 3M Co.*,
  65 F.4th 802 (6th Cir. 2023) ................................................................................3

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
  458 U.S. 592 (1982)...............................................................6, 8, 9, 13, 15

*Am. Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974)..............................................................................20

*Amalgamated Gadget, L.P. v. Mack*,
  2004 WL 549483 (N.D. Tex. Feb. 10, 2004).........................................24

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
  No. 2873 (J.P.M.L.) .................................................................................4

*Avila v. State*,
  252 S.W.3d 632 (Tex. App.—Tyler 2008, no pet.) ...............................19

*Bara v. Major Funding Corp. Liquidating Tr.*,
  876 S.W.2d 469 (Tex. App.—Austin 1994, writ denied).........7, 8, 10, 13, 18, 19, 20

*Baumann v. Chase Inv. Servs. Corp.*,
  747 F.3d 1117 (9th Cir. 2014) ..............................................................22

*Baylor v. U.S. Dep't of Hous. & Urban Dev.*,
  913 F.2d 223 (5th Cir. 1990) ................................................................20

*Butler v. Denka Performance Elastomer, L.L.C.*,
  16 F.4th 427 (5th Cir. 2021) .................................................................18

*CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*,
  638 F. App'x 255 (5th Cir. 2015) .....................................................24, 25

*Cavallini v. State Farm Mut. Auto Ins. Co.*,
  44 F.3d 256 (5th Cir. 1995) ..................................................................11

*City of El Paso v. Alvarez*,
  931 S.W.2d 370 (Tex. App.—El Paso 1996, no writ) ...........................13

*Cochran v. SEC*,
  20 F.4th 194 (5th Cir. 2021) .................................................................21

*Dart Cherokee Basin Operating Co. v. Owens*,
  574 U.S. 81 (2014)............................................................................4, 17

*Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*,
  642 F.3d 728 (9th Cir. 2011) ......................................5, 6, 7, 9, 10, 14, 16, 17

*Farrell Constr. Co. v. Jefferson Parish*,
   896 F.2d 136 (5th Cir. 1990) ..................................................................5, 13

*Grace Ranch, L.L.C. v. BP Am. Prod. Co.*,
   989 F.3d 301 (5th Cir. 2021) .................................5, 6, 8, 9, 12, 13, 16

*State ex rel. Guste v. Fedders Corp.*,
   524 F. Supp. 552 (M.D. La. 1981) ......................................................8, 9, 13

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
   571 U.S. 161 (2014)..................................................................................23

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
   701 F.3d 796 (5th Cir. 2012) ...........................................................22, 23

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
   559 F. App'x 375 (5th Cir. 2014) .............................................................23

*Mississippi ex rel. Hood v. Entergy Miss., Inc.*,
   2019 WL 1433772 (S.D. Miss. Mar. 30, 2019) ......................................22

*Interamericas Invs., Ltd. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   111 F.3d 376 (5th Cir. 1997) ...................................................................22

*In re Katrina Canal Litig. Breaches*,
   524 F.3d 700 (5th Cir. 2008) ...................................................................21

*Louisiana v. Nat'l Oceanic & Atmospheric Admin.*,
   70 F.4th 872 (5th Cir. 2023) ....................................................................16

*Madison v. ADT, L.L.C.*,
   11 F.4th 325 (5th Cir. 2021) ....................................................................24

*Martin v. Franklin Cap. Corp.*,
   546 U.S. 132 (2005)..................................................................................24

*West Virginia ex rel. McGraw v. Comcast Corp.*,
   705 F. Supp. 2d 441 (E.D. Pa. 2010) ..........................................20, 24, 25

*West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*,
   646 F.3d 169 (4th Cir. 2011) ...........................................................22, 25

*Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*,
   954 F.3d 831 (6th Cir. 2020) ...................................................................18

*Missouri v. Illinois*,
   180 U.S. 208 (1901)..................................................................................15

*Mitchell v. Sec. Am., Inc.*,
   2012 WL 13026946 (N.D. Tex. Feb. 13, 2012)..........................................8

*Mo., Kan., & Tex. Ry. Co. v. Hickman*,
   183 U.S. 53 (1901)....................................................5, 6, 7, 8, 9, 10, 12, 14, 16

*Molano v. State*,
    262 S.W.3d 554 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.)..........................20, 21

*Navarro Sav. Ass'n v. Lee*,
    446 U.S. 458 (1980)................................................................................13

*Ochoa-Salgado v. Garland*,
    5 F.4th 615 (5th Cir. 2021) ......................................................................24

*Ohio v. GMAC Mortg., LLC*,
    760 F. Supp. 2d 741 (N.D. Ohio 2011)...................................6, 7, 9, 10, 14

*Pennsylvania v. Mid-Atl. Toyota Distribs., Inc.*,
    704 F.2d 125 (4th Cir. 1983) ....................................................................16

*Rivers v. Charlie Thomas Ford, Ltd.*,
    289 S.W.3d 353 (Tex. App.—Houston [14th Dist.] 2009, no pet.).........................14

*Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*,
    62 F.4th 174 (5th Cir. 2023) ...............................................................12, 13

*St. Paul Reinsurance Co. v. Greenberg*,
    134 F.3d 1250 (5th Cir. 1998) ...................................................................4

*State v. Emeritus Corp.*,
    466 S.W.3d 233 (Tex. App.—Corpus Christi–Edinburg 2015, pet. denied).........................12

*Texas v. Google LLC*,
    2023 WL 113732 (S.D. Tex. Jan. 5, 2023) .........................5, 12, 13, 14, 15, 25

*Texas v. Veterans Support Org.*,
    166 F. Supp. 3d 816 (W.D. Tex. 2015)....................................................15

*Thomas v. State*,
    226 S.W.3d 697 (Tex. App.—Corpus Christi–Edinburg 2007, pet. dism'd) ..............8, 19, 20

*Valdes v. Wal-Mart Stores, Inc.*,
    199 F.3d 290 (5th Cir. 2000) .............................................................24, 25

**Statutes**

12 U.S.C. § 2805(b) ........................................................................22

15 U.S.C. § 1666j(b) .......................................................................22

28 U.S.C. § 1332(a) .................................................................1, 3, 4, 5

28 U.S.C. § 1332(d) ................................................2, 17, 18, 19, 21, 22

28 U.S.C. § 1441(a) .........................................................................5

28 U.S.C. § 1447(c) ........................................................................24

Cal. Civ. Proc. Code § 382 .............................................................22

Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2, 119 Stat. 4, 5 ...................................17

Tex. Bus. & Com. Code § 17.47...........................................7, 10, 11, 18, 19, 20, 21, 22, 23, 24, 25

Tex. Bus. & Com. Code § 17.50................................................................................................9, 15

## Regulations

68 Fed. Reg. 18626 (Apr. 16, 2003) .........................................................................................3, 8

## Rules

Loc. Civ. R. 3.3 ..............................................................................................................................3

Fed. R. Civ. P. 23 ..............................................................................2, 5, 18, 19, 20, 22, 23

J.P.M.L. Rule 7.1 ............................................................................................................................4

J.P.M.L. Rule 1.1 ............................................................................................................................4

## Other Authorities

151 Cong. Rec. 1810–11 (2005) ...................................................................................................21

Letter from George H. Millet, Dir., Env't, Health & Safety, Dyneon LLC, to EPA,
    Off. of Pollution Prevention & Toxics (Oct. 30, 2009), https://rb.gy/oxzeog .........................3

BLACK'S LAW DICTIONARY (12th ed. 2024) ..........................................................................18, 19

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003).................................................18

OXFORD ENGLISH DICTIONARY (3d ed. 2009)..............................................................................18

S. Rep. No. 109–14 (2005) ...........................................................................................................20

## INTRODUCTION

The Court should deny the State's motion to remand and its request for fees. The Texas Attorney General filed this lawsuit on behalf of Texas consumers, alleging that 3M and other out-of-state defendants made misrepresentations to consumers who purchased the defendants' products. All agree that, if those Texas consumers were the named plaintiffs in this suit under the Texas Deceptive Trade Practices Act (DTPA), then the Court would have diversity jurisdiction. All agree, too, that the Court would have jurisdiction under the Class Action Fairness Act (CAFA) if one of those consumers had brought a class action on behalf of the others. The only question, then, is whether the State can frustrate federal jurisdiction because it lists the State as the plaintiff when suing on the consumers' behalf. For two independent reasons, it cannot.

*First*, complete diversity exists among the real parties in interest, which means there is traditional diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Naming a State as a party does not destroy jurisdiction when the State is merely a nominal party—the real parties in interest are what matters when assessing diversity. Texas consumers are the real parties in interest here. The Petition requests "money damages" and "restitution" on behalf of a discrete group of Texas consumers. Pet. ¶¶ 112, 113(B). Those same consumers, not the Texas public more generally, would be the principal beneficiaries of the injunction the State seeks. And, as the State concedes, Texas courts have confirmed that DTPA suits for consumer relief are brought on those consumers' behalf. Viewing the Petition as a whole, then, those consumers must be the real parties in interest.

Tellingly, the State's response is to deny that it ever sought redress on behalf of consumers, a position it can successfully maintain only if the Court never reads the Petition. The State's back-up position fares no better. The State asserts that it is the real party in interest because it has a quasi-sovereign interest in compliance generally with State consumer-protection laws—a view that, if correct, would make the State the real party in every suit by private plaintiffs to enforce

1

those types of laws.  Unsurprisingly, the Supreme Court and Fifth Circuit have declined to recog-nize quasi-sovereign interests that would effectively end federal diversity jurisdiction over claims brought under consumer protection statutes and many other state laws.

*Second*, even if the State were the real party in interest, the Court has jurisdiction under CAFA because this suit is a "civil action filed under [Federal Rule of Civil Procedure] 23 . . . *or similar State statute* . . . authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B) (emphasis added).  The DTPA is "similar" to Rule 23 in the manner CAFA requires:  It "authoriz[es] an action to be brought by" the Attorney General as a "representative" of the consumers for whom he seeks relief.  And Texas courts treat this kind of action "as a class action" for most purposes.  Indeed, they consistently refer to these kinds of suits as "de facto class actions" and consumers as class members.

In an effort to avoid CAFA's plain text, the State musters out-of-circuit decisions, but none is faithful to the language of the statute.  The State similarly comes up short in the search for controlling Fifth Circuit precedent, relying instead on an abrogated decision involving Mississippi law, which does not allow class actions at all.

Bottom line:  The State has sued out-of-state defendants based on alleged harms to partic-ular Texas consumers, seeking relief for those consumers, and relying on a statute state courts treat as a class action provision.  Whatever else the State might seek to call it, this is a diversity suit.

## BACKGROUND

According to the Petition, 3M and the other defendants "sold to Texas consumers" "a wide array of consumer products containing" perfluorooctane sulfonic acid (PFOS) and perfluorooc-tanoic acid (PFOA).  Pet. ¶ 1.  PFOS and PFAS are two types of per- and polyfluoroalkyl sub-stances (PFAS).  *Id.*  The State alleges that the defendants falsely claimed their "'products [we]re safe," and that the "failure to disclose [certain] information" about their products "was intended to

induce the consumer into" buying those products. *Id.* ¶¶ 62, 109.

The petition alleges that in 2000, "3M announced that it would phase out its PFOS, PFOA, and related products." Pet. ¶ 62; *see* EPA, Perfluorooctanoic Acid (PFOA), Fluorinated Telomers; Request for Comment, Solicitation of Interested Parties for Enforceable Consent Agreement Development, 68 Fed. Reg. 18626, 18628 (Apr. 16, 2003). By 2002, 3M had phased out production and sale of all relevant products containing PFOS or PFOA. *See* 68 Fed. Reg. at 18628, 18631.[1] By around 2013, the other defendants had done the same. *See* Pet. ¶¶ 68–69. In 2022, 3M "announce[d] that it would phase out all of its PFAS products by 2025." *Id.* ¶ 66.

The State filed this suit in Johnson County, alleging DTPA violations. Pet. ¶¶ 105–10. The State sought (1) an injunction prohibiting the defendants from "[m]isrepresenting the safety or human health risks" of PFOS or PFOA; (2) an "award [of] money damages"; and (3) for "the State of Texas," civil penalties, "interest on all awards of restitution, damages, or civil penalties," costs, and attorney's fees. *Id.* ¶¶ 111–13.

After appearing in state court solely to contest personal jurisdiction, 3M removed the case.[2] The notice of removal explained that the Court has diversity jurisdiction under 28 U.S.C. § 1332(a) or alternatively could exercise jurisdiction under CAFA's class-action provision.

Because there is ongoing multidistrict litigation (MDL) involving 3M's sale of PFAS, *see* Pet. ¶ 7, 3M was required to notify this Court that there was pending litigation "aris[ing] from a common nucleus of operative fact." Loc. Civ. R. 3.3; *see* ECF No. 3. And as the MDL rules

---

[1]     3M has acknowledged that it continued to use PFOA in the manufacturing process of some of its own fluoropolymer products until 2008. *See* Letter from George H. Millet, Dir., Env't, Health & Safety, Dyneon LLC, to EPA, Off. of Pollution Prevention & Toxics (Oct. 30, 2009), https://rb.gy/oxzeog.

[2]     3M has removed other cases under theories unrelated to those here, but the State is wrong to assert that such theories are "suspect." State Br. 1; *e.g.*, *Adams v. 3M Co.*, 65 F.4th 802 (6th Cir. 2023) (reversing remand because 3M properly removed under CAFA).

require, 3M filed a similar notice with the Clerk of the JPML panel. *See* J.P.M.L. Rules 1.1(h), 7.1(a). But 3M never submitted a brief with the JPML panel arguing that this case should be added to the MDL. The Clerk determined that this case was "not appropriate for inclusion in th[e] MDL." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2873 (J.P.M.L.), ECF No. 3222.[3]

The State moved to remand to state court.

## LEGAL STANDARD

The removing party bears the burden of establishing that the Court has jurisdiction. *See St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). "[T]he jurisdictional facts must be judged as of the time the complaint is filed; subsequent events cannot serve to deprive the court of jurisdiction once it has attached." *Id.* at 1253–54. "[N]o antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). *Contra* State Br. 7–8 (ECF No. 15).

## ARGUMENT

Two independent grounds support this Court's jurisdiction. *First*, the Court has complete diversity under 28 U.S.C. §1332(a) because Texas consumers are the real parties in interest. *Second* and alternatively, the Court has CAFA jurisdiction because this action is brought under a state law that is "similar" to a Rule 23 class action as it authorizes the Attorney General to sue on behalf of numerous consumers.

## I.    The Court Has Diversity Jurisdiction Under 28 U.S.C. § 1332(a).

"A defendant sued in state court may remove the suit to federal court so long as the federal

---

[3]    The State's extended discussion of the MDL, *see* State Br. 1–2, 6, 18, appears to confuse 3M's obligation to "*notify*" the MDL Clerk about this case, J.P.M.L. Rule 7.1(a) (emphasis added), with a request to *transfer* the case. Parties dissatisfied with the Clerk's decision "may move for [the case's] transfer" to the MDL, but 3M did not file such a motion. *Id.* Rule 7.1(b)(i).

tribunal would have had original jurisdiction over the action." *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 307 (5th Cir. 2021); *see* 28 U.S.C. § 1441(a). "Federal district courts have original jurisdiction over disputes between citizens of different states when more than $75,000 is at stake." *Grace Ranch*, 989 F.3d at 307; *see* 28 U.S.C. § 1332(a).

This case meets those criteria. The State does not dispute that there is more than $75,000 at stake here. *See* Notice of Removal ¶¶ 37–42 (ECF No. 1). The Texas citizens on whose behalf the State has sued are the real parties in interest. *Id.* ¶¶ 28–36. And there is complete diversity between those citizens and the defendants, none of which is a citizen of Texas. *Id.* ¶¶ 14–15, 27.

### A.    Texas Consumers Are The Real Parties In Interest.

The dispute over diversity jurisdiction turns on whether Texas is the real party in interest. If it is, there is no complete diversity because a "'[S]tate is not a citizen for purposes of diversity jurisdiction.'" *Grace Ranch*, 989 F.3d at 307. But if it is not—if it is just a nominal party—the State's presence as named plaintiff will not defeat diversity jurisdiction. *See id.* at 309.

**1.** The real party in interest is "the person holding the substantive right to be enforced." *Farrell Constr. Co. v. Jefferson Parish*, 896 F.2d 136, 140 (5th Cir. 1990). This will "'not necessarily'" be the party that "'will ultimately benefit from the recovery.'" *Id.* The Fifth Circuit has held that, when a State is the named plaintiff, it has "a real interest if 'the relief sought is that which inures to it alone' so that a judgment for the plaintiff 'will effectively operate' in the State's favor." *Grace Ranch*, 989 F.3d at 309 (quoting *Mo., Kan., & Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 59 (1901)). By contrast, a mere "'general government interest' in 'secur[ing] compliance with the law'" will not suffice. *Id.* (quoting *Hickman*, 183 U.S. at 60). Courts resolve the real-party issue by "consider[ing] the complaint as a whole," *Texas v. Google LLC*, 2023 WL 113732, at *3 (S.D. Tex. Jan. 5, 2023), with an eye to the "'the essential nature and effect of the proceeding,'" *Dep't*

5

*of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 740 (9th Cir. 2011).

**2.** Although identifying the real party in interest can often seem an "abstract" task, *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982), two decisions illustrate the concept's application.  Start with *Ohio v. GMAC Mortgage, LLC*, 760 F. Supp. 2d 741 (N.D. Ohio 2011).  There, the State of Ohio sued out-of-state mortgage companies for violating a consumer-protection statute through "alleged fraudulent and unfair actions in connection with hundreds of mortgage foreclosure actions in Ohio." *Id.* at 744.  The State sought "declaratory, injunctive, and civil penalty relief." *Id.* at 748.

Invoking diversity jurisdiction, the companies removed, and the federal court denied a motion to remand.  Even though the relief sought would arguably "benefit Ohio consumers in general," the complaint revealed "that the real beneficiaries of the relief sought are a distinct and identifiable group of Ohio citizens—Ohio citizens with mortgages held by [the defendants], that are in, or in danger of, foreclosure." *Id.* at 747.  Thus, it was that "defined set of individuals," not "Ohio citizens generally," who would be the main beneficiaries of the declaratory and injunctive relief. *Id.* at 748.  Granted, "the rest of Ohio's citizens may indirectly gain by the State's collection of civil penalties, possibly some punitive damages, and could take comfort in the fact that the [State] stopped one bank's alleged questionable practice." *Id*. at 749.  But this did not change the fact "that when viewing the Complaint as a whole, the real beneficiaries . . . are those Ohio citizens under threat of foreclosure by [the defendants] and not the State of Ohio generally." *Id.*

Next, consider *Department of Fair Employment and Housing v. Lucent Technologies, Inc.*, which also involved a State suing an out-of-state defendant.  This time, it was a California agency suing a company for termination of a disabled employee in violation of state nondiscrimination laws.  The state agency requested reinstatement of the individual, damages for the individual, and

injunctive relief "prohibiting Defendants from committing future violations of the [nondiscrimi-nation] laws." 642 F.3d at 739. The Ninth Circuit affirmed the district court's decision to keep the case. The panel explained that the State's interests in preventing discrimination were "the very 'general governmental interests' that the Supreme Court has stated cannot satisfy the diversity requirement." *Id.* at 738 (quoting *Hickman*, 183 U.S. at 60 (alteration adopted)). The requested equitable relief did not make California the real party in interest either, "as most of th[o]se forms of equitable relief could be obtained by the individual aggrieved." *Id.* at 739. And "[a]ny remain-ing interests that [were] unique to [the] lawsuit" were "tangential to the alleged relief sought for [the individual] and, thus," could not make the State "a real party to the controversy." *Id.*

**3.** Similarly, the State of Texas is not the real party in interest here. Rather, a review of the entire pleading shows that the real party in interest is a discrete group of "Texas consumers." Pet. ¶ 1. It is to this group that "Defendants sold" alleged "PFAS-containing materials" through alleg-edly deceptive conduct. *Id.*; *see*, *e.g.*, *id.* ¶ 55 ("3M did not reveal . . . to consumers[] facts which could have impacted their purchasing decision."); *id.* ¶¶ 27, 36, 50, 54, 61 (similar). And it is on behalf of this group that the Attorney General seeks "redress," *id.* ¶ 6, "money damages," *id.* ¶ 112, and "restitution," *id.* ¶ 113(B). Indeed, these forms of relief are available *only* "to compensate identifiable persons for actual damages or to restore" property to them. Tex. Bus. & Com. Code § 17.47(d). So just as in *GMAC* and *Lucent*, "'the relief sought'" does not "'inure[] to [the State] alone.'" *Grace Ranch*, 989 F.3d at 309.

Texas courts agree. Interpreting section 17.47(d) of the DTPA, courts have held that "the attorney general pursues [claims] on behalf of the consumers" who were allegedly injured. *Bara v. Major Funding Corp. Liquidating Tr.*, 876 S.W.2d 469, 472 (Tex. App.—Austin 1994, writ

denied); *see also*, *e.g.*, *Thomas v. State*, 226 S.W.3d 697, 707 (Tex. App.—Corpus Christi–Edinburg 2007, pet. dism'd).

Texas law's recognition that the attorney general brings these types of DTPA claims on behalf of consumers helps resolve the jurisdictional question:  "[W]hen the state merely asserts the personal claims of its citizens, it is not the real party in interest."  *Mitchell v. Sec. Am., Inc.*, 2012 WL 13026946, at *2 (N.D. Tex. Feb. 13, 2012).  As a matter of state law, then, the Texas consumers mentioned in the petition "are the real parties in interest, and in respect to whom the decree will effectively operate."  *Hickman*, 183 U.S. at 59–60.  Texas, by contrast, is no more than a "nominal party without a real interest of its own."  *Alfred L. Snapp*, 458 U.S. at 600.

**4.** The requested injunctive relief, *see* Pet. ¶ 111, confirms this conclusion.  To start, even though the scope of the injunction might appear broad, it will benefit only a discrete group of Texans.  Texas asks the court to enjoin 3M and the other defendants from selling goods containing PFOA or PFOS, or from making misleading statements about those substances "to the users of those goods."  *Id.* ¶ 111.[4]  But as the State alleges, 3M and the other defendants "phase[d] out its PFOS, PFOA, and related products" well over a decade ago.  *Id.* ¶ 62; *see id.* ¶¶ 68–69; 68 Fed. Reg. at 18628, 18631.  So, if the requested injunction could conceivably benefit anyone at all, it would principally benefit only those Texas consumers who have already purchased and continue to "use[] . . . goods" containing PFOS and PFOA.  Pet. ¶ 111.  Thus, as in *GMAC*, a "defined set of individuals," not state "citizens generally," would be the main beneficiaries of the injunctive relief.  760 F. Supp. 2d at 748; *see also*, *e.g.*, *State ex rel. Guste v. Fedders Corp.*, 524 F. Supp.

---

[4]    The prayer for relief refers to PFAS generally, but, as Texas acknowledges, it is referring "specific[ally]" to "PFOS and PFOA," which are the "focus" of "the allegations."  Pet. ¶ 13.

552, 557 (M.D. La. 1981) ("Louisiana consumers [were] the real parties in interest" because in-junction sought by the State would operate "in favor of [those] consumers").

What is more, as in *Lucent*, the same "equitable relief could be obtained by the individual[s] aggrieved." 642 F.3d at 739. Texas consumers need not wait for the Attorney General to vindicate their rights: The DTPA allows consumers themselves to "maintain an action" for "an order en-joining [unlawful] acts or failure to act." Tex. Bus. & Com. Code § 17.50(a), (b)(2). That means the Attorney General's authority to seek injunctive relief is not "an interest apart from the interests of particular private parties." *Alfred L. Snapp*, 458 U.S. at 607; *see*, *e.g.*, *Hickman*, 183 U.S. at 59–60 (holding, in a suit by state commissioners to enjoin unlawfully high toll rates for a bridge, "the real parties in interest" were the overcharged "user[s of] the bridge," not the State).

Of course, the State will benefit in some abstract way from an injunction ordering the de-fendants to obey the DTPA. But that is precisely the type of "'general governmental interest' that the Supreme Court has stated cannot satisfy the diversity requirement." *Lucent*, 642 F.3d at 738 (quoting *Hickman*, 183 U.S. at 60 (alteration omitted)); *see also*, *e.g.*, *Grace Ranch*, 989 F.3d at 309 ("Louisiana's interest in environmental regulation does not make the State a real party in in-terest to" state-law citizen suit seeking injunction to enforce state environmental law).

**5.** That leaves the State's demand for civil penalties. Like the remaining relief in *Lucent*, the civil penalties "are tangential to the alleged relief sought for [the individuals] and, thus, cannot render [the State] a real party to the controversy." 642 F.3d at 739. True, like the penalties in *GMAC*, "the rest of [the State's] citizens may indirectly gain by the State's collection of civil penalties." 760 F. Supp. 2d at 749. Even so, "when viewing the Complaint as a whole, the real beneficiaries" are the consumers on whose behalf the Attorney General has sued, "and not the State of [Texas] generally." *Id.* Indeed, the Supreme Court long ago recognized that, when the

9

suit as a whole benefits particular citizens, the possibility of a State receiving "penalties" may be "incidental" and thus insufficient to make it the real party. *Hickman*, 183 U.S. at 60–61.

All told, "'the essential nature and effect of th[is] proceeding'" is to supply redress to particular consumers. *Lucent*, 642 F.3d at 740. Those consumers are the real parties in interest.[5]

**6.** The State agrees with much of this. It concedes, for example, that when the Attorney General "seek[s] monetary damages under Section 17.47(d)," he is suing "'*on behalf of a specific group of individuals*.'" State Br. 3 & n.6 (quoting *Bara*, 876 S.W.2d at 471–72). It agrees, too, that the Petition focuses on alleged harms to a discrete set of consumers: The State's purportedly "true reading of the Petition," *id.* at 12, is remarkably similar to 3M's, *see* Part I.A.3., *supra*. Taken together, the unavoidable conclusion is that the substance of the Petition "as a whole" is consumer-focused relief. *GMAC*, 760 F. Supp. 2d at 749. The State tries to avoid that conclusion anyway. But its efforts quickly run up against both the facts and the law.

**7.** The State's first effort—denying the content of its own Petition—is its least credible. "[T]he Attorney General," the State insists, "made the conscious decision to forgo seeking restitution on behalf of Texas consumers." State Br. 3. "This Petition," the State continues, "is not being used as a mechanism to seek recompense on behalf of Texas consumers." *Id.* at 4; *see also, e.g.*, *id.* at 12 ("[T]he State's Petition does not seek restitution for individual citizens."); *id.* ("[T]his suit seeks . . . not [to] extract compensation on behalf of Texas consumers."); *id.* at 16 ("The State *is* seeking monetary relief, but not on behalf of Texas consumers."); *id.* ("[T]he State does not seek monetary damages" "'to compensate identifiable persons'"). "Instead," the State maintains, citing

---

[5]    If the balance were different—if, for instance, the State did not request damages or restitution for consumers—a different outcome might be warranted. It therefore makes no sense to say that "3M's reasoning" would result in "every State enforcement action against a non-resident" becoming "remova[ble] to federal court." State Br. 11.

its prayer for relief, it seeks only "civil penalties, . . . interest, a permanent injunction, and attorney's fees and costs." *Id.* at 4, 5 (citing Pet. ¶¶ 111–13); *see also, e.g., id.* at 3, 4, 11, 12, 16.

The State must be reading a different petition. Here is the relevant portion of the prayer:

> 112.  Plaintiff further requests that this Court award money damages.
>
> 113.  Plaintiff further requests that Defendants be ordered to pay to the State of Texas:
>
>   A.  Civil penalties of up to $10,000.00 per violation of the DTPA;
>
>   B.  Pre-judgment and post-judgment interest on all awards of restitution, damages, or civil penalties, as provided by law;
>
>   C.  All costs of Court, costs of investigation, and reasonable attorney's fees pursuant to Texas Government Code § 402.006(c); and

Put simply, the State "requests . . . money damages," Pet. ¶ 112—relief available in a DTPA suit only "to compensate identifiable persons," Tex. Bus. & Com. Code § 17.47(d). And were there any doubt, notice that, unlike the penalties requested in paragraph 113, the State does not ask for the damages to be "pa[id] to the State of Texas," Pet. ¶ 113; it asks only for this Court to "award" money damages, *id.* ¶ 112. Note, too, that the interest the State asks for includes "interest on all awards of restitution[ and] damages," another sure sign that Texas is in fact seeking those kinds of remedies. *Id.* ¶ 113(B). The State may now regret its drafting decisions, but that has no bearing on jurisdiction. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995) ("a plaintiff cannot defeat removal by *changing* his damage request" or purporting to "clarify" it). Because "'the relief sought is'" *not* "'that which inures to [the State] alone,'" the State does not "ha[ve] a real interest." *Grace Ranch*, 989 F.3d at 309.

When the Petition is read as written, the bulk of the State's real-party arguments fall away. For instance, the State says it "seeks only to regulate its economy and marketplace." State Br. 4. Why? Because all it asks for is "injunctive relief as well as civil penalties." *Id.* The State contends

11

that "black-letter law" establishes that "removal based on diversity is improper" here.  *Id.* at 10–11.  Why?  Because of precedent applicable only when "[t]he State of Texas is . . . suing solely on its own behalf."  *Id.* at 10.  Moreover, in support of its otherwise-citation-free assertion that "[t]his litigation does not remotely resemble an action brought by a private litigant under the DTPA," the State directs the Court to *State v. Emeritus Corp.*, 466 S.W.3d 233 (Tex. App.—Corpus Christi–Edinburg 2015, pet. denied).  State Br. 12–13.  Why?  Because that court said the State was "acting in its sovereign capacity" in a DTPA suit "only seeking statutory civil penalties and injunctive relief."  *Emeritus*, 466 S.W.3d at 238, 247.  The characterization would have been different, the court cautioned, if the State *had* "sought . . . 'to compensate identifiable persons . . . or to restore money'" to them.  *Id.* at 249.  But that is exactly what this petition seeks.[6]

     **8.** That leaves the State to rely on *Texas v. Google LLC*, where a district court imported an out-of-Circuit four-factor test for determining the real party in interest.[7]  The State urges the Court both to follow that test and to replicate *Google*'s remand result.  Missing from the State's brief, however, is a good reason to do so.  Myopically focusing on just four factors is inconsistent with the Supreme Court's admonition that there is no "exhaustive" or "definitive" list of relevant considerations for identifying the real party.  *Alfred L. Snapp*, 458 U.S. at 607.  The factors have never been endorsed by the Fifth Circuit, *see Google*, 2023 WL 113732, at *6 n.4, which has expressed skepticism of judicially devised multifactor balancing tests, *see Springboards to Educ., Inc. v.*

---

[6]     As the State admits, *see* State Br. 4–5, *Emeritus* also distinguishes between DTPA "'damages'" and "'civil penalties,'" 466 S.W.3d at 248, putting an end to any suggestion that the prayer's demand for "damages" is somehow a request for penalties, *see* State Br. 16.

[7]     The test is "(1) whether the state statute under which the action was brought grants the attorney general specific statutory authority to bring the suit in the name of the state; (2) whether the relief sought is injunctive so as to regulate business conduct; (3) whether any civil penalties will go to the state treasury; and (4) whether any identifiable individual consumers will be granted redress."  *Google*, 2023 WL 113732, at *3.

*McAllen Indep. Sch. Dist.*, 62 F.4th 174, 179 (5th Cir. 2023). And there is every reason to think that the court of appeals would *reject* the test if applied here.

Start with the first factor the State would have the Court consider: that "the DTPA 'unequivocally' grants 'only' the Texas Attorney General specific statutory authority to bring suit in the name of the State." State Br. 14 (quoting *Google*, 2023 WL 113732, at *3). The State does not explain how giving weight to this formal designation helps the Court in its efforts to "*disregard* nominal or formal parties," the purpose of the real-party exercise. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) (emphasis added). Indeed, the Fifth Circuit appears to view the factor as unimportant. Take *Grace Ranch*, which considered whether Louisiana was "a proper party" and, separately, whether the State was the "real party in interest." 989 F.3d at 308–09. When deciding whether Louisiana was a proper party, it mattered that state law "ha[d] not authorized [the plaintiff] to sue in [the State's] name." *Id.* at 308. But that same consideration received no attention when the Court turned to the plaintiff's "real-party-in-interest argument." *Id.* at 309.

No doubt, "[a] federal court sitting in diversity must look to state law to determine which party holds the substantive right." *Farrell*, 896 F.2d at 140. Yet Texas law is clear that it is consumers who hold the substantive right, even when the Attorney General sues "on [their] behalf." *Bara*, 876 S.W.2d at 472; *see, e.g.*, *Fedders*, 524 F. Supp. at 557 (consumers were "the real parties in interest" even though relief could be sought "only" "in the name of the state by the attorney general"); *cf. City of El Paso v. Alvarez*, 931 S.W.2d 370, 376–77 (Tex. App.—El Paso 1996, no writ) (although the Government Code "provides that [municipal-court] proceedings . . . must be brought in the name of the State of Texas, . . . the State is only a nominal party").

The second factor is injunctive relief. But the State struggles to explain how an injunction preventing the defendants from making certain statements about products that are no longer for

sale does anything more than "'address[] the claims of previously injured . . . individuals.'"  State Br. 15 (quoting *Google*, 2023 WL 113732, at *4); *cf. Google*, 2023 WL 113732, at *1 (alleged DTPA violation involved product that was still on the market).  Or how, in any event, the injunction is "one that [the State] is uniquely authorized to seek," given that consumers too may obtain "relief that goes beyond addressing" past DTPA violations.  State Br. 15 (quoting *Google*, 2023 WL 113732, at *4 (alteration adopted)); *see, e.g.*, *Rivers v. Charlie Thomas Ford, Ltd.*, 289 S.W.3d 353, 362 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (under DTPA § 17.50, private plaintiffs may obtain injunctive relief to protect "other consumers" in the future).

The third factor, state recovery of civil penalties, might have carried weight if the State had asked for those penalties and nothing else.  But in light of "the complaint as a whole," *Google*, 2023 WL 113732, at *3, the possible "collection of civil penalties" is not enough to convert the State into the real party in interest.  *GMAC*, 760 F. Supp. 2d at 749; *see Lucent*, 642 F.3d at 739; *Hickman*, 183 U.S. at 60–61.

The fourth factor is "redress for individual Texas consumers."  State Br. 16.  The State again denies that the Petition asks for this relief.  *Id.*  Instead, the State repeats the *Google* court's observations about the relief requested in *that* case.  *See id.* at 17.  There, "consumer redress" was "only mentioned in the" introductory portions of the complaint, leading the court to believe that "Texas [would] only seek prospective injunctive relief and civil penalties."  2023 WL 113732, at *5.  Unsurprisingly, then, the *Google* court concluded that "the far greater part of Texas's pleading" would benefit the State as a whole.  *Id.*  Here, the converse is true:  The State was explicit in its prayer for relief that it sought an "award [of] money damages" and "restitution" for consumers.  Pet. ¶¶ 112–13(B).  What is more, "the far greater part of Texas's pleading" would benefit those consumers, not the State as a whole.  *Google*, 2023 WL 113732, at *5.

14

The Court should not adopt the *Google* factors. But even those factors show that the consumer, not the State of Texas, is the real party in interest.[8]

### B.    Texas Has No Legitimate Quasi-Sovereign Interest In This Litigation.

Texas's repeated invocation of "quasi-sovereign interests," State Br. 11–13, 17, does nothing to advance its cause. A State is the real party in interest if its allegations establish it has a "quasi-sovereign interest" in the litigation. *Alfred L. Snapp*, 458 U.S. at 607. That is, the State must be seeking to vindicate certain interests "of its residents *in general*." *Id.* (emphasis added). When, for example, there is a risk of "typhoidal diseases" "spread[ing]" not just to particular "communities . . . alone" but to "the entire [S]tate," the State's interest in public health will justify an injunction against the entities responsible. *Missouri v. Illinois*, 180 U.S. 208, 241 (1901). But if the allegations show that the State is seeking to vindicate "the interests of particular private parties," the State does not have a quasi-sovereign interest and is merely "a nominal party." *Alfred L. Snapp*, 458 U.S. at 607; *accord id.* at 602 ("Interests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement."). So, when private parties' interests are at stake, the State cannot supplant those parties as the real party in interest by pointing to the State's "interest in the welfare of all its citizens, . . . and in securing compliance with all its laws." *Hickman*, 183 U.S. at 60. "Otherwise, 'the state would be a party in interest in all litigation,' because the State always has an interest in

---

[8]    *Texas v. Veterans Support Organization*, 166 F. Supp. 3d 816 (W.D. Tex. 2015), a case involving a veterans' charity, is even less on point. *See* State Br. 13. Unlike the litigation before this Court, the State did "not seek monetary damages under the DTPA in th[at] action." 166 F. Supp. 3d at 821. The court mistakenly believed that "injunctive relief" was "unavailable to an individual consumer." *Id. But see* Tex. Bus. & Com. Code § 17.50(b)(2). And the court relied on the State's "sovereign" interests in "regulating solicitation for veterans organizations" and "representing the public interest in charitable trusts"—neither of any relevance here—to bolster its view that the State was the real party in interest. 166 F. Supp. 3d at 820; *see also* Part I.B., *infra* (explaining that Texas's asserted quasi-sovereign interests do not make it the real party in this case).

enforcing its laws." *Grace Ranch*, 989 F.3d at 309 (quoting *Hickman*, 183 U.S. at 60).

For familiar reasons, the allegations fall short of establishing that Texas has a legitimate quasi-sovereign interest. The State has no "'legitimate quasi-sovereign interest in seeing that consumers or any other group of persons receive a given sum of money,'" even if the right to that money arises under state law. *Pennsylvania v. Mid-Atl. Toyota Distribs., Inc.*, 704 F.2d 125, 129 n.8 (4th Cir. 1983). The State also has no "substantial state interest" in damages, restitution, or injunctive relief—the bulk of the relief it has requested—as "these forms . . . of relief could be obtained by the individual[s]" allegedly "aggrieved." *Lucent*, 642 F.3d at 739. And the civil penalties "are tangential to the alleged relief sought for" those individuals. *Id.*; *see* Part I.A., *supra*.

Throughout its brief, the State asserts that it has an interest in "secur[ing] an honest marketplace." *E.g.*, State Br. 1, 4, 12 n.10, 13, 15. But this is merely another way of saying that it has an "interest in the welfare of all its citizens, . . . and in securing compliance with all its laws," *Hickman*, 183 U.S. at 60, which does not rise to a quasi-sovereign interest when private interests are at stake. "Otherwise, 'the state would be a party in interest in all litigation'" involving the DTPA, including when consumers bring the litigation. *Grace Ranch*, 989 F.3d at 309.

The State does not deny that this is the natural consequence of its position. Instead, it turns to cases about state standing for support. *See, e.g.*, State Br. 12 (citing *Louisiana v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872 (5th Cir. 2023)). But precisely to avoid the untenable situation where a state is the real party in all litigation involving state law, courts have recognized that the kinds of generalized quasi-sovereign interests the State relies on here "fail[] to render it a real party . . . for the purposes of diversity jurisdiction," even though they might support "standing." *Lucent*, 642 F.3d at 738; *see id.* at 738 n.5.

Because the Petition as a whole aims to benefit a discrete set of Texas citizens and the State

cannot identify a legitimate quasi-sovereign interest, those citizens are the real parties in interest. The Court has traditional diversity jurisdiction over this case.

## II.     The Court Has Jurisdiction Because This Suit Is A CAFA Class Action.

Even if the Court were to conclude that the parties are not completely diverse, it would still have jurisdiction under CAFA.  Concerned that plaintiffs were "[a]busing" diversity jurisdiction, "Congress enacted CAFA to ensure "[f]ederal court consideration of interstate cases of national importance." Pub. L. No. 109-2, § 2, 119 Stat. 4, 5; *accord Dart Cherokee*, 574 U.S. at 89.  Federal courts have jurisdiction under CAFA where (1) the aggregate amount in controversy is at least $5 million; (2) there is minimal diversity of parties—"any member of a class," "named or unnamed," "is a citizen of a State different from any defendant"; (3) there are 100 or more members of the class; and (4) the "civil action" is a "class action" as defined by CAFA.  28 U.S.C. § 1332(d).

It was lawsuits like this one that Congress had in mind when it sought to curb jurisdictional gamesmanship.  *See* nn.9 & 10, *infra*.  After all, Texas seeks just as much money for Texas con-sumers as any other class representative might seek for them.  Indeed, it does not dispute that the amount in controversy exceeds $5 million or that, assuming the action is a class action, there are at least 100 or more members with at least minimal diversity.  *See* Notice of Removal ¶¶ 9–11. Yet it insists that it may evade "[f]ederal court consideration" over this indisputably "interstate case," CAFA § 2, simply because it is the named "Plaintiff in this matter," State Br. 10.  However that argument might affect traditional diversity, it does nothing to defeat CAFA jurisdiction, which is unaltered by the presence of the State as a party.  *See Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 435–36 (5th Cir. 2021).

That leaves the State with only one argument—that its suit on behalf of Texas consumers is not a CAFA "class action."  The State is mistaken.  For CAFA purposes, a class action is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or

rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). And this action squarely fits within that definition.

**A.** Start with the statutory text. The suit need not be a Rule 23 class action; it only must be brought under a state law that is "similar" to the Rule 23 procedure. The ordinary meaning of "similar" is "having characteristics in common." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). Rather than leave the reader guessing, the statute indicates which characteristics a state rule must have in common with Rule 23 to be "similar": "State statutes or rules of judicial procedure are 'similar' to Rule 23 when they 'authorize an action to be brought by 1 or more representative persons as a class action.'" *Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 838–39 (6th Cir. 2020) (Nalbandian, J., concurring in part and concurring in the judgment) (quoting 28 U.S.C. § 1332(d)(1)(B) (alteration adopted)). "A 'representative person' is someone 'that stands in the place or assumes the functions of' the class." *Id.* at 839 (quoting *Representative*, OXFORD ENGLISH DICTIONARY (3d ed. 2009)). And although the statute's definition of "class action" is somewhat "'circular,'" State Br. 8, the term's ordinary meaning is "[a] lawsuit in which the court authorizes a single person or a small group of people to represent the interests of a larger group," *Class Action*, BLACK'S LAW DICTIONARY (12th ed. 2024).

Applying CAFA's ordinary meaning, section 17.47 is "similar" to Rule 23 in that it "authorize[s] an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). The Texas Attorney General is the "representative person[]," *id.*, because the DTPA allows him to bring an action and "stand[] in the place . . . of" or "act[] on behalf of" aggrieved consumers. *Representative*, OXFORD ENGLISH DICTIONARY; *Representative*, BLACK'S LAW DICTIONARY; *see Bara*, 876 S.W.2d at 472 ("[T]he attorney general pursues [claims] on behalf of the consumers."). And the DTPA "authorize[s]" the "action to be brought . . . as a class

action," 28 U.S.C. § 1332(d)(1)(B), because the statute "authorizes a single person," the Attorney General, "to represent the interests of a larger group," *Class Action*, BLACK'S LAW DICTIONARY, namely certain Texas consumers, *see Bara*, 876 S.W.2d at 472. So, as far as CAFA is concerned, section 17.47 is a class-action provision. Since this "civil action" was "filed under" that provision, the suit counts as a CAFA class action over which this Court must retain jurisdiction. 28 U.S.C. § 1332(d)(1)(B).

**B.** State law confirms as much. At the State's urging, Texas courts have consistently held that "[a]ctions filed by the Attorney General's office pursuant to Section 17.47 are de facto class actions," and that consumers are "[m]embers of the class." *Avila v. State*, 252 S.W.3d 632, 646 (Tex. App.—Tyler 2008, no pet.); *accord Thomas*, 226 S.W.3d at 707 ("We agree with the State. Actions filed by the attorney general under section 17.47 of the DTPA qualify as de facto class actions."); *id.* (describing "consumers whose money was acquired by an unlawful act or practice" as "members of the class"); *Bara*, 876 S.W.2d at 471–73 (describing a section 17.47 suit as a "*de facto* class action" five times).

And for good reason. Under section 17.47, "[s]imilar claims against common defendants are consolidated and the attorney general pursues them on behalf of the consumers." *Bara*, S.W.2d at 472; *cf.* Fed. R. Civ. P. 23(a)(2)–(3) (requiring commonality and typicality). The statute "assumes," too, "that the state attorney general is an adequate representative." *West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 452 (E.D. Pa. 2010); *cf.* Fed. R. Civ. P. 23(a)(4) (requiring an adequate representative). Like federal class actions, section 17.47 serves "'to avoid . . . a multiplicity of suits.'" *Baylor v. U.S. Dep't of Hous. & Urban Dev.*, 913 F.2d 223, 225 (5th Cir. 1990); *see Bara*, 876 S.W.2d at 472 ("One of the purposes of enforcement of the DTPA by the attorney general is to prevent a multiplicity of suits."); *cf.* Fed. R. Civ. P. 23(a)(1) (requiring

numerosity).  And, like the filing of a putative class action in federal court, "the filing of [a § 17.47] suit place[s defendants] on notice, not only of the specific claims being asserted, but also of the number of potential consumers who may ultimately participate in the final judgment."  *Thomas*, 226 S.W.3d at 710; *see Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554–55 (1974) (similarly describing the effect of the filing of a federal class-action complaint).

Given all this, Texas courts have done more than *describe* section 17.47 actions as class actions; they have *treated* them as such.  They have recognized, for example, that individual consumers may "opt out" of a section 17.47 suit brought by the Attorney General.  *Bara*, 876 S.W.2d at 472.  And, on the theory that section 17.47 suits are de facto class actions, Texas courts have applied the limitation-period tolling rules the U.S. Supreme Court has applied to Rule 23 class actions.  *Am. Pipe*, 414 U.S. at 555; *see Bara*, 876 S.W.2d at 472 (citing *American Pipe*); *Thomas*, 876 S.W.2d at 710 & n.54 (citing *Bara*).  In short, Texas courts have treated a section 17.47 lawsuit as "a class action in all but name."  *Comcast Corp.*, 705 F. Supp. 2d at 452.[9]

To be sure, not every Texas court treats DTPA claims as class actions for all purposes.  In *Molano v. State*, 262 S.W.3d 554 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.), the Thirteenth Court of Appeals held that a DTPA lawsuit was not "a rule 42 class action," referring to a Texas procedural rule that provides for "class certification and notification" in certain "class action cases."  *Molano*, 262 S.W.3d at 559, 561; *see* State Br. 9–10.  Given that section 17.47 does not use the term "class action" or otherwise direct the Attorney General to comply with Rule 42, the

---

[9]     Because CAFA is unambiguous, the Court need not consider legislative history.  But to the extent it *is* relevant, the Senate Judiciary Report supports 3M's position:  "[CAFA's] application should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff or the state rulemaking authority.  Generally speaking, lawsuits *that resemble a purported class action should be considered a class action* for the purpose of applying these provisions."  S. Rep. No. 109-14, at 35 (2005) (emphasis added).

court was unpersuaded by the argument that the rule nevertheless applied just because the suit was "a de facto class action." *See Molano*, 262 S.W.3d at 560–61. In the Rule 42 context, that makes sense: Rule 42, unlike section 17.47, requires the class representative to be "a member of the purported class," so the two provisions are necessarily incompatible. *Id.* at 559. CAFA, however, contains no such requirement: It says only that the action must "be brought by 1 or more representative persons." 28 U.S.C. § 1332(d)(1)(B); *cf. In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705 (5th Cir. 2008) ("Congress . . . rejected an amendment that would have exempted class actions filed by an attorney general from removal under CAFA.").[10] And the present lawsuit indisputably ticks that box. *See* Part II.A., *supra*; State Br. 3 n.6 (agreeing with *Bara*'s holding that section 17.47 actions for consumer relief are representative actions).

**C.** Resisting this Court's CAFA jurisdiction, the State relies on out-of-circuit and district-court opinions that have declined to apply CAFA to actions brought by state attorneys general. A "tallying" of nonbinding decisions, however, is no way to approach statutory interpretation. *Cochran v. SEC*, 20 F.4th 194, 204 (5th Cir. 2021) (en banc) ("[T]he consensus view is not always correct."). The State demonstrates this point well: By selecting seemingly favorable quotes from different jurisdictions, the State's resulting account of CAFA is incoherent, often contradictory, and in all events atextual. The State, for example, suggests that the relevant state provision must explicitly "authorize an action to proceed as a class action." State Br. 9. But this view finds itself at odds with the Ninth Circuit, one of the State's sources. *See id.* That circuit has treated a California procedural rule as a CAFA "class action statute," not because the rule uses the words "class action" (it does not), but because (much like section 17.47) state courts have *treated it* as a class

---

[10] Opponents to this amendment argued that it would "create a very serious loophole" if "crafty class action lawyers" could "avoid [CAFA's] jurisdictional provisions" simply by securing the involvement of "State attorneys general" in the litigation. 151 Cong. Rec. 1810–11 (2005).

action "'*in substance*.'" *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121 (9th Cir. 2014) (emphasis added) (discussing Cal. Civ. Proc. Code § 382).  And if that is the test, the State should not be opposing removal.  *See* Part II.B., *supra*.

Or consider the approach of the Fourth Circuit, another of the State's sources.  *See* State Br. 8.  A divided panel of that court held that a "state statute or rule is 'similar' to Federal Rule of Civil Procedure 23 if it closely resembles Rule 23" by requiring adequacy, numerosity, commonality, and typicality.  *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 174 (4th Cir. 2011).  Yet, as shown above, "similar" and "closely resemble" are not synonyms.  And if, by "similar," Congress meant something like "closely resembling," "substantially similar," or "very similar," it would have said so.  *E.g.*, 12 U.S.C. § 2805(b) (exemption from federal disclosure laws when state-law requirements are "substantially similar to those imposed" by federal law); 15 U.S.C. § 1666j(b) (same language).  Further, this approach—requiring substantial similarity to Rule 23 in *all* respects—effectively erases the statutory directive that the state rule be "similar" to Rule 23 by "authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B); *see Interamericas Invs., Ltd. v. Bd. of Governors of Fed. Rsrv. Sys.*, 111 F.3d 376, 384 (5th Cir. 1997) ("Needless to say, a statute should be read to give effect to all of its language.").  The State's position is out of line with the statutory text.

**D.** Fifth Circuit precedent is not on the State's side either.  The State directs the Court to *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796 (5th Cir. 2012), *see* State Br. 9, "a curious choice of cases in which to anchor an argument," *Mississippi ex rel. Hood v. Entergy Miss., Inc.*, 2019 WL 1433772, at *1 (S.D. Miss. Mar. 30, 2019).  In *AU Optronics*, the court of appeals held that an action filed by the State of Mississippi did "not qualify as a 'class action' under the CAFA," but did qualify as a "mass action."  701 F.3d at 799, 802.  Finding fault with the mass-

action holding, the Supreme Court "reversed" "the judgment." 571 U.S. 161, 176 (2014). Later, but in an unpublished opinion, the original panel reinstated its class-action holding, invoking "the law-of-the-case doctrine" and forfeiture (the issue was not raised before the Supreme Court). 559 F. App'x 375, 377 (5th Cir. 2014). For good reason, then, there appear to be no later decisions by the Fifth Circuit or district courts within it that rely on *AU Optronics*'s class-action holding.

At any rate, the *AU Optronics* panel did not purport to supply definitive guidance about the meaning of CAFA's class-action provision. Unlike section 17.47, the two Mississippi statutes at issue did "not authorize public collection of private damages." *AU Optronics*, 701 F.3d at 801. That made the panel's job an easy one. It made quick work of the class-action argument because "Mississippi state law explicitly prohibits class actions"—whether brought by the State or private parties—and one of the statutes did "not require that suits . . . satisfy any requirements that resemble the adequacy, numerosity, commonality, and typicality requirements of class action lawsuits under Rule 23." *Id.* at 799. Thus, neither statute was "'similar' to Rule 23." *Id.* And the court had no need to determine what elements of Rule 23 were necessary or sufficient for a state rule to be sufficiently similar. Nor, as the State concedes, did the court have an opportunity to consider the law of a State (like Texas) that *does* permit class actions. *See* State Br. 9. *AU Optronics* is neither binding nor controlling. *See Madison v. ADT, L.L.C.*, 11 F.4th 325, 328 (5th Cir. 2021) (considering a CAFA issue anew because prior panel opinions contained only "sparse analysis" and were not "factually apposite"); *Ochoa-Salgado v. Garland*, 5 F.4th 615, 619 (5th Cir. 2021) (panel decision is binding only "where (1) a party *raises* an issue and (2) a panel gives that issue *reasoned consideration*" (footnote omitted)).

The State's lawsuit is a "class action" within the meaning of CAFA. And the State has advanced no lawful justification—textual or precedential—for concluding otherwise.

**III.    Fees Should Be Denied As 3M's Bases For Removal Are Objectively Reasonable.**

When "remanding [a] case," courts "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "An award of costs and attorney's fees, however, is not automatic upon a determination of improper removal."  *Amalgamated Gadget, L.P. v. Mack*, 2004 WL 549483, at \*5 (N.D. Tex. Feb. 10, 2004).  Rather, a remanding court must "evaluate the objective merits of removal at the time of removal, irrespective of the fact that it might ultimately be determined that removal was improper."  *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000).  This requires "examin[ing] . . . the relevant case law on subject-matter jurisdiction."  *CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 638 F. App'x 255, 260 (5th Cir. 2015).  "[W]hen an objectively reasonable basis [for removal] exists, fees should be denied."  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

If the Court remands this case, it should deny the State's request for fees because 3M's bases for removal are compelling and certainly reasonable.  As explained above, ample case law and the State's own allegations support 3M's position that the State is not the real party in interest.  But if the Court disagrees with 3M's reading, the absence of "any binding precedent specifically addressing" the question of traditional diversity jurisdiction over section 17.47 actions warrants the same conclusion the court reached in *Google*: that removal was not objectively unreasonable.  2023 WL 113732, at \*6 n.4; *see Camsoft*, 638 F. App'x at 264 (affirming denial of fees when "federal jurisdiction over [certain] claims was unsettled").

The same is true of removal under CAFA.  A plain reading of the law's text strongly supports jurisdiction here.  As the State concedes, *AU Optronics* is not directly on point.  *See* State Br. 9.  The Fifth Circuit has never considered CAFA jurisdiction over section 17.47 claims or the laws of a state that does allow class actions.  Judges outside of the Circuit agree that attorney-general-led suits can qualify as CAFA class actions.  *See*, *e.g.*, *Comcast*, 705 F. Supp. 2d at 452;

24

*CVS Pharmacy*, 646 F.3d at 183 (Gilman, J., dissenting).  And there is a consensus among Texas courts that section 17.47 is a de facto class action employing many class action procedures.  Again, because the issue is "unsettled," *Camsoft*, 638 F. App'x at 264, 3M's removal on CAFA grounds was not objectively unreasonable, *cf. Valdes*, 199 F.3d at 293–94 (removal objectively reasonable when bulk of Texas case law supported defendant's position).[11]

### CONCLUSION

The Court should deny the State's motion to remand and deny its request for costs and fees.

Dated:  February 26, 2025                          Respectfully Submitted,

                                                  /s/ *Gregg J. Costa*

Ashley E. Johnson                                 Gregg J. Costa
  State Bar No. 24067689                            State Bar No. 24028160
GIBSON, DUNN & CRUTCHER LLP                       GIBSON, DUNN & CRUTCHER LLP
2001 Ross Ave., Suite 2100                        811 Main St., Suite 3000
Dallas, TX 75201                                  Houston, TX 77002
Telephone:  (214) 698-3100                        Telephone:  (346) 718-6600
Facsimile:  (214) 571-2900                        Facsimile:  (346) 718-6620
AJohnson@gibsondunn.com                           GCosta@gibsondunn.com

                                                  *Attorneys for Defendant 3M Company*

---

[11]    Urging the Court to award fees, the State repeats its mistaken view that 3M "attempted to have this case consolidated in the AFFF MDL" and asserts that 3M's efforts to remove other cases on non-CAFA grounds somehow made 3M "aware removal was improper" here.  State Br. 17.  The Court should disregard this misguided and unsubstantiated rhetoric.  *See* nn.2 & 3, *supra*.

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document has been served on counsel of record pursuant to the Federal Rules of Civil Procedure.

*/s/  Gregg J. Costa*
Gregg J. Costa

*Attorney for Defendant 3M Company*
