# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | § | |
| | § | **Civil Action No. 3:25-cv-00122-K** |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| 3M COMPANY; CORTEVA, INC., DUPONT | § | |
| DE NEMOURS, INC., and EIDP, INC. F/K/A E. | § | |
| I. DU PONT DE NEMOURS AND COMPANY, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

---

## BRIEF IN OPPOSITION TO DUPONT DEFENDANTS' MOTION TO DISMISS

---

Plaintiff the State of Texas ("Plaintiff" or "the State") submits this memorandum of law in opposition to the motion filed by Defendants EIDP, Inc., f/k/a E. I. du Pont de Nemours and Company ("Old DuPont"); DuPont De Nemours, Inc. ("New DuPont"); and Corteva, Inc. ("Corteva") (collectively, "Movants") to dismiss the claims asserted against them in the State's Original Petition for lack of personal jurisdiction and failure to state a claim upon which relief can be granted (ECF No. 25, the "Motion").[1]

---

[1] The State's Motion to Remand should be decided prior to Defendants' Motions to Dismiss because the Court must satisfy itself that federal jurisdiction is proper. For the reasons set forth in the State's Motion to Remand, it is not.

## TABLE OF CONTENTS

page

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND .................................................................................3

    A.      Old DuPont Has Been Aware of the Toxicity of PFOA and PFAS
    For Over 50 years..........................................................................................3

    B.      Old DuPont Engaged in a Multi-Year Restructuring Designed to
    Strand Its Valuable Assets From Its Massive Liabilities, Including
    to Texas ..........................................................................................................4

    C.      New DuPont and Corteva Contractually Assumed Old DuPont's
    Legacy PFAS Liabilities. ..............................................................................7

III.    PROCEDURAL BACKGROUND.........................................................................9

IV.     LEGAL STANDARD...........................................................................................10

V.      ARGUMENT .......................................................................................................12

    A.      The State Has Made a Prima Facie Showing of Specific Jurisdiction
    .......................................................................................................................12

    B.      The State Has Adequately Pled DTPA Violations Under Both
    12(b)(6) and 9(b)..........................................................................................20

    C.      The State's Alleged Failure to Provide Notice Does Not Warrant
    Dismissal......................................................................................................23

VI.     CONCLUSION.....................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albracht v. Indemnity Ins. Co. of North America*,
  No. 2:19-cv-72 2019 WL 7040333 (N.D. Tex. Nov. 20, 2019) .............................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................10, 11

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)....................................................................................................17, 18

*Celanese Corp. v. Martin K. Eby Const. Co., Inc.*,
  620 F.3d 529 (5th Cir. 2010) ...........................................................................................10

*CFPB v. All Am. Check Cashing, Inc.*,
  2016 WL 11635752 (S.D. Miss. July 15, 2016) ...................................................................11

*CFPB v. Frederick J. Hanna & Assocs., P.C.*,
  114 F. Supp. 3d 1342 (N.D. Ga. 2015) ...............................................................................11

*City of Richmond, Va. v. Madison Mgmt. Grp., Inc.*,
  918 F.2d 438 (4th Cir. 1990) ............................................................................................16

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ............................................................................................11

*Dell Marketing, L.P. v. Incompass IT, Inc.*,
  771 F. Supp. 2d 648 (W.D. Tex. 2011)..........................................................................14, 19

*State of Ohio ex rel. DeWine v. E.I. du Pont de Nemours and Co.*,
  No. 180T32 (Ct. Common Pleas, Wash. Co. Aug. 4, 2021) (unpublished)..........................3, 8

*Dorsey v. Portfolio Equities, Inc.*,
  540 F.3d 333 (5th Cir. 2008) ..............................................................................................7

*Duris v. Erato Shipping, Inc.*,
  684 F.2d 352 (6th Cir. 192) .............................................................................................17

*General Retail Services, Inc. v. Wireless Toyz Franchise LLC*,
  255 Fed. Appx. 775..........................................................................................................7

*Gonzalez v. State Farm Lloyds*,
  326 F. Supp. 3d 346 (S.D. Tex. 2017) ...................................................................22

*Gospel Light Eritrean, Baptist Church v. Ohio Causalty Ins. Co.*,
  No. 3:23-cv-1971 (N.D. Tex. July 25, 2024) .........................................................12

*U.S. ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) ................................................................................12

*Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co.*,
  921 F.3d 522 ..........................................................................................................13

*Heller v. Marriott Vacations Worldwide Corp.*,
  2023 WL 12027439 (W.D. Tex. Apr. 26, 2023).....................................................19

*Johnston v. Multidata Sys. Int'l Corp.*,
  523 F.3d 602 (5th Cir. 2008) ................................................................................12

*Jones v. Cain*,
  600 F.3d 527 (5th Cir. 2010) ................................................................................14

*State of North Carolina ex rel. Joshua H. Stein, Attorney General v. E.I. Du Pont De Nemours and Company et al.*,
  879 S.E.2d 537 (N.C. 2022)........................................................................2, 8, 15

*Lewis v. BT Inv. Managers, Inc.*
  447 U.S. 27 (1980)................................................................................................18

*Libersat v. Sundance Energy, Inc.*,
  978 F.3d 315 (5th Cir 2020) .................................................................................16

*In re Life Partners Holdings, Inc.*,
  926 F.3d 103 (5th Cir. 2019) ................................................................................12

*Lowrey v. Texas A&M University System*,
  117 F.3d 242 (5th Cir. 1997) ................................................................................11

*McFadin v. Geber*,
  587 F.3d 753 (5th Cir. 2009) ................................................................................17

*Monkton Ins. Servs. Ltd. v. Ritter*,
  768 F.3d 429 (5th Cir. 2014) ................................................................................13

*In re Nazi Era Cases Against German Defendants Litig.*,
  153 F. App'x 819 (3d. Cir. 2005) ..........................................................................17

*Oppenheimer v. Prudential Secs. Inc.*,
  94 F.3d 189 (5th Cir. 1996) ..................................................................................23

*Patin v. Thoroughbred Power Boats Inc.*,
　　294 F.3d 640 (5th Cir. 2002) ....................................................................16

*Plotkin v. IP Axess, Inc.*,
　　407 F.3d 690 (5th Cir. 2005) ....................................................................12

*Sangha v. Navig8 ShipManagement Private Ltd.*,
　　882 F.3d 96 (5th Cir. 2018) ......................................................................10

*Seiferth v. Helicopteros Atuneros, Inc.*,
　　472 F.3d 266 (5th Cir. 2006) ....................................................................13

*Silicon Solar Housing Solutions, Inc. v. Farrell*,
　　2007 WL 162772 (N.D.Tex. Jan.22, 2007) ..............................................19

*Speedfit LLC v. Woodway USA, Inc.*,
　　642 F. Supp. 3d 429 (S.D.N.Y. 2022)......................................................10

*Spradling v. Williams*,
　　566 S.W.2d 561 (Tex. 1978)....................................................................20

*State v. Emeritus Corp.*,
　　466 S.W.3d 233 (Tex. App.—Corpus Christi 2015, pet. denied)............18

*State v. New Hampshire v. 3M Company*,
　　No. 216-2019-CV-0045 (Sup. Ct., Merrimack Co. July 8, 2021) (unpublished) .................2, 8

*Suez Water New Jersey, Inc. v. E.I. DuPont de Nemours, et al.*,
　　No. 2:20-cv-19906 (D.N.J. Oct. 14, 2021) ....................................3, 6, 8

*UST-Mamiya, Inc. v. True Sports, Inc.*,
　　441 F. Supp. 3d 382 (N.D. Tex. 2020) ............................................15, 16

*VeroBlue Farms USA, Inc. v. Wulf*,
　　465 F. Supp. 3d 633 (N.D. Tex. 2020) ......................................................7

*Walker v. Beaumont Indep. Sch. Dist.*,
　　938 F.3d 724 (5th Cir. 2019) ....................................................................10

*Williams v. Bowman Livestock Equipment Co.*,
　　927 F.2d 1128 (10th Cir. 1991) ................................................................17

## Statutes

28 U.S.C. §1332(a) ............................................................................................10

Class Action Fairness Act, 28 U.S.C. §1332(d)(8)............................................9

DTPA ...................................................................................................... *passim*

MACLEAN LAW ................................................................................................26

Tex. Bus. & Com. Code §17.44(a) .....................................................................1

Tex. Bus. & Com. Code §17.46(a) ...................................................................20

Tex. Bus. & Com. Code §17.47(a) ...........................................................20, 23

Tex. Bus. & Com. Code §17.505(a) .................................................................23

Texas's Deceptive Trade Practices-Consumer Protection Act .......................1

**Other Authorities**

available at
    https://www.sec.gov/Archives/edgar/data/1666700/000119312519095042/d72
    5044dex21.htm (last visited Feb. 25, 2025)......................................................8

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL
    PRACTICE AND PROCEDURE § 1296 (4th ed. 2024)........................................11

Chemours Co., Corteva, Inc., E.I. du Pont de Nemours & Co., and DuPont de
    Nemours, Inc., Ex. A (Jan. 22, 2021),
    https://www.sec.gov/Archives/edgar/data/1666700/000119312521014077/d11
    4181dex101.htm (last visited Feb. 24, 2025).....................................................5

Federal Rules of Civil Procedure 12(b)(6) and 9(b) .......................................3

New York Times ...............................................................................................22

Rule 9(b) ......................................................................................................11, 12

Rule 9(b)'s ........................................................................................................11

Rule 12 ..............................................................................................................14

Rule 12(b)(2).......................................................................................................7

Rule 12(b)(6)...........................................................................................7, 10, 11

United States Constitution Due Process Clause..............................................12

## I.     INTRODUCTION

1.     Texas's Deceptive Trade Practices-Consumer Protection Act ("DTPA") is meant to "protect consumers against false, misleading, and deceptive business practices..." Tex. Bus. & Com. Code §17.44(a). It requires companies to be truthful when advertising their products. Movants must be held accountable for their failure to meet their obligations to Texas consumers, who—along with the legitimate business community operating in Texas—were negatively impacted by Movants' persistent misrepresentations and omissions in marketing their products in the Texas economy.

2.     For nearly half a century, Old DuPont flooded Texas's marketplace with products that they knew contained toxic chemical compounds, while simultaneously marketing these products as "safe." Despite knowing that PFAS posed a major threat to human health, Old DuPont continued to market these products in Texas without informing consumers, in order to maximize its profits.

3.     When Old DuPont's conduct was finally exposed, Old DuPont engaged a series of spinoffs, mergers, and divestitures that were all designed to separate Old DuPont's substantial PFAS-related liabilities from the billions of dollars' worth of assets that were otherwise available to satisfy them. The Petition alleges, in detail, the fraudulent transfer scheme that Movants effectuated. *See* ECF No. 1, Ex. E-1 (hereinafter "Pet.") ¶¶ 68-104. The end result of these transactions was to financially cripple Old DuPont while transferring its substantial assets to Corteva and New DuPont in order to shield those assets from liability for actions that arose from Old DuPont's conduct in Texas.

4.     The State, therefore, brought claims against New DuPont and Corteva based on their *contractual assumption* of Old DuPont's liabilities arising from, *inter alia*, the manufacture, advertising, and sale of a wide array of consumer products containing per- and polyfluoroalkyl

1

substances ("PFAS"), including perfluorooctane sulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA").

5.       Movants do not, because they cannot, argue that this Court's exercise of jurisdiction over Old DuPont would be improper. And, because Movants contractually assumed the liabilities of Old DuPont, it is clear that there is successor jurisdiction over Movants. Indeed, in their Motion, Movants do not address—let alone dispute—the fact that New DuPont and Corteva expressly assumed Old DuPont's PFAS-related liabilities. It is this artifice, along with Movants' contractual assumption of PFAS-related liabilities, that renders New DuPont and Corteva subject to personal jurisdiction in this Court.

6.       That is because where, as here, an out-of-state defendant expressly assumes liabilities from an entity that is subject to jurisdiction in that state, the jurisdictional contacts of that entity may be imputed to the out-of-state defendant. This is not a novel position—the Fifth Circuit has maintained this principle since long before Old DuPont initiated its fraudulent transfer scheme. Given the State's allegations regarding Movants' contractual assumption of Old DuPont's liabilities arising from the marketing and sale of PFAS-containing products in Texas, Old DuPont's jurisdictional contacts with Texas must be imputed to Movants. At least four courts around the country have already reached this very conclusion.[2]

---

[2]  Movants' effort to shape this jurisdictional question in a vacuum, absent *any* discussion of successor liability, is clearly intentional as this *same issue* was ruled on by the North Carolina Supreme Court. *See,* **Exhibit B**., *State of North Carolina ex rel. Joshua H. Stein, Attorney General v. E.I. Du Pont De Nemours and Company et al.*, 879 S.E.2d 537, 565 (N.C. 2022) (". . . Corteva and New DuPont expressly assumed Old DuPont's PFAS-related liabilities . . . . Thus, the Business Court has jurisdiction over Corteva and New DuPont for all of the State's claims arising out of and related to Old DuPont's PFAS-related activities in North Carolina.").

Movants do not address this case in their Motion—even though the case raises, and resolves against Movants, the same issue raised here. Movants likewise do not address the other cases that have addressed the issue of Movants' successor liability. *See* **Exhibit C**., *State of New Hampshire v. 3M Company,* No. 216-2019-CV-0045 (Sup. Ct., Merrimack Co. July 8, 2021) (unpublished) (holding that New Hampshire law permits imputation of a predecessor corporation's contacts to establish successor jurisdiction and finding that the State made a prima

7.     Movants' arguments that the State's Petition fails under Federal Rules of Civil Procedure 12(b)(6) and 9(b) are equally as unavailing as their jurisdictional ones. Movants lied to Texans, for decades, about the safety of their products and in doing so caused harm to the State itself. The State's Petition describes in detail the extent of these deceptive practices, including, *inter alia*, information directly alleging that Movants were aware of that their consumer products contained toxic chemical compounds.

8.     For these reasons and those explained below, Movants' Motion should be denied. Alternatively, the State should be permitted limited jurisdictional discovery.

## II.     FACTUAL BACKGROUND

### A.     Old DuPont Has Been Aware of the Toxicity of PFOA and PFAS For Over 50 years

9.     Old DuPont first began using PFOA and other PFAS in the 1950s to manufacture consumer products, including Teflon® and Zonyl®. *See* Pet. ¶¶ 21, 24-25. For decades, Old DuPont marketed these products as "safe" to unsuspecting consumers, despite the fact that Old DuPont's own scientists issued internal warnings about the toxicity of PFOA as early as the 1960s. *Id.* ¶¶ 27-28. During that time, Old DuPont conducted studies of PFOA and other PFAS, and determined that PFAS are extremely resistant to degradation, persist indefinitely in the environment, bioaccumulate in humans and animals, and pose a substantial threat to human health

---

facie showing that jurisdiction existed over Corteva and New DuPont based on (1) their express assumption of Old DuPont's PFAS liabilities; and (2) their fraudulent efforts to help Old DuPont evade liability); *State of Ohio ex rel. DeWine v. E.I. du Pont de Nemours and Co.,* No. 180T32 (Ct. Common Pleas, Wash. Co. Aug. 4, 2021) (unpublished) (denying Corteva and New DuPont's motion to dismiss for lack of jurisdiction and granting the State's cross-motion regarding their assumption of Old DuPont's liabilities) (**Exhibit D**); *Suez Water New Jersey, Inc. v. E.I. DuPont de Nemours, et al.,* No. 2:20-cv-19906 (D.N.J. Oct. 14, 2021) ("If Corteva and New DuPont expressly assumed some PFAS-related liability from Old DuPont's activities in New Jersey, this would provide minimum contacts with the forum state sufficient to support personal jurisdiction.") (**Exhibit E**).

and the environment. *Id.* ¶¶ 24-46. Yet Old DuPont actively concealed this knowledge from consumers and government regulators. *Id.* at ¶¶ 42, 44-46.

10.    Aware that biopersistent chemicals are harmful to consumers, Old DuPont first settled on a strategy of publishing papers and articles intended to dispel the clear nexus between PFAS exposure and negative health effects. *See id.* at¶¶ 40-41. Old DuPont carried out this misinformation campaign in direct contradiction to information obtained from their internal studies, which had confirmed, *twenty years earlier*, that those exposed to PFOA had a significantly higher incidence of health issues than those who were not exposed. *Id.* ¶¶ 30-31, 33. When this public relations strategy failed to adequately manipulate consumers and quell public concern, and after their own Epidemiology Review Board repeatedly raised concerns about statements that touted the relative safety of PFOA, Old DuPont settled on a secondary strategy—a complete corporate restructuring intended to, among other things, avoid any liability and accountability for the PFAS-laden products it had been marketing around the country, including in Texas. *Id.* ¶¶ 43, 71.

**B.    Old DuPont Engaged in a Multi-Year Restructuring Designed to Strand Its Valuable Assets From Its Massive Liabilities, Including to Texas**

11.    In 2013, Old DuPont and The Dow Chemical Company ("Old Dow") began to discuss a merger. *See* Pet. ¶ 72. Old DuPont knew, however, that no rational merger partner would agree to a transaction that would expose it to the substantial PFAS and environmental liabilities that Old DuPont faced. *Id.* Accordingly, as the State's Petition alleges, Movants accomplished their fraudulent restructuring scheme through a three-step plan.

*i.    Step 1 – The Chemours Spinoff*

12.    In July 2015, Old DuPont "spun off" the Chemours Company ("Chemours") as a separate public entity holding all businesses and asserts related Old DuPont's "Performance

4

Chemicals Business" (which included Teflon® and other products associated with Old DuPont's historic use of PFAS). *See* Pet. ¶¶ 76, 78. Per their Separation Agreement, Old DuPont required Chemours to directly assume Old DuPont's PFAS and other environmental liabilities, and to indemnify Old DuPont for any such liabilities. *Id.* ¶¶ 77, 79-81. In connection with the spin-off transaction, Old DuPont also extracted approximately $3.9 billion from Chemours. *Id.* ¶ 82. Thus, Chemours was thinly capitalized following the spinoff, and unable to satisfy the massive liabilities it had assumed from Old DuPont. *Id.* ¶¶ 84-85.[3]

> ii.    *Step 2 – The Creation of New DuPont to Facilitate the Purported Merger with The Dow Chemical Company*

13.    After the Chemours spinoff, Old DuPont knew it was untenable to argue that it was no longer responsible for the widespread PFAS liabilities it had accrued over decades. *See* Pet. ¶¶ 86-87. Therefore, Old DuPont moved on to the next step in its fraudulent plan. In December 2015, Old DuPont and Old Dow announced that their respective boards had approved an agreement wherein the companies would combine in an all-stock merger with the new combined company called DowDuPont, Inc. (the "DowDuPont Merger"). *Id.* ¶ 88.

14.    To effectuate the transaction, Old DuPont and Old Dow entered into an Agreement and Plan of Merger (the "DowDuPont Merger Agreement") that provided for the formation of a new holding company renamed first as DowDuPont and then renamed again as DuPont de

---

[3]  Indeed, in 2019, Chemours sued Old DuPont and Movants in Delaware Chancery Court to modify its contractual indemnity obligations, including with respect to Texas's claims. *Id.* ¶ 85. On January 22, 2021 Chemours settled its claims with Movants under an agreement that, among other things, requires Movants to contribute up to $2 billion over 20 years to resolve PFAS claims. *See* Memorandum of Understanding between The Chemours Co., Corteva, Inc., E.I. du Pont de Nemours & Co., and DuPont de Nemours, Inc., Ex. A, (Jan. 22, 2021), https://www.sec.gov/Archives/edgar/data/1666700/000119312521014077/d114181dex101.htm (last visited Feb. 24, 2025). The settlement does not impact any of the State's claims, including those against Movants.

Nemours, Inc. (*i.e.,* New DuPont), of which Old DuPont and Old Dow became wholly owned subsidiaries. *Id.* ¶¶ 89, 100.[4]

> *iii. Step 3 – The Shuffling, Reorganization, and Transfer of Valuable Assets Away from Old DuPont and Separation of Corteva and New Dow from New DuPont*

15.    Following the DowDuPont Merger, DowDuPont underwent a significant internal reorganization and engaged in numerous business segment and product line "realignments" and "divestitures" for the purpose of transferring a substantial portion of Old DuPont's assets out of the company in order to mitigate the financial downside associated with their substantial PFAS liability. *See* Pet. ¶ 91. DowDuPont shuffled the assets of Old DuPont and Old Dow and then reorganized the combined assets into three distinct divisions: (1) the "Agriculture Business,"; (2) the "Specialty Products Business"; and (3) the "Material Science Business." *Id.* ¶ 92.

16.    DowDuPont then incorporated two companies (i) Corteva and (ii) New Dow. *See* Pet. ¶ 93. In accordance with the April 1, 2019 Separation and Distribution Agreement among Corteva, New Dow, and DowDuPont (the "DowDuPont Separation Agreement", attached hereto as **Exhibit A**) and a subsequent June 1, 2019 Letter Agreement (the "Letter Agreement", attached hereto as **Exhibit F**) between Corteva and DowDuPont, the assets and liabilities primarily related to the respective business divisions between the three companies were allocated as follows: (1) DowDuPont retained the assets and liabilities associated with the "Specialty Products Business" which it received from Old DuPont; (2) Corteva received the assets and liabilities associated with the "Agriculture Business"; and (3) New Dow received the assets and liabilities associated with the "Materials Science Business." *Id.* ¶¶ 92, 94-95, 98-100. DowDuPont, who changed its

---

[4]  Old DuPont and Old Dow never actually merged, presumably because doing so could potentially result in Old Dow's assets being subject to the claims of creditors and third-parties injured by Old DuPont's legacy PFAS liabilities. *Id.* ¶ 90. Old DuPont and Old Dow instead devised a structure under which they became separate, wholly-owned subsidiaries of DowDuPont. *Id.*

registered name to DuPont de Nemours, Inc. ("New DuPont") in 2019, also "contributed" Old

DuPont to Corteva, and Old DuPont remains a wholly-owned subsidiary of Corteva to this day.

*Id.* ¶¶ 96, 100.

17.    These transactions stripped away Old DuPont's valuable tangible assets (in

particular the "good" non-PFAS assets that Old DuPont retained following the Chemours spin-off)

and transferred those assets to New DuPont and Corteva for far less than the assets were worth.

*See* Pet. ¶ 102.

**C.    New DuPont and Corteva Contractually Assumed Old DuPont's Legacy PFAS Liabilities.**

18.    In an effort to protect New Dow and the assets New Dow received from Old

DuPont, Corteva and New DuPont contractually assumed direct responsibility for Old DuPont's

legacy liabilities associated with PFAS and the "Performance Chemical Business." *See* Pet. ¶ 97.

These were the same liabilities that DuPont has caused Chemours to assume in 2015. *Id.* ¶¶ 76,

97.

19.    As alleged in the Petition, the separations of Corteva and New Dow from New

DuPont are governed by the DowDuPont Separation Agreement signed by New DuPont, Corteva

and New Dow on April 1, 2019. *See* Pet. ¶ 94. While the DowDuPont Separation Agreement is

publicly available, relevant excerpts are attached to the Graham Declaration as Exhibit A.[5] Section

---

[5]    The Court may consider the DowDuPont Separation Agreement.  First, the DowDuPont
Separation Agreement is the subject of this action and specifically referred to in the Complaint.
*See Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) ("A court is permitted,
however, to rely on documents incorporated into the complaint by reference, and matters which
a court may take judicial notice."). Second, this motion is made, in part, pursuant to Rule
12(b)(2), which permits the Court to consider materials outside the pleadings. *See VeroBlue
Farms USA, Inc. v. Wulf,* 465 F. Supp. 3d 633, 650 (N.D. Tex. 2020) ("Jurisdictional motions
to dismiss or motions to transfer can look to evidence outside the motions…).

This agreement is not being used in response to Movants 12(b)(6) arguments, but is instead used
in response to their 12(b)(2) arguments. As such, this Court may consider these materials without
converting Movants' 12(b)(6) motion into a motion for summary judgment. *See General Retail
Services, Inc. v. Wireless Toyz Franchise LLC,* 255 Fed. Appx. 775, 789 (finding district court's

2.2(c) of the DowDuPont Separation Agreement, titled "<u>Assumption of Liabilities,</u>" required each party to "accept, assume (or as applicable retain) and perform, discharge and fulfill, in accordance with their respective terms ('<u>Assume</u>')" curtained specifically defined liabilities. *Id.* §2.2(c). In particular, (a) New DuPont assumed all "Specialty Products Liability," (b) Corteva assumed all "Agricultural Liability," and (c) New Dow assumed all "Material Science Liability." *Id.* at Preamble, §2.2(c).

20.    Details regarding which liabilities were assumed by Corteva and New DuPont were initially hidden from the public and buried in nonpublic schedules. *See* Pet. ¶¶ 97, 103. This was done in a clear attempt to hide Old DuPont's valuable assets from creditors, like the State of Texas. *Id.* ¶ 103. New DuPont and Corteva's express assumption of Old DuPont's historic PFAS liability, however, has been borne out through litigation after certain courts required New DuPont and Corteva to disclose the nonpublic portions of the restructuring agreements—including the DowDuPont Separation Agreement and Letter Agreement. *Id.*

21.    Indeed, several courts have held that New DuPont and Corteva contractually assumed Old DuPont's PFAS liabilities pursuant to the plain language of the contracts at issue.[6]

---

conversion of 12(b)(6) motion was improper when materials "were not submitted to support the sufficiency of the pleadings under a Rule 12(b)(6) standard and did not go towards the 12(b)(6) issues."). The agreement is available at https://www.sec.gov/Archives/edgar/data/1666700/000119312519095042/d725044dex21.htm (last visited Feb. 25, 2025).

[6] *See, e.g.*, *State of North Carolina ex rel. Joshua H. Stein, Attorney General v. E.I. Du Pont De Nemours and Company et al*, 879 S.E.2d 537, 565 (N.C. 2022) (" . . . Corteva and New DuPont expressly assumed Old DuPont's PFAS-related liabilities . . . . Thus, the Business Court has jurisdiction over Corteva and New DuPont for all of the State's claims arising out of and related to Old DuPont's PFAS-related activities in North Carolina."); *State of New Hampshire v. 3M Company,* No. 216-2019-CV-0045 (Sup. Ct., Merrimack Co. July 8, 2021) (unpublished) (holding that New Hampshire law permits imputation of a predecessor corporation's contacts to establish successor jurisdiction and finding that the State made a prima facie showing that jurisdiction existed over Corteva and New DuPont based on (1) their express assumption of Old DuPont's PFAS liabilities; and (2) their fraudulent efforts to help Old DuPont evade liability); *State of Ohio ex rel. DeWine v. E.I. du Pont de Nemours and Co.,* No. 180T32 (Ct. Common Pleas, Wash. Co. Aug. 4, 2021) (unpublished) (denying Corteva and New DuPont's motion to

The North Carolina Supreme Court, for example, held that New DuPont and Corteva expressly assumed Old DuPont's PFAS liabilities pursuant to the DowDuPont Separation Agreement and Letter Agreement. *See* Pet. ¶ 104.

### III.    PROCEDURAL BACKGROUND

22.    On December 11, 2024, the State filed its Petition in Johnson County and was assigned to the 18th Judicial District.[7] The Petition named four corporate defendants and alleges violations of four specific provisions of Texas's DTPA. *See* Pet. ¶¶ 8-11, 106-109. These allegations are premised on Defendants' false, deceptive, and misleading acts and practices done in connection with the marketing and sale of PFAS-containing products. *Id.* ¶¶ 106-109. These acts and practices occurred in Texas and were directed to Texas consumers. *Id.* ¶¶ 1, 6, 12, 106-109. Accordingly, the State seeks civil penalties up to $10,000 per violation of the DTPA, as well as pre- and post-judgment interest, a permanent injunction, attorneys' fees and costs, and any other relief the court orders. *Id.* ¶¶ 111-113.

23.    The State's Petition alleges that, pursuant to the DowDuPont Separation Agreement, New DuPont and Corteva contractually assumed Old DuPont's liabilities, including all liabilities related to the marketing and sale of PFAS-containing products. *See* Pet. ¶¶ 103-104, 110. Thus, the State asserts its claims against New DuPont and Corteva based on Old DuPont's conduct. *Id.* ¶¶ 24-46.

24.    On January 16, 2025, Defendant 3M removed this action to this Court, arguing that this Court has jurisdiction pursuant to either the Class Action Fairness Act ("CAFA"), 28 U.S.C.

---

dismiss for lack of jurisdiction and granting the State's cross-motion regarding their assumption of Old DuPont's liabilities); *Suez Water New Jersey, Inc. v. E.I. DuPont de Nemours, et al.,* No. 2:20-cv-19906 (D.N.J. Oct. 14, 2021) ("If Corteva and New DuPont expressly assumed some PFAS-related liability from Old DuPont's activities in New Jersey, this would provide minimum contacts with the forum state sufficient to support personal jurisdiction.").

[7]  The action was docketed as No. DC-C202400996.

§1332(d)(8) or general principles of diversity of citizenship, 28 U.S.C. §1332(a). *See* ECF No. 1. All defendants consented to removal. *Id.* at 11.

25.     On February 5, 2025, the State filed its Motion to Remand. *See* ECF Nos. 14-15. Movants did not oppose the State's Motion to Remand and therefore they have waived any arguments that remand in this instance is improper. *See Celanese Corp. v. Martin K. Eby Const. Co., Inc.,* 620 F.3d 529, 531 (5th Cir. 2010) ("[T]he general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal."). The State's Motion to Remand remains pending before this Court.

26.     In any event, the Court should exercise its discretion and remand this matter to state court before it is required to expend considerable judicial resources deciding issues related to personal jurisdiction, as well as merit-based arguments, that have been raised here. The Fifth Circuit has advised as much. *See Sangha v. Navig8 ShipManagement Private Ltd.,* 882 F.3d 96, 100 (5th Cir. 2018) ("[H]owever, neither *Ruhrgas* nor *Sinochem* change the general expectation that courts address subject-matter jurisdiction at the outset in the 'mine run of cases' and reach other issues first only where the jurisdictional issue is 'difficult to determine' ***and*** the other grounds are relatively 'less burdensome.'") (emphasis added); *Speedfit LLC v. Woodway USA, Inc.,* 642 F. Supp. 3d 429, 439 (S.D.N.Y. 2022) ("[B]ecause fundamental principles of American jurisprudence forbid the Court from acting in the absence of subject matter jurisdiction, plaintiffs' motion to remand must be examined before any other matter.").

## IV.     LEGAL STANDARD

27.     When considering a defendant's motion to dismiss under Rule 12(b)(6), a court must construe the factual allegations in the lawsuit in the light most favorable to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Walker v. Beaumont Indep. Sch. Dist.,* 938 F.3d 724, 725 (5th Cir. 2019). This strict standard of review looks to see if the complaint states

any plausible claim for relief. *See Lowrey v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997). Generally, courts view a motion to dismiss under Rule 12(b)(6) "with disfavor and [the motion] is rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  If the plaintiff provides fair notice of the claim and the factual allegations are sufficient to show that the right relief is plausible, a court should deny the defendant's motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Twombly*, 550 U.S. at 555-56. For a complaint to plausibly suggest a claim for relief, it does not have to provide detailed factual allegations, but it must: (1) show a right to relief beyond mere speculation or (2) set forth a claim for relief from which more than a mere possibility of misconduct can be inferred. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

28.     Moreover, Rule 9(b) does not apply to the State's claims under the DTPA. *See, e.g.*, *CFPB v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1373 (N.D. Ga. 2015). Indeed, Rule 9(b)'s heightened pleading standard is "inconsistent with the remedial nature of consumer protection statutes." *Id.* at 1373; *see also* 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1296 (4th ed. 2024). The State brought this action in the public interest and alleges that Movants should be held liable for deception under the DTPA because they made misrepresentations to consumers. "Such a claim is not a claim for fraud because it has no scienter or injury requirement." *CFPB v. All Am. Check Cashing, Inc.*, 2016 WL 11635752, at *2 (S.D. Miss. July 15, 2016).

29.     But, to the extent the heightened pleading standard for fraud under Rule 9(b) is found to apply to the State's allegations,[8] the Fifth Circuit recognizes that "Rule 9(b)'s ultimate

---

[8] Movants knew, for decades, that the products they manufactured and sold in Texas contained toxic chemical compounds that were hazardous to Texas consumers. Allegations to this effect are legion throughout the State's Petition. Despite this knowledge, Movants continued to market these products as safe in order to maximize their profits. If the State were not alleging intentional

meaning is context specific, and thus there is no single construction of Rule 9(b) that applies in all contexts." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009). Generally, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005). Even where a district court finds merit in a motion to dismiss pursuant to Rule 9(b), leave to amend to cure any deficiency should be freely given. *See, e.g., In re Life Partners Holdings, Inc.,* 926 F.3d 103, 125 (5th Cir. 2019).

## V.    ARGUMENT

The State has, at a minimum, made a prima facie showing of specific jurisdiction. Moreover, the state has more than adequately pled violations of the DTPA under both 12(b)(6) and 9(b). Lastly, Movants' argument relating to lack of notice does not warrant dismissal.

### A.    The State Has Made a Prima Facie Showing of Specific Jurisdiction

30.    As Movants correctly recognize, Texas's long-arm statute allows courts to exercise specific personal jurisdiction over non-resident defendants to the full extent permitted by the Due Process Clause of the United States Constitution. *See* Br. at 6. Accordingly, "[b]ecause the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.,* 523 F.3d 602, 609 (5th Cir. 2008). The Fifth Circuit has articulated a three-step test for specific jurisdiction analysis:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purportedly directed its activities toward the

_____

misrepresentations, it would not have to satisfy Rule 9(b). *See Gospel Light Eritrean, Baptist Church v. Ohio Causalty Ins. Co*., No. 3:23-cv-1971, at * 2 (N.D. Tex. July 25, 2024) (collecting cases).  However, the State maintains that these representations were intentional and the allegations within the Petition support this contention.

forum state or purposefully availed itself of the privileges of conducting activities there;

(2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and

(3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs. Ltd. v. Ritter,* 768 F.3d 429, 433 (5th Cir. 2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 271 (5th Cir. 2006)).

31.    Here, the State has established, at a minimum, a *prima facie* case for specific jurisdiction over Movants because New DuPont and Corteva contractually assumed Old DuPont's legacy PFAS liabilities at issue in this lawsuit. This allows Old DuPont's related jurisdictional contacts to be imputed to both New DuPont and Corteva. *E.g.*, *Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co.,* 921 F.3d 522, 545 n. 21 ("This court has held that courts can impute forum contacts of a predecessor company to the successor corporation . . . ."). In the alternative, the State should be granted limited jurisdictional discovery.

      ***i.***    *Movants Have Minimum Contacts that Relate to the Petition Because They Assumed Old DuPont's PFAS Liabilities*

32.    Movants have minimum contacts with the forum state that relate to the Petition because they assumed Old DuPont's liabilities.

33.    Old DuPont does not contest that it is subject to personal jurisdiction in this case—nor could it. The DTPA claims asserted by the State are based on Old DuPont's conduct in Texas, including the decades-long practice of consciously flooding the Texas marketplace with products that contained toxic chemical compounds, while simultaneously failing to disclose the known risks of those chemicals and marketing these products as "safe." This conduct, which was "purposefully directed" at Texas, is well-documented throughout the State's Petition and the State's claims

unquestionably "arise out of or relate to" those activities. Again, Old DuPont does not, and cannot, dispute that they are properly before this Court.[9]

34.     Corteva and New DuPont have not provided *any* evidence that: (1) they are not the corporate successors to Old DuPont or (2) they did not expressly assume Old DuPont's PFAS-based liabilities. The State's Petition contains numerous allegations regarding Corteva and New DuPont's respective assumption of Old DuPont's PFAS liabilities. For example:

- In connection with a series of subsequent transactions in 2019, New DuPont assumed certain Old DuPont liabilities – including those relating to PFAS. *See* Pet. ¶ 10.

- In connection with this transfer, Corteva assumed certain of Old DuPont's liabilities – including those related to PFAS.  *See* Pet. ¶ 11.

- In the end, New DuPont and Corteva assumed Old DuPont's liabilities related to, among other things, its use and manufacture of PFAS chemicals, and are directly liable for Old DuPont's conduct at issue in this case. *See* Pet. ¶ 74.

- Pursuant to the DowDuPont Separation Agreement and Letter Agreement, Corteva and New DuPont also assumed direct financial liability for legacy liabilities arising from Old DuPont's historic use of PFAS. *See* Pet. ¶ 97.

- Under the plain language of those agreements, New DuPont and Corteva contractually assumed Old DuPont's liabilities arising from its historic use of PFOA and other PFAS, and are therefore directly liable for Texas's claims against Old DuPont. *See* Pet. ¶ 103.

- Several courts have held that New DuPont and Corteva contractually assumed Old DuPont's PFAS liabilities. *See* Pet. ¶ 104.

---

[9]  Given the threadbare allegations in Movants' brief, the State expects additional arguments raised on reply that are not included in the original Motion. This would be improper. *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are generally waived."). To be clear, Old DuPont has waived any argument regarding personal jurisdiction by joining in this Motion, *see* Br. at 2, without challenging the Court's exercise of personal jurisdiction. *See Dell Marketing, L.P. v. Incompass IT, Inc.,* 771 F. Supp. 2d 648, 652 (W.D. Tex. 2011) ("[T]he Federal Rules indicate a defendant waives the right to challenge personal jurisdiction under two circumstances; first the right is waived if a defendant files a motion under Rule 12 that asserts some defenses, but omits an available challenge to personal jurisdiction…).

35.    The State's Petition, as well as this Opposition, also provide significant detail about the circumstances and consequences of the formation of New DuPont and Corteva—a corporate restructuring done in order to strip away Old DuPont's valuable assets in an attempt to insulate its exposure to PFAS-related liabilities. *See infra* at 4-8. New DuPont and Corteva have not, and cannot, argue in earnest that they are not the corporate successors to Old DuPont.[10] Though, they are likely to try.[11] Whatever corporate label Movants attempt to tether themselves to should, however, be of no import in establishing successor jurisdiction over them. As held by the North Carolina Supreme Court when addressing this mirror issue, "[w]here, as here, a company has explicitly assumed certain liabilities or reorganized to avoid the very liability for which it is brought to court, requiring a merger or a corporate continuation to establish successor jurisdiction would serve no additional purpose." *State ex rel. Stein*, 879 S.E. 2d at 546. Texas law requires adherence to this conclusion.

36.    While Texas law "[d]oes not generally recognize successor liability for subsequent purchases of corporate assets[,]" *UST-Mamiya, Inc.,* 441 F. Supp. 3d at 394 (citation omitted), an exception exists "[w]hen the successor corporation *expressly assumes* the liability of the predecessor corporation, the successor corporation will be liable for the predecessor corporation's liabilities." *Id.* (emphasis added). As noted previously, the State's Petition unambiguously asserts

---

[10] *See State of North Carolina ex rel. Joshua H. Stein, Attorney General v. E.I. Du Pont De Nemours and Company et al*, 879 S.E.2d 537 (N.C. 2022) ("In 2020, North Carolina (the State) brought an action against Old DuPont and its **corporate successors**, including Chemours, New DuPont, and Corteva….In 2019, New DuPont spun off Corteva and New Dow as separate public entities. Corteva and New DuPont are the **corporate successors** that bring this appeal.").

[11] Corteva and New DuPont, relying on Iowa law, argued before the North Carolina Supreme Court that they should be treated as an "assignee" rather than a "corporate successor" because they "assumed only limited assets and corresponding liabilities from Old DuPont . . . ." *Id.* at 549 n. 8. The North Carolina Supreme Court disagreed with this classification, but noted that "even if we were to treat Corteva and New DuPont as assignees, the 'limited bundle of . . . obligations,' they assumed included the liabilities that are the subject of this litigation." *Id.*

Corteva and DuPont agreed to assume Old DuPont's PFAS liabilities. *See* Pet. ¶ 110. Movants acknowledge this in their Motion, without refuting it. *See* Br. at 11. Therefore, even without the litany of evidence the State has provided supporting this contention, this allegation is uncontroverted and thus, at this stage, must be accepted as true.

37.     Taken together, the State's uncontroverted allegations against Corteva and New DuPont require a singular result: Old DuPont's jurisdictional contacts should be imputed to Movants.

38.     The great weight of persuasive authority permits imputation of a predecessor's actions upon its successor *whenever* forum law would hold the successor liable for its predecessor's actions. *City of Richmond, Va. v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 454 (4th Cir. 1990). While Movants may argue that it may be improper to impute the jurisdictional contacts of one defendant onto another based solely on a theory of joint liability, that however, is not what the State asks this Court to do. *See Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 319 (5th Cir 2020). Rather, the State is arguing that the Court's exercise of jurisdiction over New DuPont and Corteva is proper based on the successor relationship that undisputedly exists between these corporate bad actors. This District, and Circuit, has supported this premise. *Id.*; *see also, e.g.*, *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653-54 (5th Cir. 2002) ("[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."); *UST-Mamiya, Inc. v. True Sports, Inc.*, 441 F. Supp. 3d 382, 396 (N.D. Tex. 2020) ("However, a nonresident defendant corporation not otherwise subject to personal jurisdiction in the forum state becomes so by virtue

of succeeding to a corporation that is subject to personal jurisdiction in Texas.") (citation omitted).[12]

39.     As such, the State has made a *prima facie* showing that New DuPont and Corteva expressly assumed the liabilities of Old DuPont and therefore it is proper and within the Court's discretion to impute Old DuPont's jurisdictional contacts onto these entities.

>    ***ii.***     *Exercising Jurisdiction Over New DuPont and Corteva is in Line with Due Process*

40.     Exercising personal jurisdiction over Movants "comport[s] with fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985). To defeat jurisdiction based on this fairness inquiry, a defendant bears the burden of presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*. at 477. This Court may consider several factors in this inquiry, including:

>    the burden of the nonresident defendant;
>
>    the forum state's interests;
>
>    the plaintiff's interest in securing relief;
>
>    the interest of the interstate judicial system in the efficient administration of justice; and
>
>    the shared interest of the several states in furthering fundamental social policies.

*McFadin v. Geber*, 587 F.3d 753, 760 (5th Cir. 2009) (citation omitted). Movants' analysis of these factors is unavailing for one key reason—***it is wholly missing from their brief***.  As such, it is

---

[12]  This principle extends beyond the borders of Texas and the Fifth Circuit and has been embraced for decades by courts across the nation. *See e.g.*, *In re Nazi Era Cases Against German Defendants Litig.,* 153 F. App'x 819, 825 (3d. Cir. 2005) ("[T]he jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process."); *Duris v. Erato Shipping, Inc.,* 684 F.2d 352, 356 (6th Cir. 192) ("Any other ruling would allow corporations to immunize themselves by formalistically changing their titles."); *Williams v. Bowman Livestock Equipment Co.,* 927 F.2d 1128, 1132 (10th Cir. 1991) ("[A] corporation's contacts with a forum may be imputed to its successor if forum law would hold the successor liable for the actions of its predecessor.").

impossible for Movants to argue that they have met their burden in demonstrating that this Court's exercise of jurisdiction would violate the notions of fair play and substantial justice. Regardless, if those arguments had even been made, they would be hollow.

41.    Here, these factors establish that exercising jurisdiction over Corteva and New DuPont is reasonable. The fact that the State is the plaintiff in this case weighs heavily in favor of exercising jurisdiction over Movants, for several reasons. First, Texas has a strong interest in protecting the prosperity of its economy and its citizens from deceptive business practices. This is especially true where, as here, the State brought this action pursuant to Section 17.47 of the DTPA, a statutory provision that was *specifically* designed to ensure that matters of "public interest" could be enforced by the Attorney General. *See State v. Emeritus Corp.,* 466 S.W.3d 233, 240 (Tex. App.—Corpus Christi 2015, pet. denied). The State seeks to hold Movants accountable for violations of the DTPA through the imposition of civil penalties and to prevent, by way of injunctive relief, future illegal acts. Though this action is not being brought to recover restitution on behalf of its citizens, the benefits of, among other things, maintaining a marketplace free from the deceptive acts of Movants will invariably also be reaped by the citizens themselves. *See Lewis v. BT Inv. Managers, Inc.* 447 U.S. 27, 38 (1980) ("…[h]onest financial practices are essential to the health of any State's economy and to the well-being of its people.).

42.    Texas has an interest in the efficient resolution of all controversies in the State, but particularly those that the State brings to address significant, and long-standing, deceptive acts on the part of corporate actors. Indeed, in certain cases, like this one, the forum State's interest in adjudicating the dispute, obtaining requisite relief, and furthering substantive social policies "serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 777.

43.     Moreover, Movants, both incorporated in Delaware, would not be overly burdened by defending these actions in Texas. *See, e.g.*, *Silicon Solar Housing Solutions, Inc. v. Farrell*, 2007 WL 162772, at *5 (N.D.Tex. Jan.22, 2007) ("While Farrell will suffer more of a financial burden by participating in litigation in Texas than he would if the action were pending in New York, such a burden would certainly be no greater on Farrell than would be the burden on Blake if he were to be required to litigate his claims against Farrell in a New York court."). Indeed, as noted, courts in various states across the country have allowed claims to proceed against New DuPont and Corteva—as nonresidents of the states in question—based on these defendants' assumption of Old DuPont's PFAS liabilities.

44.     Accordingly, the Court should exercise personal jurisdiction over Movants.

       ***iii.***    *In the Alternative, the State Should be Permitted Jurisdictional Discovery*

45.     At the pleading stage, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Innova Hosp. San Antonio, L.P.,* 995 F. Supp. 2d at 615. No jurisdictional discovery is needed here because the State has established a *prima facie* case for specific jurisdiction based on the Petition's detailed allegations and the language of the DowDuPont Separation Agreement. However, to the extent the Court is inclined to grant the Motion, the State requests limited jurisdictional discovery. *See Heller v. Marriott Vacations Worldwide Corp.,* 2023 WL 12027439 at *4 (W.D. Tex. Apr. 26, 2023) ("[T]o that end, district courts have broad discretion in all discovery matters and generally allow plaintiffs to conduct limited jurisdictional discovery provided they have made a preliminary showing of jurisdiction.") (internal quotes and citations omitted).

46.     The State would seek the following jurisdictional discovery:

- the complete Separation and Distribution Agreement by and among Corteva, Inc., Dow Inc., and DowDuPont Inc., dated as of April 1, 2019

(the "DowDuPont Separation Agreement"), including all schedules, exhibits, and amendments; and

- the complete Letter Agreement between Corteva and DowDuPont Inc., dated as of June 1, 2019, including all exhibits, and amendments thereto.

## B.    The State Has Adequately Pled DTPA Violations Under Both 12(b)(6) and 9(b)[13]

47.    Violations of Section 17.46(a) of the DTPA have only two elements: (1) "[f]alse, misleading, or deceptive acts or practices" that occur (2) "in the conduct of any trade or commerce." Tex. Bus. & Com. Code §17.46(a). Any such acts are "unlawful and are subject to action by the consumer protection division" of the Texas Attorney General's Office. *Id.* If the Attorney General, acting through his Consumer Protection Division, has a reasonable belief that these elements are met and that proceeding would be in the public interest, he is authorized by the Legislature to "bring an action in the name of the state." *Id.* § 17.47(a). The Legislature made clear that the statute "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices." *Id.* § 17.44.

48.    Violations of Section 17.46(b) are even more straightforward. For any claim brought under a subsection of 17.46(b), the Consumer Protection Division need only prove that the conduct described in each particular provision occurred. *See Spradling v. Williams*, 566 S.W.2d 561, 562-63 (Tex. 1978). Once this has been shown, the conduct is considered per se false, misleading and/or deceptive. *Id.* ("[I]f any one of those listed acts or practices is found factually to have happened, it is by law an unlawful deceptive trade practice because subsection 17.46(b) makes it unlawful.").

---

[13] Defendants' argument that "the State fails to allege that New DuPont or Corteva committed any unfair trade practices at all" has already been addressed.  New DuPont and Corteva "expressly assumed Old DuPont's PFAS liabilities pursuant to the DowDuPont Separation Agreement and Letter Agreement." See Pet. ¶ 104.

49.    Movants allege that the State's Petition is inadequate because it merely copied and pasted "verbatim elements of 'laundry list' deceptive trade practices claims" and does not "describe how defendant's conduct gives rise to any alleged claim." *See* Br. at 10. This is demonstrably false. The State has asserted the following allegations surrounding Old DuPont's knowledge of the toxicity of PFAS and its health impacts:

- As early as the 1960s, Old DuPont was aware that PFOA is toxic to animals and humans. *See* Pet. ¶ 27

- As early as 1961, Old DuPont's scientists issued internal warnings about PFOA toxicity. *See id.* ¶ 28

- In 1978, Old DuPont, based on information it received from 3M, initiated a plan to review and monitor the health conditions of workers who were exposed to PFAS. *See id.* ¶ 29.

- By 1979, Old DuPont had data indicating that workers exposed to PFOA had a significantly higher incidence of health issues than did unexposed workers. *See id.* ¶ 30.

- In 1980, Old DuPoint confirmed, internally, that PFOA is "toxic," that humans accumulate PFOA in their tissues, and that "continued exposure is not tolerable." Old DuPont did not make these findings available to the public. *See id.* ¶ 31.

- In 1981, Old DuPont conducted a blood sampling study of pregnant or recently pregnant employees and found that 25% of women who worked with Teflon® had children with birth defects. *See id.* ¶ 33.

- In 2000, Old DuPont was aware that the existence of biopersistent chemicals in products was information consumers were concerned about. They deliberately continued to conceal this information. *See id.* ¶ 40.

- In 2006, Old DuPont's own Epidemiology Review Board ("ERB") raised concerns that Old DuPont's public statements that PFOA did not pose a health concern were incorrect. *See id.* ¶ 43.

The Stated has asserted the following allegations surrounding Old DuPont's continued advertisement of products that it *knew* contained toxic chemical compounds:

- In 1986, Old DuPont released Stainmaster® carpet to the public and advertised this product as safe for families and particularly targeted these advertisements to families with babies. These Stainmaster advertisements were made more than

21

twenty years after Old DuPont first became aware of the toxic nature of PFAS. *See id.* ¶¶ 37-38.

- In at least the 1970s and 1990s, Old DuPont continued to advertise its Teflon® brand for household use, but failed to disclose to consumers the adverse effects of PFAS. These advertisements were made after Old DuPont had issued internal warnings about the toxic nature of PFAS. *See id.* ¶¶ 28, 39.

- In 2006, Old DuPont ran an advertisement in the New York Times stating "Teflon® Non-Stick Coating is Safe." It made this advertisement despite knowing that it was, in fact, not safe. *See id.* ¶ 44.

50.    This is not an instance where a plaintiff has failed to support its DTPA claims with an explanation of how a defendant's conduct amounts to a deceptive act. *See Gonzalez v. State Farm Lloyds*, 326 F. Supp. 3d 346, 351 (S.D. Tex. 2017) ("[P]laintiffs fail to support any of their DTPA claims with an explanation of what [defendant] did factually that constitutes deceptive acts."). Instead, the State has made clear that Movants continued to affirmatively market their products as "safe" when they had clear knowledge that these chemical compounds were toxic to humans. Additionally, Movants omitted information material to consumers with an intent to induce those consumers to purchase products they would not have otherwise purchased. At this stage, the State is not required to provide a comprehensive list of every advertisement or omission that may be at issue. Such a requirement goes far beyond the Court's discretion at this stage. *See Albracht v. Indemnity Ins. Co. of North America*, No. 2:19-cv-72 2019 WL 7040333 at *4 (N.D. Tex. Nov. 20, 2019) ("[R]ule 9(b) does not require that a specific date and time always be alleged as to each misrepresentation") (citation omitted).

51.    The State has identified the relevant party making the statements, when the statements were made, where the statements were made, and how the alleged statements were false or misleading. Thus, Texas has satisfied its burden at this stage of the proceedings.

**C.    The State's Alleged Failure to Provide Notice Does Not Warrant Dismissal**

52.    Movants improperly conflate the DTPA's notice provision for individual consumers, Tex. Bus. & Com. Code §17.505(a), and the "contact" requirement for actions brought by the Consumer Protection Division. Tex. Bus. & Com. Code §17.47(a). The notice requirements of the DTPA for consumers are more stringent than those for the State. Under §17.505(a), a consumer must "give *written notice* to the person at least 60 days before filing the suit…" The State is under no such obligation. Instead, the State, barring certain exceptions, is simply required to "contact" a person in order to "inform him in general of the alleged unlawful conduct." Movants argue that they were not provided notice – they have failed to argue that they were not contacted or informed in general of the alleged unlawful conduct. *See* Br. at 12.

53.    Even accepting Movants argument, the proper remedy is for the action to be held in abeyance for seven (7) days so the State can "contact" Movants to inform them in general of the alleged unlawful conduct that gave rise to a suit that they are in the midst of defending. *See Oppenheimer v. Prudential Secs. Inc.,* 94 F.3d 189, 194 (5th Cir. 1996) (finding that proper remedy for insufficient notice is abatement). Though this remedy has been evoked to deal with a party's failure to provide written notice, the logic applies equally to the State's "contact" requirement. *See id.*

## VI.    CONCLUSION

54.    The State of Texas filed this suit in order to hold Defendants accountable for decades of illegal conduct that resulted in significant damage to the State and its citizens. It is clear that Defendants prioritized earnings over being forthright with Texas consumers and now seek to avoid responsibility for their actions. Movants do not deny that their products contained toxic chemical compounds.  Movants do not deny that they continued to sell their products despite knowing of their harmful effects.  Movants do not deny that they engaged in a fraudulent corporate

transfer in order to shield themselves from their liabilities. Instead, Movants argue that because the State has not detailed every material misrepresentation made over several decades that this matter should be dismissed in its infancy.  That is not the law. That is not justice.

55.    As such, the State respectfully requests that the Court deny Movants' Motion to Dismiss.  In the alternative, the Court should grant jurisdictional discovery into Movants' assumption of Old DuPont's liabilities.

Dated:  March 11, 2025

**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

**BRENT WEBSTER**
FIRST ASSISTANT ATTORNEY GENERAL

**RALPH MOLINA**
DEPUTY FIRST ASSISTANT ATTORNEY GENERAL

**AUSTIN KINGHORN**
DEPUTY ATTORNEY GENERAL FOR CIVIL LITIGATION

*/s/ Jennifer Roscetti*

**JONATHAN STONE**
CHIEF, CONSUMER PROTECTION DIVISION

**Jennifer Roscetti**
State Bar No. 24066685
**Kelley Owens**
State Bar No. 24118105
Assistants Attorney General
Jennifer.roscetti@oag.texas.gov
Kelley.owens@oag.texas.gov

OFFICE OF THE TEXAS ATTORNEY GENERAL
Consumer Protection Division
P.O. Box 12548, MC-010
Austin, Texas 78711-2548
Tel: (512) 463-2185
Fax: (512) 473-8301

*/s/ Bill Jackson*

**WILLIAM J. JACKSON**
**JENNIFER C. BARKS**
**LAUREN H. SHAH**
**MARIA F. PIMIENTA**
**KELLEY DRYE & WARREN LLP**
515 Post Oak Blvd., Suite 900
Houston, Texas 77027
Tel: (713) 355-5000
Fax: (713) 355-5001
bjackson@kelleydrye.com

Respectfully Submitted,

*/s/ Katie B. Hobson*

**KELLIE E. BILLINGS-RAY**
CHIEF, ENVIRONMENTAL PROTECTION DIVISION

**Katie B. Hobson**
State Bar No. 24082680
**Brittany E. Wright**
State Bar No. 24130011
**Jake Marx**
State Bar No. 24087989
Assistants Attorney General
Katie.hobson@oag.texas.gov
Brittany.wright@oag.texas.gov
Jake.marx@oag.texas.gov

OFFICE OF THE TEXAS ATTORNEY GENERAL
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

Mark Lanier
Alex Brown
**THE LANIER  LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N., Suite 100
Houston, Texas 77054
Tel: (713) 659-5200
Fax: (713) 659-2204
mark.lanier@lanierlawfirm.com
alex.brown@lanierlawfirm.com

jbarks@kelleydrye.com
lshah@kelleydrye.com
mpimienta@kelleydrye.com

*/s/ Glenn Graham*

**DAVID I. ZALMAN**
**GLENN GRAHAM**
**ELIZABETH N. KRASNOW**
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
dzalman@kelleydrye.com
ggraham@kelleydrye.com
ekrasnow@kelleydrye.com

*/s/ Scotty MacLean*

Scotty MacLean
**MACLEAN LAW FIRM, P.C.**
State Bar No. 00787942
4916 Camp Bowie Blvd.
Fort Worth, Texas 76107
Tel: 817-529-1000
Fax: 817-698-9401
smaclean@macleanfirm.com

**ATTORNEYS FOR THE STATE OF TEXAS**

## CERTIFICATE OF SERVICE

I certify that on this 11th day of March 2025, a true and correct copy of the foregoing document was served by email and/or by electronic filing service on all counsel of record via the Court's CM/ECF system.

/s/  *Glenn Graham*
GLENN GRAHAM