IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | § | |
| | § | Civil Action No. 3:25-cv-00122-K |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| 3M COMPANY; CORTEVA, INC., DUPONT | § | |
| DE NEMOURS, INC., and EIDP, INC. F/K/A | § | |
| E. I. DU PONT DE NEMOURS AND | § | |
| COMPANY, | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF STATE OF TEXAS'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO REMAND**

## I.  INTRODUCTION

3M asks this Court to reach a remarkable conclusion: that the State of Texas cannot bring suit in Texas state court to protect the Texas economy from deceptive advertising. Needless to say, 3M is wrong. Section 17.47 of the Texas Business and Commerce Code empowers the Texas Attorney General, and only the Texas Attorney General, to initiate litigation against bad actors that pollute the State's marketplace with false advertisements. Courts consistently have held that Texas has a quasi-sovereign interest in such cases. Thus, the State is the real party in interest to this case and diversity jurisdiction does not exist.

3M also asserts that removal is proper under the Class Action Fairness Act ("CAFA") because Section 17.47 is "similar" to Federal Rule of Civil Procedure 23. This contention is equally astounding. Section 17.47 plainly is not a class action provision. It does not authorize the Texas Attorney General to bring class actions, nor does it have any of the defining characteristics

1

of a class action under Federal Rule of Civil Procedure 23. To hold otherwise would mean that every state deception or false advertising suit would be removable under CAFA—a far reaching and illogical conclusion. 3M's argument therefore should be rejected.[1]

Lastly, because this lawsuit was improperly and baselessly removed, the State is entitled to an award of fees.

## II.  ARGUMENT

### A. Diversity Jurisdiction Does Not Exist Because the State is the Real Party in Interest

1.  3M contends that the State is a nominal party to this suit because it seeks relief on behalf of a "discrete group" of Texans and because it has an interest in "compliance generally" with state laws. A plain reading of the State's Petition indicates that 3M is wrong. *See* ECF No. 1, Ex. E-1 (hereinafter the "Petition" or "Pet."). The Petition makes abundantly clear that the Attorney General seeks to protect the economic wellbeing of the State by ensuring that 3M and its co-Defendants cannot continue to manipulate the market with false and misleading advertisements. This is a quintessential quasi-sovereign interest, as Texas courts and courts across the country have recognized.[2] *See, e.g.*, *Texas v. Veterans Support Organization*, 166 F. Supp. 3d 816 (W.D. Tex. 2015); *Texas v. Google LLC*, 2023 WL 113732 (S.D. Tex. Jan. 5, 2023). Thus, Texas is far from

---

[1] Previously, in its Motion to Remand, the State included the case of *Maryland v. 3M Co.,* No. RDB-23-1836 as one of the many examples of 3M's continued strategy of attempting to remove cases to federal court. *See* ECF No. 15 at 2. Recently, the Fourth Circuit remanded that case back to the district court to determine if 3M satisfied the other elements needed for federal officer removal. *See Maryland v. 3M Co.,* --- F. 4th ---, 2025 WL 727831 (4th Cir. Mar. 7, 2025). 3M, however, has not and cannot allege that removal here was proper under the federal officer removal statute, 28 U.S.C. §1442(a)(1). Therefore, the Fourth Circuit's decision has no bearing on the instant matter.

[2] 3M asserts that the State's interest in securing an honest marketplace "is merely another way of saying" that it has an "interest in the welfare of all its citizens, . . . and in securing compliance with all its laws." Opp. at 16. While 3M may wish or believe that to be the case, it is plainly not what the State asserts in its Petition, and no court has reached that conclusion either.

a nominal party to this suit, and 3M's extended exploration of out-of-state, distinguishable decisions does nothing to change this.

2.      For example, 3M relies heavily on *Ohio v. GMAC Mortgage, LLC, see* ECF 26 ( "Opp.") at 6-10, 14, but that case is inapposite. *See* 760 F. Supp. 2d 741 (N.D. Ohio 2011).  There, the state of Ohio brought suit against a single mortgage company[3] and sought "actual and non-economic damages to all consumers injured by Defendants," as well as declaratory and injunctive relief prohibiting the defendant from "continuing any foreclosure action." *Id.* at 747. Based on the language of the requested relief, the court reasoned that the state's action would benefit only an "identifiable group" of Ohio residents: "homeowners with a mortgage from GMAC that is in danger of, or already in, foreclosure." *Id.* at 748–49.  By contrast, the Texas Attorney General seeks to hold 3M responsible for false advertising that strains the Texas marketplace—it does not aim to benefit a small and defined group of individuals.  In any event, *GMAC* is a non-binding, one-off decision that has been roundly criticized as "not persuasive" because courts "have routinely held that the state is the real party in interest in actions brought by state agencies to enforce their consumer protection or similar statutes against out-of-state defendants." *Dept. of Banking and Sec. v. TitleMax of Delaware, Inc.*, 2020 WL 127995, at *3 (M.D. Pa. Jan. 10, 2020) (collecting cases).

3.      3M also leans on *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, *see* Opp. at 5, 6, 9, 10, 14, 16, where the California Department of Fair Employment and Housing (DFEH) sued a

---

[3] Although 3M states that *GMAC* involved "mortgage **companies**," *see* Opp. at 6 (emphasis added), it actually was a suit against a single mortgage company. *See GMAC*, 760 F. Supp. 2d at 750 ("Even though on its face the Complaint appears to name two mortgage companies, GMAC and Ally, the companies are directly related and constitute one actual Defendant."). This distinction is significant. The court acknowledged that Ohio's assertion that it was acting "on behalf of … consumers generally" would be "more persuasive" if the state's suit was "directed at multiple mortgage companies that operate in Ohio, all of which were engaging in questionable or fraudulent mortgage foreclosure procedures." *Id.* That is exactly what Texas has done here—it has brought suit against multiple PFAS-manufacturing entities. Thus, the *GMAC* decision is further distinguishable on these grounds.

3

company for discrimination on behalf of *one* aggrieved employee of that company. 642 F.3d 728, 734–35 (9th Cir. 2011). In its real party analysis, the Ninth Circuit looked in part to the language of the relevant statute, which explicitly stated that "the person claiming to be aggrieved shall be the real party in interest." *Id.* at 739 (citing Cal. Gov't Code § 12965(c)(2)). It is therefore no surprise that the court found that the employee was the real party in interest, not the DFEH. It goes without saying that § 17.47 has no such language, nor does the Texas Attorney General seek relief for only one employee (or consumer).

4. In addition to urging this Court to follow distinguishable, out-of-state decisions, 3M also asks the Court to reject *Texas v. Google*—which is not shocking, given that it is on-point, in-circuit, and yet favors the State. But what *is* surprising is 3M's curious suggestion that there is no "good reason" to follow the four-factor test set forth by the Southern District in that case, *see* Opp. at 18, given that Judge Hanks' decision focuses on the very same arguments that 3M makes in its opposition. 3M is therefore misguided in questioning the applicability and holding of this precedent. *See also, e.g.*, *Netto v. Atl. Specialty Ins. Co.*, 929 F.3d 214, 217 (5th Cir. 2019) ("Where the state's highest court has not spoken to an issue, we defer to intermediate state appellate court decisions unless convinced that the highest court would disagree.").

5. For example, 3M baldly doubts the relevance of the first factor the *Google* court looked to (*i.e.*, whether the State has the statutory authority to bring this suit), even though the cases 3M relies upon demonstrate the importance of that very question. *See* Opp. at 4 ((quoting *Farrell Const. Co. v. Jefferson Par., La.,* 896 F.2d 136, 141 (5th Cir. 1990) (finding support for conclusion in the fact that the suit was "authorized by the civil law")); Opp. at 6-10, 14 ((citing *GMAC,* 760 F. Supp. 2d 741 (explaining that the fact that the state was "acting under its explicit statutory authority and protecting the public welfare" had "provide[d] fertile ground for the OAG to plant

4

the seeds of its [real party] arguments")). 3M also suggests that the first *Google* factor is "unimportant" because the Fifth Circuit did not address it in *Grace Ranch*. *See* Opp. at 13 (citing *Grace Ranch*, 989 F.3d at 308–09). Of course it was not addressed: *Grace Ranch* did not involve a state attorney general suing in the name of the state pursuant to a specific grant of authority contained in a consumer protection statute—it involved an action brought by a private landowner who was not authorized by the statute to sue in the state's name. In fact, no state official played any part in the litigation. *Id.* at 307–09. In short, this factor is clearly relevant and weighs in the State's favor, as the State is acting pursuant to a specific and exclusive grant of authority. *See* § 17.47. There is no basis to accept 3M's invitation to render it a nonentity.

6.      Moreover, despite urging rejection of the *Google* factors, 3M spends much of its opposition implicitly discussing *Google's* second factor: whether the State's requested relief is injunctive so as to regulate business conduct. Indeed, 3M repeatedly (and incorrectly) asserts that an injunction in this case would not regulate the marketplace and would instead benefit only a specific subset of individuals. That is preposterous, as discussed above and in the State's Opening Brief. *See* ECF 15. 3M also appears to suggest that this factor is unimportant because, according to 3M, consumers can also seek the relief the State requests. *See* Opp. at 14 (comparing § 17.47 to § 17.50). This is also wrong. It is clear from this discussion that 3M does not appreciate the distinctions between the DTPA as it pertains to private lawsuits and government enforcement actions. Sections 17.50 and 17.47 of the DTPA are distinct causes of action with distinct remedies. Under § 17.50(b) of the DTPA, private plaintiffs may obtain damages and an order enjoining specific acts, whereas under § 17.47, the consumer protection division may obtain a temporary restraining order, temporary injunction, permanent injunction, and other such orders or judgments the court so

orders.[4] Thus, this factor is relevant and also benefits the State, as it is using its unique authority to seek an injunction that would regulate business conduct.

7. Third, 3M suggests that the State's request for civil penalties would be pertinent only if the state asked for civil penalties "and nothing else" and elsewhere contends that civil penalties are "tangential" to the relief sought, citing in support *GMAC* (an Ohio case), *Lucent* (a California case), and *Hickman* (a case decided in 1901). Opp. at 14, 16. As discussed above, *GMAC* and *Lucent* are inapposite. *See infra* at pp. 3–4. As is *Hickman*. In *Hickman*, Justice Brewer rejected the argument that pecuniary (not civil) penalties made a railroad commission the real party in interest because the penalties could be collected only through an ancillary proceeding and the "results [would] not inure to the benefit of the state as a state *in any degree*." *Id.* (emphasis added). Indeed, the *Hickman* court explicitly recognized that matter was "not like" other cases where the relief sought "inures to [to the state] alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate." *Id.* at 20. Unlike the *Hickman* plaintiff, any judgment in this case will be awarded solely in the State's favor. This factor favors the State.

8. Lastly, 3M spends much of its opposition latched onto Google's fourth factor (*i.e.*, whether any identifiable individual consumers will be granted redress), going so far as to contend that the State denies that the terms "monetary damages" and "restitution" appear in its Petition. As a review of these cherry-picked quotes would reveal, *see* Opp. at 11, the State does not deny that these terms are included in its Petition. Nor should it have to: the DTPA expressly provides that

---

[4] 3M also attempts to distinguish *Texas v. Veterans Support Organization*, 166 F. Supp. 3d 816 (W.D. Tex. 2015) on these grounds. In that case, the court rejected the defendant's argument that consumers were the real party in interest simply because the DTPA allows an individual consumer to seek damages and noted that the "DTPA gives the Consumer Protection Division explicit authority to seek remedies unavailable to an individual consumer such as civil penalties and injunctive relief." *Id*. at 82. 3M is quick to discredit the court, explaining in a footnote that the court's conclusion was incorrect in part because the judge "mistakenly believed" injunctive relief was not available to consumers. As discussed in this section, 3M appears to misunderstand § 17.47 and § 17.50.

a court may award consumer redress as necessary. *See* § 17.47. The State need not eliminate possible remedies at the pleading stage. What the State *does* deny is 3M's contention that the minimal appearance of these terms transforms the State's Petition from one that seeks to protect its marketplace from violations of DTPA to one that only provides compensation to a distinct and identifiable group of Texans. *See, e.g.*, *Google*, 2023 WL 113732, at *4 ("Texas seeks a prospective injunction barring Google from engaging in certain practices that are described as unfair and deceptive in the DTPA itself … . Such injunctive relief is the type of prospective relief that goes beyond addressing the claims of previously injured organizations or individuals"). In any event, even if Texas were to seek redress for individual consumers, "this fact would not prevent the remand of this case" given that "the far greater" part of Texas's Petition seeks prospective injunctive relief and civil penalties. *See id.* at *5. Thus, under the *Google* factors or 3M's own analysis, the conclusion is the same: the State is the real party in interest in this case.

### B. This Case is Not Removable Under CAFA Because § 17.47 is Not a Class Action Provision

9.  In asserting that this case is removable under CAFA, 3M takes the Court through a labored analysis of dictionary definitions, ultimately arriving at the conclusion that "section 17.47 is a class action provision." Opp. at 2. Not so. Although 3M seemingly disagrees, the analysis here should be simple. The State's suit is not a class action because it ***cannot be*** a class action: it is not brought under Rule 23 or Texas's state law equivalent of Rule 23. *See* Fed. R. Civ. P. 23 (requiring typicality, adequacy, numerosity, and commonality); Tex. R. Civ. P. 42 (same); *see also, e.g.*, *LG Display Co. v. Madigan*, 665 F.3d 768, 772 (7th Cir. 2011) (denying that State of Illinois's suit was a CAFA class action because "[a] class action must be brought under Rule 23 or the state equivalent," which also required typicality, adequacy, numerosity, and commonality). Instead, Texas's suit is brought pursuant to § 17.47, which does not authorize the Attorney General to bring

class actions. *Molano v. State*, 262 S.W. 3d 554, 561 (Tex. App.—Corpus Christi – Edinburg 2008, no pet.) ("[T]he DTPA …does not provide for the use of class actions by the Attorney General.").

10. Nor is the State's suit "similar to" a class action for purposes of CAFA, since it does not need to meet *any* of Rule 23's requirements. To start, the DTPA does not require the Attorney General to have suffered an injury—nor does the Attorney General even need to *allege* harm— at the hands of 3M or to bring a claim that is otherwise typical of each class member's claim. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("We have repeatedly held that 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'") (citation omitted); *see* Tex. Bus. & Comm. Code § 17.47 (not requiring the Attorney General to assert injury). Because the Attorney General himself does not allege to have been harmed by 3M's alleged unfair business practices, his claims are not "typical" of the proposed class members on whose behalf he brings this lawsuit. *Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 835 (6th Cir. 2020) ("Where the Attorney General herself does not allege to … have been harmed by AmeriGas's alleged unfair business practices, her claims are not 'typical' of the proposed class members on whose behalf she brings this lawsuit").[5] Instead, the Attorney General is authorized to bring this action in his capacity on behalf of the State through a statutory scheme established by the Texas Legislature in the DTPA.

11. The same is true for adequate representation.[6] The Attorney General brings this lawsuit in order to vindicate the State's sovereign interest in deterring 3M from engaging in deceptive trade

---

[5] In arguing that Rule 23's typicality requirement is met as to § 17.47, 3M points to *Bara v. Major Funding Corp. Liquidating Tr.*, 876 S.W.2d 469 (Tex. App.—Austin 1994, writ denied). This case does not mention, let alone substantively analyze, CAFA. Instead, it assessed whether, when "the attorney general files suit under section 17.47 of the DTPA on behalf of a specified group of individuals…[,] the statute of limitations is tolled during the period in which the individuals are participants[.]"). Here, the State does not bring suit on behalf of a specified group of people, nor are there any issues related to the applicable statute of limitations.

[6] 3M relies on *McGraw v. Comcast Corp.* in asserting that the adequacy requirement is met. 705 F. Supp. 2d 441, 452 (E.D. Pa. 2010). There, the court analyzed opt-out rights as related to a suit brought by an attorney general

practices, as the Texas Legislature has authorized him to do. However, this does not mean that the Attorney General is an "adequate representative" of that class. Indeed, he is not himself a member of the class and he does not assert any claims that are typical of that class. *See id.*

12. Moreover, the DTPA does not require the Attorney General to join any of the affected consumers as named plaintiffs in his lawsuit. Instead, this action is brought by a single entity—the State. Thus, it is unclear how the requirements of numerosity and commonality could *ever* be satisfied in a § 17.47 lawsuit.[7]

13. In short, this attorney general action is "separate and distinct procedural vehicle from a class action." *Id.* This conclusion is consistent with decisions from the Second, Fourth,[8] Fifth,[9] Sixth, Seventh, and Ninth Circuits. *Id.*; *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 214 (2d Cir. 2013); *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 174 (4th Cir. 2011); *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 799 (5th Cir. 2012); *LG Display Co. v. Madigan*, 665 F.3d 768, 771–72 (7th Cir. 2011); *Washington v. Chimei Innolux*

---

under an antitrust statute. The court explained that one of the "three baseline requirements necessary to protect the interests of absent class members" who may opt-out was "adequate representation." It was in that context that the court assessed adequacy—not in the context of a state attorney general consumer protection provision.

[7] In arguing that Rule 23's numerosity requirement is met as to § 17.47, 3M relies on *Baylor v. U.S. Dep't of Hous. & Urb. Dev.*, 913 F.2d 223, 225 (5th Cir. 1990). This case does not mention, let alone analyze, CAFA. Nor does it mention § 17.47.

[8] 3M takes issue with the Fourth Circuit's decision because the court held that a statute is similar to Rule 23 if it "closely resembles" it. *See* Opp. at 22 (("'similar' and 'closely resemble' are not synonyms.") (*citing CVS Pharmacy, Inc.*, 646 F.3d at 174)). A review of the Fourth Circuit's decision makes clear that it actually held: "A state statute or rule is 'similar; to Federal Rule of Civil Procedure 23 if it closely resembles Rule 23 *or is like Rule 23 in substance or in essentials*." *Id.* (emphasis added). This definition of "similar" derives from the dictionary itself. *See CVS* at 174 (citing Merriam–Webster's Collegiate Dictionary, 1161 (11th ed. 2007)). Thus, 3M's quibbling with this on-point precedent is unfounded.

[9] 3M goes to great lengths to distinguish this case. *See* Opp. at 22–23. Yet 3M cites the very portion of its decision that is fatal to its claims: "[T]he MAA does not require that suits brought by the State satisfy any requirements that resemble the adequacy, numerosity, commonality, and typicality requirements of class action lawsuits under Rule 23 … it is thus clear that neither … [of] the statutes under which Mississippi brings the present suit, are 'similar' to Rule 23." *AU Optronics Corp.*, 701 F.3d at 799. While this language referred to the antitrust statute at issue, not the consumer protection statute, it is clear that this same analysis would apply as to § 17.47, given that, like the antitrust statute in *AU Optronics*, § 17.47 does not require adequacy, numerosity, commonality, or typicality.

9

*Corp.*, 659 F.3d 842, 848 (9th Cir. 2011).[10] This Court should follow those well-reasoned opinions and find that this case is not removable under CAFA. Accepting 3M's argument to the contrary would strain credulity and render every single state Attorney General enforcement action removable to federal court. That is not the law; nor does it comport with common sense.

### C. There was no objective basis for removal and the State's claim for attorneys' fees is valid.

14.     Under 28 U.S.C. §§ 1332(a), 1441(a), and 1146, removal of a civil action from state court to a federal district court for diversity jurisdiction is proper where the action is between citizens of different states. However, as set forth above and in the State's Opening Brief, the State is not a citizen for purposes of diversity jurisdiction. *Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973). Here, 3M had no objective belief that removal was proper since the State is not a citizen for purposes of diversity jurisdiction. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). The Court should award the State its attorneys' fees and other costs "incurred as a result of the removal." 28 U.S.C. § 1447(c).

### III.    CONCLUSION

For the above stated reasons and in the State's Moving Brief, the State's Motion to Remand should be granted and this Court should enter an order for reasonable attorneys' fees and costs.

---

[10]   3M contends that "state law confirms" that DTPA suits quality as CAFA class actions by relying on three cases, *Avila*, *Thomas*, and *Bara*. These cases do not mention, let alone substantively analyze, CAFA. *See* Opp.at 19. In *Avila*, for example, the court analyzed whether a jury erred in awarding $120,000 to "restore money acquired from identifiable persons by means of unlawful acts or practices." *Avila v. State*, 252 S.W.3d 632, 646 (Tex. App. 2008). Here, the State does not bring suit on behalf of identifiable persons; it brings suit to protect the Texas economy. *Bara* and *Thomas* are inapplicable for the same reasons. *See supra* at 4; *Thomas v. State*, 226 S.W.3d 697, 707 (Tex. App. 2007). These cases therefore do not move the needle.

Dated: March 12, 2025					Respectfully Submitted,

**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

**BRENT WEBSTER**
FIRST ASSISTANT ATTORNEY GENERAL

**RALPH MOLINA**
DEPUTY FIRST ASSISTANT ATTORNEY GENERAL

**AUSTIN KINGHORN**
DEPUTY ATTORNEY GENERAL FOR CIVIL LITIGATION

*/s/ Jennifer Roscetti*

**JONATHAN STONE**
CHIEF, CONSUMER PROTECTION DIVISION

**Jennifer Roscetti**
State Bar No. 24066685
**Kelley Owens**
State Bar No. 24118105
Assistants Attorney General
Jennifer.roscetti@oag.texas.gov
Kelley.owens@oag.texas.gov

OFFICE OF THE TEXAS ATTORNEY GENERAL
Consumer Protection Division
P.O. Box 12548, MC-010
Austin, Texas 78711-2548
Tel: (512) 463-2185
Fax: (512) 473-8301

*/s/ Katie B. Hobson*

**KELLIE E. BILLINGS-RAY**
CHIEF, ENVIRONMENTAL PROTECTION DIVISION

**Katie B. Hobson**
State Bar No. 24082680
**Brittany E. Wright**
State Bar No. 24130011
**Jake Marx**
State Bar No. 24087989
Assistants Attorney General
Katie.hobson@oag.texas.gov
Brittany.wright@oag.texas.gov
Jake.marx@oag.texas.gov

OFFICE OF THE TEXAS ATTORNEY GENERAL
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

*/s/ Bill Jackson*

**WILLIAM J. JACKSON**
**JENNIFER C. BARKS**
**LAUREN H. SHAH**
**MARIA F. PIMIENTA**
**KELLEY DRYE & WARREN LLP**
515 Post Oak Blvd., Suite 900
Houston, Texas 77027
Tel: (713) 355-5000
Fax: (713) 355-5001
bjackson@kelleydrye.com
jbarks@kelleydrye.com
lshah@kelleydrye.com
mpimienta@kelleydrye.com


*/s/ Glenn Graham*

**DAVID I. ZALMAN**
**GLENN T. GRAHAM**
**ELIZABETH N. KRASNOW**
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
dzalman@kelleydrye.com
ggraham@kelleydrye.com
ekrasnow@kelleydrye.com

Mark Lanier
Alex Brown
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N., Suite 100
Houston, Texas 77054
Tel: (713) 659-5200
Fax: (713) 659-2204
mark.lanier@lanierlawfirm.com
alex.brown@lanierlawfirm.com

*/s/ Scotty MacLean*
Scotty MacLean
**MACLEAN LAW FIRM, P.C.**
State Bar No. 00787942
4916 Camp Bowie Blvd.
Fort Worth, Texas 76107
Tel: 817-529-1000
smaclean@macleanfirm.com


**ATTORNEYS FOR THE STATE OF TEXAS**